IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARIA GUZMAN MORALES & MAURICIO R. GUARJARDO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 8:08-cv-504 |
| FARMLAND FOODS, INC. A Delaware Corporation and Subsidiary of Smithfield Foods, | ) ) ) ) | |
| Defendant. | ) ) ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT – CLAIMS BASED ON TIME IN EXCESS OF "REASONABLE TIME" AND DE MINIMIS ACTIVITIES**

## I.   INTRODUCTION

This overtime case turns on two principle questions:  (1) under the FLSA, what activities count as compensable "work" time; and (2) under the FLSA, how the employer lawfully can determine the amount of time it must pay for those activities.

Plaintiffs' theory is that they (or some of them) spend some time doing something that allegedly counts as "work" before and after their production activities, either before or after the shift, or at the beginning and end of the unpaid meal break. They further claim that Farmland did not lawfully provide enough paid time for those activities when it calculated and paid overtime.

Defendant Farmland Foods, Inc. ("Farmland") has moved this Court to enter summary judgment dismissing Plaintiffs' overtime claims under the Fair Labor Standards Act ("FLSA"), on various grounds.  Farmland's other motions show that:

1

- "Changing clothes" and "washing" are excluded from "hours worked" by 29 U.S.C. § 203(o) and do not start compensable time. (Def.'s Mem. Partial Summ. J. [Doc. 106] pp. 19-31; Def.'s Reply Br. [Doc. 124] pp. 30-42.)

- "Swiping in," "being checked," walking or waiting before the first or after the last "principal activity," and picking up, carrying or depositing light tools, are not "work" but are instead "preliminary and postliminary" activities which are excluded by the Portal-to-Portal Act, 29 U.S.C. § 254(a). (Def's Mem. Partial Summ. J. – "Swiping In," "Being Checked," Walking, Waiting, Straight Knives, "Draw Knives," Hooks, And Other Light Tools, filed June 21, 2010.)

- Donning and doffing generic, non-unique items are not "work" but are instead "preliminary and postliminary" activities which are excluded by the Portal-to-Portal Act, 29 U.S.C. § 254(a). (Def's Mem. Partial Summ. J. – Non-Unique Items, filed June 21, 2010.)

Farmland also has moved the Court to dismiss Plaintiffs' claims as to those pre-production and post-production activities that may otherwise be compensable under the FLSA, for two reasons.

First, the FLSA only requires Farmland to provide a "reasonable" amount of paid time for such activities, and does not require Farmland to separately measure and calculate each employee's paid time each based on how much time each individual spends from day to day in those activities. Plaintiffs cannot present evidence showing that Farmland did not provide them a "reasonable" amount of paid time for those activities that are compensable under the FLSA. Because the FLSA only requires Farmland to provide a "reasonable" amount of time, evidence about how much time a few selected individuals take in such activities is insufficient as a matter of law to support their claims in this collective action. Accordingly, this Court should dismiss

2

with prejudice Plaintiffs' claims to the extent that they are based on alleged violations of the FLSA for not individually measuring each employee's time spent in any compensable pre- and post-shift and pre- and post-break donning, doffing and relating activities.

Second, even where such activities would otherwise be "principal activities," they are nevertheless not compensable under the FLSA if the time needed to accomplish them is de minimis. The evidence shows that the time needed to accomplish any pre-production and post-production activities that are not already excluded by the Portal-to-Portal Act is de minimis, and so the Court should dismiss Plaintiffs' claims based on those activities.

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1.    The Parties do not dispute that this Court has jurisdiction, and the Court previously has ruled that venue is proper. (Def.'s Stmnt. Undisputed Material Facts Supp. Mot. Partial Summ. J. [Doc. 106] ¶ 1; Pls.' Resp. Def.'s Mot. Partial Summ. J. [Doc. 117] ("Plaintiffs' Resp.") at 12.)

2.    Farmland owns and operates a hog processing plant in Crete, Nebraska. Vesely Decl. ¶ 2.[2]

3.    The Named Plaintiffs and Opt-In Plaintiffs are current and former hourly production employees of Farmland's Crete facility. Vesely Decl. ¶ 6.

### A.    Required Donning and Doffing Activities

#### 1.    Pre-Shift Activities

4.    Farmland does not require production employees to arrive at a specific time and place prior to their scheduled shift to pick up or don any clothing or other items. Vesely Decl. ¶ 80.

---

[1]      Citations to Farmland's Statement of Undisputed Material Facts are referenced as "SOF ¶ ___."

[2]      The Declaration of Colby Vesely is attached as Exhibit 1 to the Index of Evidence In Support of Farmland's Motion for Partial Summary Judgment – "Swiping In," "Being Checked," Walking, Waiting, Straight Knives, "Draw Knives," Hooks, And Other Light Tools, filed concurrently. [Docket Entry #135]

5.      Farmland does not require employees to wear any particular clothing or items at any time other than while they are on the production floor.  Vesely Decl. ¶ 81.  Employees who are required to wear a hairnet, beard net, hardhat, or ear plugs or ear muffs are allowed to don these items immediately prior to entering the production floor, where their workstations are located. Id.

6.      Employees obtain cotton gloves, other types of gloves (including rubber gloves), aprons, plastic sleeves, and plastic arm guards at distribution and collection stations located in their departments on the production floor.  Employees pick up these items as they pass by the distribution and collection stations on the way to their workstations.  Vesely Decl. ¶ 79.

7.      Employees who wear gloves (e.g., cotton or rubber), safety glasses or goggles, face shields, aprons, plastic sleeves, or plastic arm guards are allowed to don such items at their workstations, immediately before handling meat.  Vesely Decl. ¶ 82.  Additionally, employees who wear mesh gloves, mesh sleeves, Kevlar sleeves, mesh aprons and any other cut protective items are also allowed to don such items at their workstations, immediately before handling meat. Id.

### 2.      Break-Related Activities

8.      Farmland provides rest breaks and meal breaks to hourly production employees.  Vesely Decl. ¶ 92.

9.      Farmland pays production employees for their rest breaks, which are 15 minutes.  Vesely Decl. ¶ 83.  Thus, employees are compensated for any donning and doffing activities during rest breaks.  Id.  Production employees are provided unpaid meal breaks of 30 or 35 minutes, depending on their departments.  Id.

10.     Production employees are permitted to remain at their workstations or on the production

floor during rest breaks and meal breaks; the decision as to whether to remain at the workstation or on the production floor during breaks is up to the employee.  Vesely Decl. ¶ 84; Vesely Dep. 207:4-6, 209:3-4.  Production employees who remain at their workstations or on the production floor during breaks are not required to doff or discard any of the clothing or items they wear. Vesely Decl. ¶ 84.

11.     Farmland does not require production employees to remove their "blues," "whites," or coveralls, or ear plugs, hardhats, or steel-toe boots if they leave the production floor during breaks.  Vesely Decl. ¶ 85.

12.     At the beginning of unpaid breaks, employees who wear gloves (e.g., cotton or rubber), safety glasses or goggles, face shields, aprons, plastic sleeves, or plastic arm guards are allowed to doff such items at their workstations, immediately after handling meat.  Vesely Decl.  ¶ 86. Additionally, employees who wear mesh gloves, mesh sleeves, Kevlar sleeves, mesh aprons and any other cut protective items or use tools or equipment, are also allowed to doff such items at their workstations, immediately after handling meat. Vesely Decl. ¶¶ 87, 94.

13.     Employees are permitted to leave gloves (e.g., cotton or rubber), safety glasses or goggles, face shields, aprons, plastic sleeves, or plastic arm guards at or near their workstations during any unpaid breaks.  Vesely Decl. ¶ 87.  Additionally, employees who wear mesh gloves, mesh sleeves, Kevlar sleeves, mesh aprons and any other cut protective items are also permitted to leave them at or near their workstations during any unpaid breaks. Id.

14.     At the end of unpaid breaks, employees who wear gloves (e.g., cotton or rubber), safety glasses or goggles, face shields, aprons, plastic sleeves, or plastic arm guards are allowed to don such items at their workstations, immediately before handling meat.   Vesely Decl.  ¶ 88. Additionally, employees who wear mesh gloves, mesh sleeves, Kevlar sleeves, mesh aprons and

5

any other cut protective items are also allowed to don such items at their workstations, immediately before handling meat.  Id.

### 3.    Post-Shift Activities

15.    Farmland does not require production employees to wait at the end of their shift (after completing line production activities) to doff or discard any of the clothing or items they wear. Vesely Decl. ¶ 89.

16.    At the end of shifts, employees who wear gloves (e.g., cotton or rubber), safety glasses or goggles, face shields, aprons, plastic sleeves, or plastic arm guards are allowed to doff such items at their workstations, immediately after handling meat.   Vesely Decl. ¶ 90.   Additionally, employees who wear mesh gloves, mesh sleeves, Kevlar sleeves, mesh aprons and any other cut protective items are also allowed to doff such items at their workstations, immediately after handling meat. Id.

17.    At the end of shifts, employees who wear gloves (e.g., cotton or rubber), aprons, plastic sleeves, or plastic arm guards deposit such items at distribution and collection stations located in their departments on the production floor.  Vesely Decl. ¶ 91.  Employees drop off these items as they pass by the distribution and collection stations when exiting the production floor.  Id.

### B.    Compensation

18.    Production employees are paid from their designated start time regardless of whether they begin line production activities at that time or not.  Vesely Decl. ¶ 13.

19.    Production employees who work in some departments are paid hourly wages according to the "gang time" compensation method, while production employees in other departments are not. Vesely Decl. ¶ 95; Vesely Dep. 92:17-21; Vesely Dep. Ex. 6.  Production employees in non-gang-time departments are paid from a scheduled start time through their individual "out punch"

6

or "end punch," i.e., when the employee punches out at the Kronos time clock for his or her department.  Vesely Decl. ¶ 95; see also Vesely Dep. 94:21-96.15, 127:2-14, 128:7-12.

20.     During the time they worked in departments in which they were paid to their individual out punch, any Plaintiffs who wore protective or sanitary items obtained from the distribution and collection station in their department turned in such items at the same distribution and collection station.  Vesely Decl. ¶ 96.  Therefore, those Plaintiffs were on regular paid time when they turned in those items.  Id.

21.     Production employees are paid not only according to the gang time method or the scheduled start time/"out punch" method; their pay includes additional allowances specified in Articles 30.3 and 30.4 of the collective bargaining agreement ("CBA") and the 2007 Memorandum of Understanding between Farmland and the union.  Vesely Decl. ¶ 97.

22.     Article 30.3 of the CBA expressly states:

> An allowance of [s]ix dollars and twenty-five cents ($6.25) weekly shall be paid to all employees who work, purchase and wear the prescribed uniform in any week.  This allowance shall cover the cost to employee of uniforms, boots, and equipment, as well as any compensable donning and doffing time not otherwise covered by this agreement.

Boss Decl. ¶ 7 [107-1]; Boss Decl. Ex. 4 pp. 25-26 (Bates Nos. FARMLAND 000026-000027) (emphasis added).[3]

23.     Section 30.4 of the CBA addresses the additional compensation paid to employees who have knife jobs and required safety or other equipment for time spent donning, doffing, and cleaning such equipment.  Boss Decl. ¶ 7 [Doc. 107-1]; Boss Decl. Ex. 4 p. 26 (Bates No. FARMLAND 000027).

24.     The 2007 Memorandum of Understanding between Farmland and the union expressly

---

[3]     The Declaration of David Boss and the exhibits to the Declaration were attached as Exhibit A to Farmland's Motion for Partial Summary Judgment -- "Changing Clothes," "Washing," Walking and Waiting [Doc. 107-1].

states:

> [the] collective bargaining agreements specify, among other things, the pay and
> allowances for uniforms, equipment and the time that the employees . . . spend
> donning and doffing those uniforms and equipment . . . .

Boss Decl. ¶ 9 [Doc. 107-1]; Boss Decl. Ex. 6 (Bates No. FARMLAND 000052).

25.   The 2007 Memorandum of Understanding increased the weekly allowance under Article

30.3 of the CBA to $7.87, and the allowance under Article 30.4 of the CBA to 4 minutes per day.

Boss Decl. ¶ 9 [Doc. 107-1]; Boss Decl. Ex. 6 (Bates No. FARMLAND 000052-000053).

26.   In addition to receiving the 4 minutes per day allowance paid to all knife workers

pursuant to Article 30.4 of the CBA, draw knife workers receive an extra 12 minutes or 0.2 hour

per day in compensation for activities related to the care and maintenance of the "draw knives"

they use.  Vesely Decl. ¶ 36; Vesely Dep. 75:12-77:5.

27.   Since at least March 22, 2007, the amount of time that most employees take donning,

doffing and washing steel mesh items (gloves, sleeves, and aprons), plastic arm guards, plastic

belly guards, and similar cut-protective items is no greater than:

> a.   Kill Department – 4.18 minutes (less than 4 minutes, 11 seconds);
>
> b.   Cut and JBO Departments – 4.31 minutes (less than 4 minutes, 19 seconds);
>
> c.   Picnic Bone Department – 3.83 minutes (less than 4 minutes, 50 seconds);
>
> d.   Loin Bone Department -- 3.85 minutes (4 minutes, 51 seconds);
>
> e.   Ham Bone Department – 4.08 minutes (less than 4 minutes, 5 seconds).

DeJesus Decl. ¶¶ 16-17; DeJesus Decl. Ex. 3.[4]

---

[4] The Declaration of Jairo DeJesus and the exhibits to the Declaration are attached to the Index of Evidence filed
herewith.

28.     As of August – October 2006, the amount of time that most employees took donning, doffing and washing steel mesh items (gloves, sleeves, and aprons), plastic arm guards, plastic belly guards, and similar cut-protective items is no greater than:

> a.   Kill Department – 7.190 minutes (less than 7 minutes, 11 seconds);
>
> b.   Cut Department – 8.138 minutes (less than 8 minutes, 12 seconds);
>
> c.   Picnic Bone Department – 8.777 minutes (less than 8 minutes, 47 seconds);
>
> d.   Loin Bone Department – 8.526 minutes (less than 8 minutes, 32 seconds);
>
> e.   Ham Bone Department – 7.789 minutes (less than 7 minutes, 48 seconds);
>
> f.   Cure Department – 6.917 minutes (6 minutes, 55 seconds).

DeJesus Decl. ¶¶ 4-11; DeJesus Decl. Exs. 1 and 2.

## I.   ARGUMENT

### A.  Summary Judgment Standard of Review.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  When the nonmoving party bears the burden of proof at trial, the moving party satisfies its burden on summary judgment simply by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  In other words, the movant need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Celotex, 477 U.S. at 323).

The burden then shifts to the nonmoving party to "do more than simply show there is some metaphysical doubt as to the material facts." <u>Id.</u> (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).   The non-movant "may not rely merely on allegations or denials in its own pleading[s]." Fed. R. Civ. P. 56(e)(2).  Rather, the non-movant "must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." <u>Id.</u>  "If the evidence [offered by the nonmoving party] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).

**B. The Court Should Dismiss Plaintiffs' Claims For Overtime Pay Based On Individual, Day-to-Day Measurement of Each Person's Pre-Production and Post-Production Activities; The FLSA Only Requires Farmland to Provide A "Reasonable" Amount of Paid Time for Such Activities.**

Plaintiffs appear to base their overtime claims on the premise that the FLSA requires Farmland to measure each individual employee's pre- and post- shift and pre- and post-break time spent in donning, doffing and related activities, and to calculate each individual employee's paid time separately based on the actual amount of time he or she spends in such activities from day to day.  Their claims are invalid as a matter of law.

1. <u>The FLSA does not require an employer to measure each employee's time separately, by time clock or otherwise.</u>

At the outset, the FLSA does not prescribe any particular method of measuring time; for example, the FLSA does not require an employer to use time clocks to record time. The Administrative Regulations of the Labor Standards Division of the DOL clearly state that "[t]ime clocks are not required." <u>See</u> 29 CFR § 785.48 (a), available at http://www.dol.gov/dol/allcfr/Title_29/Part_785/29CFR785.48.htm (last accessed June 21, 2010).  Instead, any method that reasonably captures the amount of time spent for such activities

10

as a whole is sufficient under the FLSA.  For example, the DOL Regulations provide that "[f]or employees working on fixed schedules, an employer may maintain records showing instead of the hours worked each day and each work week, the schedule of daily and weekly hours and a statement or other method of recordkeeping that indicates such hours were in fact actually worked."   See   29   CFR   §   785.48   (a),   available   at http://www.dol.gov/dol/allcfr/Title_29/Part_785/29CFR785.48.htm.   Thus,  Plaintiffs'  premise that the FLSA requires individualized time measurement is invalid as a matter of law.

Under these principles, for example, the FLSA it permits an employer to pay groups of employees based on a single common measure of time – such as the "gang time" method used for many of the employees at the Crete facility. As a district court explained in an action seeking compensation for donning, doffing and related activities, "[n]either the Fair Labor Standards Act nor any regulations interpreting the same provide any legal basis for the contention that [a food processor] is in violation of the FLSA for capturing hours worked through the use of 'line time.'" Anderson v. Cagle's, Inc., 488 F.3d 945, 949-50 (11th Cir. 2007) (gang time pay method does not violate the FLSA); Anderson v. Pilgrim's Pride, 147 F. Supp. 2d 556, 560-561 (E.D. Tex. 2001) (line time method of compensation is lawful); see also Sisk v. Sara Lee Corp., 590 F. Supp. 2d 1001, 1003-04 (W.D. Tenn. 2008) (employees are compensated "under a scheme called 'gang time,' in which a shift is measured from the time the first piece of meat arrives at a particular station until the time the last piece of meat leaves that station" and not holding that such a compensation system is unlawful even where "employees in other departments are paid from the time they punched in on the time clock until they punched out at the end of the day."); Burks v. Equity Group-Eufaula Div., LLC, 571 F. Supp. 2d 1235, 1245 (M.D. Ala. 2008) ("the employees . . . were paid according to a 'line-time method that calculates compensable time

based on when the chicken to be processed reaches the production line."); Gatewood v. Koch Foods of Miss., LLC, 569 F. Supp. 2d 687, 690 (S.D. Miss. 2008) (gang time where "[a]t the beginning of each shift, the supervisor of each department swipes a 'master badge' as the chicken product arrives, and then swipes it again once all the chicken product has been processed.").

> 2. The FLSA authorizes an employer to provide a "reasonable" amount of time for pre-production and post-production activities.

As a matter of law, Plaintiffs are not entitled to overtime under the FLSA for all of the time that they choose to spend engaged in donning, doffing, and related activities, some of which is interspersed with personal activities done solely for the benefit of the plaintiffs and not the benefit of Farmland.  In Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 685 (1946), employees brought suit for time spent donning and doffing aprons and overalls and walking from time clocks to their work stations.  Although the Supreme Court expansively defined the compensable workweek and allowed pay for donning and doffing of such items,[5] the Court ruled that the employer was only required to pay "the minimum time spent in walking at an ordinary rate along the most direct route from time clock to work bench."  Id. at 692-93.  The Court rejected the

---

[5] The Court's expansive definition was promptly overturned in 1947 by Congress in the Portal-to-Portal Act, which established that the FLSA does not require an employer to pay based on time spent:

> (1) Walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) Activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

12

employees' claim that they were entitled to be paid for the <u>actual</u> amount of time each individual chose to spend: "Many employees took roundabout journeys and stopped off en route for purely personal reasons.  It would be unfair and impractical to compensate for doing that which they were required to do."  <u>Id.</u> at 692.

Both the Department of Labor and courts interpreting the FLSA recognize that when an employer provides paid times for donning, doffing and related activities that are otherwise compensable under the FLSA, it is lawful to compensate employees by establishing a set amount of paid time as opposed to using a time clock and measuring each individual employee's time spent engaging in said activities. The Department of Labor's Field Operations Handbook follows the foregoing principle, and establishes that employers may lawfully compensate employees for donning, doffing, and related activities by means of a fixed amount of paid time.  Specifically, Section 31b01a provides that:

> An employer may set up a formula by which employees are allowed given amounts of time to perform clothes changing and washup activities, provided the time set is reasonable in relation to the actual time required to perform such activities.  The time allowed will be considered reasonable if a majority of the employees usually perform the activities within the given time.

Dept. of Labor Wage and Hour Division, Field Operations Handbook – 9/19/96 § 31b01a, available at http://www.dol.gov/whd/FOH/index.htm (last accessed June 21, 2010).

Courts have held that where, as here, there is "considerable flexibility and personal discretion with regard to the time and speed" that donning, doffing and related activities take place," workers should be paid on the basis of a reasonable time to conduct these activities, not to include 'wait and walk time,' rather than the actual time taken."  <u>Reich v. IBP, Inc.</u>, 38 F.3d 1123, 1127 (10th Cir. 1994) (affirming district court's holding that the employees were entitled to compensation for reasonable, rather than actual, time required to perform compensable

13

activities); <u>Tum v. Barber Foods, Inc.</u>, 360 F.3d 275, 283 and n.7 (1st Cir. 2004) (rev'd on other grounds) (approving the following jury instruction: "In deciding how much time it takes an associate to don and doff required clothing and equipment, you are not to decide the actual time it may take any individual employee or associate to perform those activities, rather you must decide the amount of time that you think is reasonably required by a reasonably diligent associate or employee to don and doff the required clothing and equipment"); <u>Anderson v. Sara Lee Corp.</u>, 2004 U.S. Dist. LEXIS 31089, *15-16 (E.D.N.C Dec. 7, 2004) (rev'd on other grounds) ("This Court [finds] persuasive the view from the Tenth Circuit [that] the time frame that the court evaluates in determining whether the donning and doffing of work clothes is the amount of time it should reasonably take, not the amount it actually takes."); <u>Amos v. United States</u>, 13 Cl. Ct. 442, 449-50 (Cl. Ct. 1987) (holding that where prison cooks must report to a control center each day to pick up keys, a radio, and a body alarm, check into the institution, walk to their posts and be there at the start, and not leave before the end of their shift, the prison cooks were entitled to compensation not 'for all of the time they each spent in the control room but only for that amount of time reasonably required"). "To rule otherwise would run the risk of rewarding plaintiffs for lack of diligence … and conversely, penalizing those of the plaintiffs who may have taken less than a reasonable amount of time in doing these activities." <u>Id.</u>

In sum, the foregoing authorities show that the premise on which Plaintiffs base their claims is false. The FLSA does not require Farmland to record separately for each individual employee, each day, the actual amount of time that employee spent that day engaged in otherwise compensable[6] donning, doffing and related activities. To the contrary, as a matter of law it is sufficient under the FLSA for Farmland to provide "reasonable" amount of paid time to

---

[6] As shown in the motions listed at pp. 1 - 2 above, most of the activities on which Plaintiffs base their claims are not compensable.

employees for those activities that are compensable.  As in <u>Mt. Clemens</u>, Plaintiffs cannot recover in this action merely by presenting evidence about how much time some individuals take in the particular activities – they have the burden of proof to show that the amount of paid time that Farmland provides is not a "reasonable" amount of time to complete the compensable activities. Plaintiffs cannot come forward with any evidence showing that the amount of time Farmland provides is not "reasonable" to cover those activities which are otherwise compensable under the FLSA.

      **C.**    **Plaintiffs' Overtime Claims Based on Time Spent in Otherwise-Compensable Donning, Doffing and Related Activities Under the FLSA Should Be Dismissed Because the Time is De Minimis.**

Even where Plaintiffs spend time donning and doffing certain items that may be "integral and indispensable" to Plaintiffs' principal work activities, the time spent donning and doffing is nonetheless not compensable if that time is de minimis.  <u>Hertz v. Woodbury County, Iowa</u>, 2008 U.S. Dist. LEXIS 40003, *1, *17-18 (N.D. Ia. May 16, 2008) (<u>citing</u> <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 692 (1946)).   In <u>Mt. Clemens Pottery Co.</u>, the Supreme Court held that otherwise compensable pre-production and post-production activities are not included in calculating hours worked if the period of time spent on an activity is so "insubstantial and insignificant" that it ought not be included in the work week.  <u>Mt. Clemens Pottery Co.</u>, 328 U.S. at 693. "[A] few seconds or minutes of work beyond the scheduled working hours . . . may be disregarded.  Split-second absurdities are not justified . . . . It is only when an employee is required to give up a <u>substantial</u> measure of his time and effort that compensable working time is involved."  (<u>Id</u>. at 692) (emphasis added).  Whether time is de minimis is also purely a "legal question" for the Court.  <u>Frank v. Gold'n Plump Poultry, Inc.</u>, 2007 U.S. Dist. LEXIS 71179, *1,

*11 (D. Minn. Sept. 24, 2007).  Here, the amount of any otherwise-compensable time Plaintiffs spend donning and doffing unique gear is <u>de minimis</u> as set forth more fully below.

Courts in this circuit have considered several factors in determining whether a claim is de minimis.  As an initial matter, the courts first consider the amount of time it takes employees to don and doff the equipment. If the time is less than 10 minutes per day, it is de minimis. <u>Lindow v. United States</u>, 738 F.2d 1057 (9th Cir. 1984).)  ("[M]ost courts have found daily periods of approximately 10 minutes de minimis even though otherwise compensable."  (<u>Id</u>. at 1062); <u>see also</u>; <u>Carlsen v. United States</u>, 521 F.3d 1371, 1378 (Fed. Cir. 2008) ("And because that time was less than ten minutes per day, by the court's calculation, we agree that the overtime attributable to those tasks was de minimis and thus not compensable."); <u>Myers v. Baltimore County</u>, 50 Fed. Appx. 583, 589 n.6 (4th Cir. 2002) (citing <u>Lindow</u> and suggesting tasks taking less than ten minutes are *de minimis* under the FLSA); <u>Anderson v. Perdue Farms, Inc.</u>, 2009 U.S. Dist. LEXIS 19243, *57 (M.D. Ala. Mar. 10, 2009) ("[C]ourts have found daily periods of approximately ten minutes or less to be de minimis as a matter of law."); <u>but</u> <u>see</u> <u>Bartholomew v. City of Burlington</u>, 5 F. Supp. 2d 1161, 1170 (D. Kan. 1998) ("additional fifteen minutes preparing for work" per day was "within the de minimis rule").

In this case, it is unnecessary to detour into debate over whether at least some of the items that some Plaintiffs wear are "integral and indispensable" to cutting meat. The Declaration of Colby Vesely shows that the only items that employees are required to put on before they enter the production area are the pants, shirt, bump cap, hair net and ear plugs.  SOF ¶ 5.  As a matter of law the time spent donning and doffing generic items such as the pants, shirt, bump cap, hair net and ear plugs is not compensable. (Def's Mem. Partial Summ. J. – Non-Unique Items, filed June 21, 2010.)

16

All of the other items that employees are required to wear – whether "non-unique" or "unique" – are issued as the employee enters the production area. SOF ¶ 6.  Those items can be put on at the work station immediately before the employee comes into contact with the meat, and can be removed immediately after the employee stops working with meat to go on break or to leave at the end of the day. SOF ¶¶ 7, 11, 12, 16, 17.

The Declaration of Jairo de Jesus, filed herewith, shows that the amount of time employees spend donning and doffing the items on the floor is far less than 10 minutes per day, and therefore is de minimis as a matter of law. Declaration of Jairo de Jesus ("de Jesus Declaration") ¶¶ 4 – 17.  The amount of time for all such activities – even including ordinary generic gloves (plastic, rubber, latex or cotton) and plastic aprons which are not compensable – is only approximately four minutes per day, even including walking time that occurs before the employee is required to don the items or after doffing. Id., ¶¶ 16 – 17 and Ex. 3.  Even prior to a policy change in late 2006 – early 2007 that reduced the activities by removing the employee's obligation to dip and wash items, the time for all such activities – including ordinary generic gloves and aprons and including walking -- ranged from less than six minutes to less than nine minutes per day.  Id., ¶¶ 4 - 11 and Exs. 1, 2.  These amounts are all well below the ten-minute per day threshold set forth in the cases cited above.

In addition to considering the amount of time it takes to complete the additional activities, courts also consider three additional factors: (1) "the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."  Hertz, 2008 U.S. Dist. LEXIS 40003 at *18. As the Vesely Declaration shows, employees are permitted to put such items on up to the moment they start working on meat, and are permitted to remove them as soon as they stop working on meat. They

are not required to arrive at any particular time in advance to do so. Thus, they are allowed considerable personal freedom to act at their own pace. As the measurements gathered by Mr. de Jesus and his industrial engineers show, the amount of time spent in each task varies from person to person. de Jesus Declaration, ¶¶ 6, 16 and Exs. 1, 3.  In order to separately measure each person each day as he or she put on and took off the various items, it would be necessary to employ and assign an additional employee to follow each production person with a stopwatch to note the instant that the employee started putting on an item and then finished doing so, or started removing an item and then finished doing so. The "practical administrative difficulty" of even attempting to employ a "shadow" crew to measure over 1,800 to 1,950 production employees[7] throughout the workday, day after day and week after week, is indisputable. The small amounts of time it takes to don and doff each item, as well as the time variations between employees for completing these activities, create tremendous administrative difficulty recording the amount of time each employee spends off the clock donning and doffing these items at the beginning and end of their shifts and unpaid breaks.  See Fast v. Applebee's Int'l, Inc., 502 F. Supp. 2d 996, 1006 (W.D. Mo. 2007) (noting that "[t]he practical difficulty of recording the amount of time [plaintiff] spends each day straightening chairs or picking up trash between the time he walks in the door and the time he clocks in is substantial," the court granted defendant's motion for summary judgment "[b]ecause the aggregate amount of time is low and the practical difficulty of recording the time is immense[.]"); see also Gonzalez v. Farmington Foods, Inc., 296 F. Supp. 2d 912, 928 (N.D. Ill. 2003) (citing Reich v. IBP, Inc., 38 F.3d 1123, 1126 & n.1 (10th Cir. 1994) ("time spent donning and doffing non-unique protective gear, 'although essential to the job and

---

[7] See Deposition of Colby Vesely, taken March 9, 2010, p. 64, attached as Exhibit B to the Index of Evidence filed herewith.

required by the employer,' is at once so insubstantial and so difficult to monitor that it 'is de minimis as a matter of law.'")

The "aggregate amount of compensable time" factor is more than satisfied by the evidence set forth in the de Jesus Declaration. His study included not only "compensable time" but also time that is not compensable – time spent with ordinary compensable items such as cloth gloves, rubber/plastic/latex gloves, and aprons, and time spent walking before donning or after doffing. Even with that non-compensable time, the total time is comfortably less than 10 minutes per day as shown above – in fact, it is approximately four minutes per day as of at least March 2007.

Even where employees regularly don and doff PPE, courts have found that where there is a practical difficulty of recording the amount of donning and doffing time, as Farmland has already established, the additional donning and doffing time is nonetheless de minimis.  "The regularity of the work is a factor to be considered but just because the work in question is regularly recurring does not mean that the de minimis defense is unavailable." Saunders, 1991 U.S. Dist. LEXIS 21069 at *15; see Fast, 502 F. Supp. 2d at 1006 (alleged off-the-clock time was de minimis because of the "practical difficulty of recording the amount of time [plaintiff] spends each day [performing the additional work]" … even "though [plaintiff] regularly performs this work."); see also Hesseltine v. Goodyear Tire & Rubber Co., 391 F. Supp. 2d 509, 519 (E.D. Tex. 2005) (finding plaintiffs' claim for ten minutes or less of overtime de minimis as a matter of law although "shift relief was performed on a regular basis[,]" because  "recording any alleged overlap in time for shift relief … is an administrative burden."

For all of the above reasons, the time on which Plaintiffs base their overtime claims is de minimis, and therefore it is non-compensable as a matter of law.

19

## **CONCLUSION**

For the foregoing reasons, Farmland respectfully requests that the Court dismiss with prejudice Plaintiffs' overtime claims that are based on time in excess of a reasonable amount of time for such activities, and based on time that is de minimis.

Respectfully submitted this 21st day of June, 2010.

<div style="margin-left:auto">

*/s/ Allison D. Balus*
Steven D. Davidson, Esq. (NE # 18684)
Allison D. Balus, Esq. (NE # 23270)
Baird Holm, LLP
1500 Woodmen Tower
1700 Farnam Street
Omaha, Nebraska 68102-2068
Tel: (402) 636-8254
Fax: (402) 344-0588
sdavidson@bairdholm.com
abalus@bairdholm.com

L. Dale Owens, Esq.
Admitted *Pro Hac Vice*
Georgia Bar No. 557482
Jackson Lewis LLP
1155 Peachtree Street, NE, Suite 1000
Atlanta, GA 30309-3600
Tel: (404) 525-8200
Fax: (404) 525-1173
owensd@jacksonlewis.com

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARIA GUZMAN MORALES        )
MAURICIO R. GUARJARDO,        )
                                           )
                Plaintiffs,       )
                                         )          CASE NO. 8:08-cv-504
                v.              )
                                         )
FARMLAND FOODS, INC.,        )
                                         )
              Defendant.      )
                                         )
                                         )
                                         )

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2010, I served the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT -- CLAIMS BASED ON TIME IN EXCESS OF "REASONABLE TIME" AND DE MINIMIS ACTIVITIES** through electronic filing.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

     Carolyn H. Cottrell
     Christopher P. Welsh
     James R. Welsh
     Philip A. Downey
     Shanon J. Carson
     Todd M. Schneider

I hereby certify also that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

     None.

                          /s/ *Allison D. Balus*
                          Allison D. Balus

DOCS/980904.1