# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIA GUZMAN MORALES and MAURICIO GUAJARDO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FARMLAND FOODS, INC., a Delaware Corporation and subsidiary of Smithfield Foods,<br><br>Defendant. | Case No. 8:08-cv-504- JFB-TDT<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER** |

Plaintiffs Maria Guzman Morales and Mauricio Guajardo ("Plaintiffs"), on behalf of themselves and all other similarly situated employees of Defendant Farmland Foods, Inc. ("Defendant"), through their undersigned counsel, respectfully submit this memorandum of law in support of their Motion for Protective Order, in order to establish an orderly and appropriate protocol for discovery of FLSA opt-in class members, pursuant to Fed. R. Civ. P. 26(c).

## I.   **INTRODUCTION**

This case seeks unpaid wages and overtime compensation on behalf of a relatively small number of similarly situated workers at a meat packing plant. Ignoring the fact that 29 U.S.C. § 216(b) explicitly permits plaintiffs in such suits to proceed collectively on a representative basis, Defendant served individual written discovery requests, including interrogatories, requests for production, and requests for admission, on *every* opt-in class member. This is inappropriate and would completely destroy the rationale underlying the collective action mechanism, *i.e.*, to permit such cases to proceed on a representative basis for purposes of economy and efficiency.

1

In fact, the Supreme Court has noted that Congress intended that FLSA "plaintiffs should have the opportunity to proceed collectively" to increase efficiency and "lower individual costs." *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). As such, allowing Defendant to seek individual discovery responses from all of the nearly 300 opt-in class members would eviscerate the entire purpose of litigating this matter as a collective action.

## II.   RELEVANT PROCEDURAL HISTORY

This Court conditionally certified this matter as a collective action pursuant to 29 U.S.C. § 216(b) on September 4, 2009. Plaintiffs recognize Defendant's need for *appropriate* discovery. To that end, Plaintiffs engaged in extensive meet and confer efforts with Defendant and offered to respond to discovery requests on behalf of a representative sample of ten to fifteen percent of the nearly 300 opt-in class members who joined this lawsuit. Despite initially telling Plaintiffs that it would agree to a sample, Defendant ultimately rejected Plaintiffs' proposals and served voluminous discovery requests -- 17 interrogatories, 20 requests for production and 66 requests for admission, for a total of 103 written discovery requests (not counting subparts) -- on 281 opt-in class members. ***This totals 28,943 discovery requests***. This is unwarranted and abusive, and constitutes discovery for an utterly improper purpose.

Plaintiffs engaged in extensive meet and confer efforts in an attempt to arrive at a reasonable compromise concerning opt-in discovery. During these discussions, Defendant stated that it was amenable to utilizing a random sample, but later withdrew its position. Defendant abruptly concluded the parties' discussion by serving discovery requests on 281 of the nearly 300 opt-in class members. More specifically, the following facts necessitated this Motion:

2

1.      On June 9, 2010, Defendant propounded its written discovery requests on the Plaintiffs, Maria Guzman Morales and Mauricio R. Guajardo, and fifteen opt-in class members. (*See* Exhibits A – D to Index of Evidence in Support of Plaintiff's Motion for Protective Order ("Plaintiff's Index of Evidence"), filed concurrently herewith.)

2.      On June 28, 2010, Defendant propounded its written discovery requests on an additional thirty opt-in class members.  (*See* Exhibits E - F to Plaintiff's Index of Evidence.)

3.      The discovery requests for the named Plaintiffs and all opt-in class members are identical. (*See, e.g.,* Exhibits A – B, D, F, N to Plaintiff's Index of Evidence.)

4.      On June 29, 2010, Plaintiffs proposed that Defendant limit its discovery requests to a representative sample of 10% of the nearly 300 opt-in class members.  (*See* Declaration of Carolyn Cottrell ("Cottrell Decl.") at ¶ 8; *see also* Ex. G to Plaintiff's Index of Evidence.)

5.      In the same correspondence, Plaintiffs objected that Defendant's discovery requests, which total 103 separate and independent interrogatories, requests for production of documents and requests for admission (not counting subparts), were compound, overbroad and duplicative. (*Id.*)  Plaintiffs suggested that Defendant could obtain all necessary information with no more than 10 interrogatories, 10 requests for production and 10 requests for admission. (*Id.*)

6.      Defendant rejected Plaintiffs' proposal. (*See* Cottrell Decl. at ¶ 9; *see also* Ex. H to Plaintiff's Index of Evidence.)

7.      In a subsequent telephone conference, Defendant indicated that it was willing to request discovery from a representative sample of one-third of the opt-in class members. (*See* Cottrell Decl. at ¶ 10; *see also* Ex. I to Plaintiff's Index of Evidence.)  Defendant, however,

conditioned its offer on Plaintiffs' willingness to limit its witness list at trial to opt-in class members who had responded to Defendant's discovery requests. (*Id.*)

8.      In an effort to compromise, Plaintiffs responded that they would agree to a representative sample of 15% of the opt-in class members, chosen randomly. (*Id.*) Plaintiffs further agreed that all witnesses that would be called to testify at trial in Plaintiff's case-in-chief would respond to written discovery. (*Id.*)

9.      In correspondence dated July 9, 2010, Defendant indicated that it was amenable to a representative approach to written discovery, as long as Plaintiffs were willing to agree that the discovery responses provided by the representative sample would be binding on, and admissible as to, all opt-in class members at trial. (*See* Cottrell Decl. at ¶ 11; *see also* Ex. J to Plaintiff's Index of Evidence.) Defendant also rejected Plaintiffs' suggestion that the representative sample be chosen at random, and instead insisted that Defendant could choose which opt-in class members would be included. (*Id.*)

10.     Plaintiffs continued to confer with Defendant, and on July 13, 2010, proposed that the parties design a questionnaire that could easily be translated into Spanish for the Spanish speaking opt-in class members. (*See* Cottrell Decl. at ¶ 12; *see also* Ex. K to Plaintiff's Index of Evidence.) Plaintiffs provided sample questionnaires approved in similar cases. (*Id.*) Plaintiffs also requested that Defendant withdraw the 66 Requests for Admission it propounded on every class member since responding to them would be unduly burdensome, oppressive and costly, and moreover, the two named Plaintiffs would respond to the Requests for Admission. (*Id.*) Defendant refused to do so.

4

11.      On July 14, 2010, Plaintiffs served written responses to Defendant's Requests for Production of Documents and First Set of Interrogatories served on the named Plaintiffs and on all opt-in class members. (*See* Ex. L to Plaintiff's Index of Evidence.)[1]

12.      Despite the fact that the parties appeared to be moving towards a compromise, Defendant effectively shut down the meet and confer process when it propounded discovery on an additional 236 opt-in class members on July 16, 2010. (*See* Ex. M to Plaintiff's Index of Evidence.)

13.      On July 20, 2010, in the interests of trying to minimize costs and attorneys' fees, Plaintiffs proposed that responses to discovery propounded on opt-in class members be deferred until a date after the Court rules on Defendant's *six* pending summary judgment motions. (*See* Cottrell Decl. at ¶ 16.) Defendant rejected Plaintiffs' proposal. (*Id.*)

Given the above facts, the Court should enter Plaintiffs' proposed protective order.

## III.   ARGUMENT

The Court may limit discovery, even of relevant evidence, "to protect a party from annoyance, embarrassment, oppression *or undue burden or expense*." Fed. R. Civ. P. 26(b)(1), (c). The Federal Rules of Civil Procedure grant courts broad discretion to determine the scope and method of discovery based upon the circumstances of each case. Fed. R. Civ. P. 26(b)(2). Specifically, Rule 26(b)(2) permits a court, upon its own initiative, to limit "the frequency or extent of use of discovery methods" if:

(i)      the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

---

[1] Pursuant to a stipulation between the parties, the deadline to serve responses to Defendant's first set of written discovery requests propounded on the named Plaintiffs and opt-in class members is July 28, 2010. (*See* Cottrell Decl. at ¶ 17.)

     (ii)     the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

     (iii)    the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in revolving the issues.

Representative discovery is part and parcel of the FLSA collective action process. *Reich v. Homier Distributing Co., Inc.*, 362 F. Supp.2d 1009, 1015 (N.D. Ind. 2005) (noting that "individual discovery destroys the economy of scale envisioned by the FLSA collective action procedure") (citations omitted)). In keeping with the FLSA's goals, district courts routinely deny individualized discovery in class and collective actions because it is costly, inefficient and inconsistent with the class and collective action device. "Whether prior to class certification or after, discovery, except in the rarest of cases, should be conducted on a class wide level," rather than on an individual basis. *Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992). The "burden and expense [of individualized] discovery ... clearly outweighs the likely benefit of such discovery." *Geer v. Challenge Fin. Investors Corp.*, 2007 WL 2264446, at *4-5 (D. Kan. May 4, 2007) (granting protective orders against noticed depositions for all 272 named and opt-in plaintiffs in FLSA collective action).

## A.    DEFENDANT'S PROPOSED DISCOVERY IS UNREASONABLE

The facts set forth above establish "good cause" for a protective order, as required by Fed. R. Civ. P. 26(c). Defendant has propounded a separate set of written discovery requests on nearly every opt-in class member in this litigation. Specifically, Defendant is seeking the following discovery from each of 281 opt-in class members: 1) responses to 17 unnecessary, unduly burdensome and, in some cases, premature interrogatories; 2) production of every document relating to every aspect of the opt-ins' employment in response to 20 burdensome and

6

overbroad document requests; and 3) responses to 66 compound, duplicative and often irrelevant requests for admission.  If such intrusive, individualized discovery is permitted, it would completely undermine the litigation efficiency goals that are central to the purpose of collective actions, without any significant corresponding benefit.  *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (collective actions are designed to lower individual litigation costs and benefit the judicial system by providing for "efficient resolution in one proceeding of common issues of law and fact"); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 627 (D. Colo. 2002) (same); *see also Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701-02 (3rd Cir. 1994) (representative testimony appropriate for calculating FLSA damages); *Donovan v. Burger King Corp.*, 672 F.2d 221, 224-25 (1st Cir. 1982) (representative testimony appropriate for determining FLSA liability).

Defendant, moreover, does not and cannot possibly demonstrate any particularized need for this overbroad and sweeping discovery.  Instead, it offers only conclusory misstatements of the law in an attempt to justify its requests.  Defendant's unreasonable position becomes all the more glaring given that Plaintiffs have offered to provide Defendant with complete discovery responses from a substantial sample (up to 15%) of the opt-in class members.  (*See* Cottrell Decl. at ¶¶ 8-12.)  Requiring cumulative discovery from nearly every opt-in class member -- whose employment information is already in Defendant's possession -- would be unduly burdensome and exceedingly expensive.  As such, Defendant's omnibus discovery also cannot be justified under the cost-benefit analysis required by Fed. R. Civ. P. 26(b)(2).

Discovery must be guided by the facts of each case and the principles of reasonableness articulated in Rule 26.  Plaintiffs do not assert that Defendant is precluded from obtaining *any* discovery from collective action members.  However, Defendant has no *per se* entitlement to

7

individualized discovery from each and every opt-in FLSA collective action member. Here,

Defendant cannot demonstrate its need for the discovery at issue, particularly in light of the

significant burden the requested discovery will impose, as well as the various information

resources Defendant already has available.

## B.   DEFENDANT IS NOT ENTITLED TO INDIVIDUAL DISCOVERY FROM EVERY FLSA CLASS MEMBER

Discovery in FLSA collective actions, as in any other federal case, is guided by Rule

26(b)(2), which requires courts to limit discovery that is "unreasonably cumulative or

duplicative, or is obtainable from some other source that is more convenient, less burdensome, or

less expensive." The Rule also requires courts to impose limits on discovery where "the burden

or expense of the proposed discovery outweighs its likely benefit." *Id.* Individualized discovery

in FLSA collective actions must reasonably balance a defendant's need for the specific discovery

against the resulting burden on plaintiffs and class counsel.[2]

---

[2] Unlike Rule 23 class actions, an FLSA "collective action" requires individual plaintiffs to affirmatively opt-in to the case. 29 U.S.C. § 216(b). However, various considerations relevant to the Rule 23 class action context are equally applicable to FLSA collective actions because of the structural similarity between the two types of representative suits. *Cf. Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263, 266 (D. Colo. 1990) ("[I]t does not seem sensible to reason that, because Congress has effectively directed the courts to alter their usual course and not be guided by Rule 23's 'opt-out' feature in ADEA class actions, it has also directed them to discard the compass of [R]ule 23 entirely ...."). Like Rule 23 class actions, FLSA collective actions are intended to enhance judicial economy. *See Hoffman-La Roche*, 493 U.S. at 170. Courts have thus recognized that the same pragmatic discovery concerns raised by the representative nature of Rule 23 class actions also inform discovery questions in an FLSA collective action. *Mehl v. Canadian Pacific Ry.*, 216 F.R.D. 627, 631 (D.N.D., 2003) (finding no justification to compel individualized discovery on unnamed class members in Rule 23 class action); *Bachman v. Collier*, 1977 WL 813, at *1 (D.D.C. Mar. 8, 1977) (the evolving view is that "... discovery of absent class members is not to be allowed as a matter of course."); *Clark v. Universal Builders*, 501 F.2d 324, 340-41 (7th Cir. 1973) (discovery of absent class members available only if information requested is necessary and not designed to take undue advantage or reduce the number of the class members); *see also McGrath v. City of Philadelphia*, 1994 WL 45162, at *2 (E.D. Pa. Feb. 10, 1994) ("Although the present case is not a Rule 23 class action, principles of discovery developed in Rule 23 cases apply to this § 216 'class action' by analogy."); *see also Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171, 174 (N.D. Ill. 1992) ("[D]espite the differences between Rule 23 class actions and representative suits under the FLSA, individualized discovery is not appropriate in every circumstance."). Congress's purpose in enacting the FLSA's opt-in requirement was to reduce the number of separate FLSA lawsuits, not to impose additional discovery burdens on individual FLSA plaintiffs. *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3rd Cir. 2003).

FLSA cases in which courts have addressed requests for individualized discovery reflect this case-specific, need-driven analysis. Some district courts have prohibited *any* individualized discovery of opt-in plaintiffs in collective actions because such discovery is inconsistent with the purpose of the collective action device. *See, e.g., McGrath*, 1994 WL 45162, at *3 ("It is well established that individualized discovery ... is inappropriate in a class action lawsuit. To allow such discovery would only serve to obfuscate the issues and drastically enhance the costs of litigation. Such a result cannot be countenanced." (citation omitted)); *Adkins v. Mid-Am. Growers, Inc.*, 141 F.R.D. 466, 468 (N.D. Ill. 1992) (rejecting magistrate judge's order for individualized discovery; "Whether prior to class certification or after, discovery, except in the rarest of cases, should be conducted on a class wide level.").

The Eighth Circuit has not yet directly addressed the propriety of seeking discovery from opt-in class members in an FLSA action. *See Fast v. Appelbees Intern, Inc.*, 2008 WL 5432288, at *2 (W.D. Mo. Dec. 31, 2008). However, the majority of district courts faced with this issue (including at least one from this Circuit) have taken a middle path, permitting discovery from a smaller sub-set of the collective action members only. *See, e.g., Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp.2d 1010, 1016 (D. Minn. 2007) (out of a group of 300, district court authorized individualized discovery of 85 randomly selected opt-in class members through the completion of questionnaires and a limited number of depositions); *Moss v. Crawford & Co.*, 201 F.R.D. 398, 400 (W.D. Pa. 2000) (denying a motion to decertify after depositions of 24 out of 74 FLSA collective action members were taken); *Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 354 (D.N.J. 1987) (parties used 51-person sample of class of over 1,300 opt-in plaintiffs);

*Nelson v. American Standard, Inc.*, 2009 WL 4730166, at * 3 (E.D. Tex. 2009); *Smith v.*

*Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357-358 (S.D. Ohio 2006) (where plaintiffs

moved for a protective order after defendant propounded interrogatories and requests for

production of documents on each of 1,500 opt-ins, the district court held that "limiting

discovery to a statistically significant representative sampling, at this juncture, will both

reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and

their counsel and yet afford the defendant a reasonable opportunity to explore, discover

and establish an evidentiary basis for its defenses."); *Bradford v. Bed Bath & Beyond,*

*Inc.*, 184 F. Supp.2d 1342 (N.D. Ga. 2002) (allowing discovery from 25 of 300 opt-in

plaintiffs); *see also Adkins*, 141 F.R.D. at 468 (reversing magistrate's order for individual

discovery and suggesting that a "sample of certain representative plaintiffs might be

drawn to assess the situation more accurately"); *Adkins*, 143 F.R.D. at 174 (depositions

and interrogatories on a representative basis); *Morales-Arcadio v. Shannon Produce*

*Farms, Inc.*, 2006 WL 2578835, at *3 (S.D.Ga. 2006) (motion to compel written

discovery of 11 opt-in plaintiffs denied because the "'onerous burden that would be

placed on plaintiffs' counsel by requiring discovery responses from the remaining

plaintiffs" was not justified by the defendant's need to receive individual responses.);

*Cranney v. Carriage Services, Inc.*, 2008 WL 2457912, *3-5 (D. Nev. 2008) (limiting

individualized discovery to 10% of a relevant combination of workers and work sites for

the opt-in plaintiffs); *Barrus v. Dick's Sporting Goods Inc.*, 465 F. Supp.2d 224, 231

(court placed limit on discovery with respect to opt-in plaintiffs); *Long v. Trans World*

*Airlines*, 761 F. Supp.1320, 1323 (N.D. Ill. 1991) (ordering calculation of damages

through use of a "sampling method").[3]

---

[3] This sub-set approach has been suggested by commentators and used by many courts to limit discovery

Representative discovery is analogous to representative testimony at trial and, in FLSA cases, "it is not necessary for every single affected employee to testify in order to prove violations or recoup back wages" because "the testimony and evidence of representative employees may establish *prima facie* proof of a pattern and practice of FLSA violations." *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1298 (3rd Cir. 1991) (citing multiple cases where representative testimony was adequate in collective action trials).

## C.   DEFENDANT CANNOT DEMONSTRATE NEED FOR INDIVIDUAL DISCOVERY FROM EVERY FLSA CLASS MEMBER

Plaintiffs met and conferred with Defendant prior to filing this Motion and offered the following reasonable compromise and proposal:

1.  Defendant can take full discovery of the two named plaintiffs. Full discovery includes depositions, as well as responses to the written discovery requests (17 Interrogatories, 20 Requests for Production of Documents and 66 Requests for Admission) that have already been propounded;

2.  Defendant can serve an agreed questionnaire (easily translatable into Spanish) including interrogatories and requests for production on a random sample of 15% of the 300 FLSA class members who have joined this case; and

3.  No opt-in class member will testify at trial unless they first respond to the agreed questionnaire discussed in No. 2, above.

---

to a test group of opt-in class members. The discovery obtained from this process can be used to support cross-motions for summary judgment, a decertification motion, or to lay the basis of a full trial as to one or more of the test group." David A. Borgen & Laura L. Ho, *Litigation of Wage & Hour Collective Actions Under the Fair Labor Standards Act*, 7 Employee Rts. & Emp. Policy J. 129, 153 (2003); *see also* Aashish Y. Desai, *Revenge of the Wage Slave Class Action Overtime Cases!*, 43-NOV Orange County Law. 38 (Nov. 2001) ("[T]he courts have ruled that evidence concerning each individual plaintiff's job duties and responsibilities is not always essential.... [C]ourts frequently allow depositions and interrogatories to proceed only on a representative basis by job category." (citation omitted)). How much discovery ultimately to permit may depend, in part, on the class size. In a case where the class size was much smaller than the group of opt-ins at issue here, the court allowed discovery from a sample of approximately 8% of the class. *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp.2d 1342, 1344 (N.D. Ga. 2002).

11

(*See* Cottrell Decl. at ¶¶ 8-12.)  Plaintiffs' proposal is a reasonable compromise ensuring that Defendant will be able to obtain significant discovery from a reasonable cross-sample of collective action members.  Moreover, it is fully consistent with the cross-sectional discovery approach described in the cases cited above, which has quickly become the majority view among federal courts, and is entirely consistent with the general balancing required by Rule 26(b)(2).

Plaintiffs are currently in the process of responding to Defendant's written discovery requests directed to the two named Plaintiffs.  Plaintiffs' experience responding to these discovery demands demonstrates that individualized discovery directed to every collective action member will impose an extreme burden on Plaintiffs.  (*See* Cottrell Decl. at ¶ 18.)  Most of the opt-in plaintiffs only speak Spanish.  (*Id.*)  Working with them in Spanish takes a considerable amount of additional time.  (*Id.*)  Even if Plaintiffs translated all of Defendant's discovery responses into Spanish and distributed them to the opt-in Plaintiffs (which in itself would be exceptionally burdensome, given the size of the class), most, if not all, would still require the assistance of an attorney in order to adequately understand and respond to the requests.  Completing the written discovery for just the two (2) named Plaintiffs required a significant expenditure of attorney time, which included, without limitation:  1) reviewing Defendant's discovery requests; 2) conducting interviews with each of the Plaintiffs concerning Defendant's discovery requests; 3) drafting objections and responses to specific discovery requests; and 4) reviewing the draft responses with the Plaintiffs.  (*Id.* at ¶ 19.)  Replicating these tasks 45 more times would be an enormous expenditure of time and resources, which would multiply exponentially if Defendant were permitted to seek discovery from each of the 281 individuals on whom it has propounded requests.

Moreover, much of the information sought by Defendant from the collective action members is already in its possession, making the burden/necessity balance tilt even

more sharply in Plaintiffs' favor. This discovery imposes a completely unnecessary burden on the opt-in class members and Class Counsel. Effectively, Defendant wants every opt-in class member to search their records and give back any and all materials that Defendant distributed to them during their employment. Although in some situations parties may seek discovery of materials that they may already possess, in these circumstances, where the discovery is sought from hundreds of individuals in an FLSA collective action lawsuit, the request should be denied. Fed. R. Civ. P. 26(b)(2) (discovery shall be limited when "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenience, less burdensome, or less expensive" and "when the burden or expense of the proposed discovery outweighs its likely benefit"); *see also Nicolas v. Poughkeepsie Sav. Bank v. Bank/FSB*, 1991 WL 113279, at *2 (S.D.N.Y. June 14, 1991) (excluding from scope of subpoena documents that were already in plaintiff's possession or publicly available, where mere fact of possession was not relevant to the underlying claim).

Defendant already controls virtually all of the evidence related to each individual class members' job duties, work performed and hours worked. Because the opt-in class members are Defendant's current and former employees, Defendant already has their personnel files, which contain job applications, performance evaluations, employment agreements, tax forms, compensation records, time records, and other relevant materials. Defendant also has direct access to most of the class members' supervisors, who may provide evidence as to the duties and work performed by them. The burden of requiring each opt-in class member to further comb through their individual files to determine whether they kept copies of the same documents already in Defendant's possession cannot possibly be justified here.

Plaintiffs respectfully request that the Court exercise its broad powers to oversee discovery in this matter and impose a reasonable limitation on the discovery of opt-in class members, by limiting discovery to the named plaintiffs and a suitable sample of up

to fifteen percent of the opt-in class members. This will protect the various interests that are threatened by Defendant's current set of discovery requests.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion.

Dated: July 26, 2010                          Respectfully submitted,

                                           __s/Carolyn H. Cottrell__
CAROLYN H. COTTRELL
Attorneys for Plaintiffs and the putative class
CA Bar No.:166977
Todd M. Schneider (*pro hac vice*)
Carolyn H. Cottrell (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com

Shanon J. Carson (admitted *pro hac vice*)
Russell D. Henkin (admitted *pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604
scarson@bm.net
rhenkin@bm.net

Philip A. Downey (admitted *pro hac vice*)
P.O. Box 736
Unionville, Pennsylvania 19375
Tel: (610) 324-2848
Fax: (610) 347-1073
downeyjustice@gmail.com

James R. Welsh

Christopher P. Welsh
WELSH & WELSH, PC, LLO
9290 West Dodge Rd
100 The Mark
Omaha, NE  68114
Tel:  402 384 8160
Fax:  402 384 8211
jwelsh@welsh-law.com

Attorneys for Plaintiffs and the Class

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2010 I electronically filed the above document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

> Allison D. Balus
>
> Jonathan D. Berger
>
> Carolyn H. Cottrell
>
> Shanon J. Carson
>
> Steven D. Davidson
>
> Erika Dillon
>
> Philip A. Downey
>
> Kathryn M. Engdahl
>
> Jeremy J. Glenn
>
> Michael Hamilton
>
> Russell D. Henkin
>
> Brian P. McCafferty
>
> Roger J. Miller
>
> Robert D. Metcalf
>
> L. Dale Owens
>
> Jacob M. Rubinstein
>
> Todd M. Schneider
>
> Joseph E. Tilson
>
> Christopher P. Welsh
>
> James R. Welsh

Date: July 26, 2010

Respectfully submitted,

*s/ Carolyn H. Cottrell*
Carolyn H. Cottrell (*pro hac vice*)

Cal Bar #166977
SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com

Attorneys for Plaintiffs