IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARIA GUZMAN MORALES &          )
MAURICIO R. GUAJARDO, on behalf  )
of themselves and all other similarly  )
situated individuals.           )                    8:08CV504
                                )
            Plaintiffs,         )
                                )
        v.                      )          MEMORANDUM AND ORDER
                                )
FARMLAND FOODS, INC.,           )
                                )
            Defendant.          )
                                )

     This matter is before the court on defendant's motion for partial summary judgment. Filing No. 105.  Plaintiffs, employees at defendant's slaughter and processing facility located in Crete, Nebraska, filed this case alleging they are entitled to unpaid wages and overtime wages for time spent donning, doffing, and washing clothes/personal protective equipment;[1] time spent walking to and waiting at the meat production line after donning or washing; and time spent walking from the meat production line and waiting to doff clothing/personal protective equipment.  Filing No. 1.  Plaintiffs assert that defendant compensates them on a "gang time" basis, meaning that plaintiffs receive compensation only for the time plaintiffs are on the meat production line and meat actually moves down the line.  Defendant filed this motion, Filing No. 105, asking the court to dismiss with prejudice all of plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et*

---

[1]The parties do not argue over what items constitute personal protective equipment.  Rather, the parties' dispute concerns whether personal protective equipment and "clothing," as the word is used in 29 U.S.C. § 203(o), are mutually exclusive, as discussed hereinafter in this Memorandum and Order.  Since the parties dispute whether personal protective equipment can constitute "clothing" under 29 U.S.C. § 203(o) and not whether the items donned and doffed in the present case are personal protective equipment, the court refers to the items the plaintiffs donned and doffed throughout this Memorandum and Order as clothing/personal protective equipment.

*seq.,* for overtime pay based on (1) pre- and post-shift donning and doffing required clothing/personal protective equipment, (2) time spent washing anything, including clothing/personal protective equipment, and (3) time spent walking and waiting after donning and washing at the beginning of the work day, and walking and waiting before doffing and washing at the end of the workday.

### STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the moving party meets the initial burden, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Id.* at 324.

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor

of either party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)*.  A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party."  *Id*. at 249-52 (noting the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law).  If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted.  *Id.* at 250-51.

The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences.  *Kenney v. Swift Transp., Inc., 347 F.3d 1041, 1044 (8th Cir. 2003)*.  "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations."  *Id.*  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004)*.

## DISCUSSION

Plaintiffs are meat production workers who work on a gang time basis at defendant's meat production plant.  Plaintiffs allege defendant requires plaintiffs to donn and doff, in addition to uniforms, (1) earplugs, (2) a hard hat, (3) a hair net, (4) boots, (5) mesh gloves, (6) an apron, (7) an arm guard, (8) a belly guard, (9) plastic sleeves, and (10) a scabbard and knives.  Filing No. 121, Pls.' Br. in Opp'n to Mot. for Summ. J., 4.  Defendant argues that time spent donning and doffing these items is excluded from the definition of "hours worked" as defined under 29 U.S.C. § 203(o), and, therefore, is noncompensable. Defendant also contends that, because time spent donning, doffing, and washing anything

3

is excluded from the definition of § 203(o), this court should also dismiss with prejudice plaintiffs' claims under the Portal-to-Portal Act amendments to the Fair Labor Standards Act, 29 U.S.C. § 254(a), for overtime pay based on time spent walking to and waiting at the meat production line at the beginning of the work day after donning or washing, and time spent walking from the meat production line and waiting at the end of each work day pre-doffing or washing.   Defendant argues that this time spent walking and waiting is noncompensable preliminary and postliminary activity under the Portal-to-Portal Act, 29 U.S.C. § 254(a), because such time is not "hours worked" under 29 U.S.C. § 203(o). Plaintiffs contend that under 29 U.S.C. § 203(o), (1) the term "clothes" does not include the personal protective equipment donned and doffed by plaintiffs, and (2) the term "washing" under section 203(o) applies only to washing one's body.  As a result, plaintiffs assert that time spent donning, doffing, or washing clothing or personal protective equipment is not excluded from "hours worked," and is therefore not a preliminary or postliminary activity, but a principal activity under 29 U.S.C. § 254(a) that triggers the beginning and end of the compensable work day, as discussed hereinafter.

**A.    "Changing Clothes" and "Washing" Under 29 U.S.C. § 203(o)**

The Fair Labor Standards Act provides a definition for "hours worked" as follows:

> Hours Worked.—In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

29 U.S.C. § 203(o).

### 1. "Changing Clothes"

Plaintiffs allege defendant requires plaintiffs to donn and doff, in addition to uniforms, (1) earplugs, (2) a hard hat, (3) a hair net, (4) boots, (5) mesh gloves, (6) an apron, (7) an arm guard, (8) a belly guard, (9) plastic sleeves, and (10) a scabbard and knives.  Filing No. 121, Pls.' Br. in Opp'n to Mot. for Summ. J., 4.  Defendant does not argue that at least some plaintiffs wear these items, but argues that these items constitute "clothes" under 29 U.S.C. § 203(o).  Defendant asserts that time spent donning and doffing these items is considered time spent "changing clothes" and can be excluded from "hours worked" if a collective bargaining agreement entered into between the parties so provides.  Plaintiffs contend that the items donned and doffed by plaintiffs are not considered "clothes" under 29 U.S.C. § 203(o), but instead constitutes a category outside the purview of section 203(o), personal protective equipment.  Plaintiffs, therefore, assert that time spent donning and doffing the above referenced items is not time spent "changing clothes" under 29 U.S.C. § 203(o), and therefore this time spent donning and doffing cannot be excluded from "hours worked" even if a collective bargaining agreement entered into between the parties so provides.

Section 203(o) applies to donning and doffing at the beginning and end of the work day if two conditions are met:  (1) the donning and doffing must be considered "changing clothes" within the meaning of the Fair Labor Standards Act, and (2) the time spent "changing clothes" must be excluded from "hours worked" by (a) the express terms of, or (b) the customs and practices under, a bona fide collective bargaining agreement.  *See* 29 U.S.C. § 203(o); *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 214 (4th Cir. 2009).

Plaintiffs argue here that the items plaintiffs donn and doff do not fall under the term "clothes," as used in 29 U.S.C. § 203(o). There is a split of authority on the issue of what

constitutes "clothes" under section 203(o) of the Fair Labor Standards Act.  Plaintiffs rely on the Ninth Circuit's decision in *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), *aff'd on other grounds*, 546 U.S. 21 (2005), for the proposition that "changing clothes" under section 203(o) does not include donning and doffing of personal protective equipment. *Alvarez*, 339 F.3d at 905.  Defendant, on the other hand, relies on the decisions of the Fourth and Eleventh Circuits, which stand for the proposition that "changing clothes" under section 203(o) includes donning and doffing of personal protective equipment.  *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209, 211 (4th Cir. 2009); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 957-58 (11th Cir. 2007).

The Ninth Circuit in *Alvarez* provided two reasons for concluding that personal protective equipment is not clothing.  First, the Ninth Circuit stated that section 203(o) is an exclusion that must be construed against the employer.[2] *Alvarez*, 339 F.3d at 905.  As a result, the Ninth Circuit stated that section 203(o) should apply only in contexts "*plainly and unmistakably* within the [ ] [given exemption's] terms and spirit." *Alvarez*, 339 F.3d at 905 (alterations in original) (emphasis in original) (citation omitted). The Ninth Circuit acknowledged that there were two common ordinary meanings of the word "clothing":  a broad one advanced by the employer—"whatever is worn as covering for the human body"; and a narrow one advanced by the employees—"for decency or comfort." *Id.* at 904-05 (*citing* Webster's New International Dictionary of the English Language 507 (2d ed. unabridged 1939)).  However, because it considered section 203(o) an exemption that

---

[2]Other courts, including those within the Eighth Circuit, have explained more fully the reasoning behind this proposition when interpreting other provisions within the Fair Labor Standards Act.  That is, the Fair Labor Standards Act is remedial in nature, its purpose was to protect employees, and as a result, it must be interpreted in a manner consistent with that purpose. *Overstreet v. North Shore Corp.*, 318 U.S. 125, 131-32 (1943); *Brennan v. Plaza Shoe Store, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975); *Wirtz v. First State Abstract & Ins. Co.*, 362 F.2d 83, 87 (8th Cir. 1966); *Fleming v. Hawkeye Pearl Button Co.*, 113 F.2d 52, 56 (8th Cir. 1940).

courts must construe against the employer, the Ninth Circuit found that the personal protective equipment did not plainly and unmistakably fit within the term "clothing," and rejected the broad definition. *Id.* at 905.

Second, the Ninth Circuit reasoned that specialized protective gear was different in kind from normal clothing. The Ninth Circuit stated, "[s]econd, and perhaps more importantly . . . [t]he admonition to wear warm clothing, for example, does not usually conjure up images of donning a bullet-proof vest or an environmental space suit." *Alvarez, 339 F.3d at 905.* In support of this proposition, the Ninth Circuit relied on an Occupation Safety and Health Administration ("OSHA") interpretative regulation issued by the Department of Labor, the agency that is also charged with administering the Fair Labor Standards Act, that recognized a difference between personal protective equipment and ordinary clothing. *Id.* (*citing* 29 C.F.R. § 1910.1030(b)). That OSHA regulation provides as follows: "Personal Protective Equipment is specialized clothing or equipment worn by an employee for protection against a hazard. General work clothes (e.g., uniforms, pants, shirts or blouses) not intended to function as protection against a hazard are not considered to be personal protective equipment." 29 C.F.R. § 1910.1030(b).

The Eleventh Circuit in *Anderson v. Cagle's, Inc.* considered the issue of whether certain items worn by employees of a chicken slaughtering and processing plant were considered "clothing" under 29 U.S.C. § 203(o). *Anderson, 488 F.3d 945, 955 (11th Cir. 2007).* The Eleventh Circuit concluded that (1) section 203(o) is a definition and not an exemption under the Fair Labor Standards Act,[3] and (2) the donning and doffing of certain

---

[3]*See also Allen v. McWane, Inc., 593 F.3d 449, 458-59 (5th Cir. 2010)* (concluding that section 203(o) is not an affirmative defense for which the defendant has the burden of proof because section 203(o) is a definition, not an exemption, and critiquing the Ninth Circuit's decision in *Alvarez v. IBP, Inc., 339 F.3d at 905*)).

protective equipment fell under "changing clothes" as used in section 203(o). *Anderson*, 488 F.3d at 957, 958.  The Eleventh Circuit began its analysis by looking to the plain meaning of section 203(o).  *Anderson*, 488 F.3d at 955.  The Eleventh Circuit noted that the dictionary defines "clothing" as "covering for the human body or garments in general: all the garments and accessories worn by a person at any one time."  *Id*. (*citing* Webster's Third New International Dictionary 428 (unabridged) (1986)).  The Eleventh Circuit found no reason to distinguish uniforms from protective clothes because it found this broad definition consistent with both the common understanding of the word "clothing" and with the Department of Labor's interpretation of the term.[4]  *Id.* at 955-57.

---

[4]In that advisory opinion, issued in 2002, the Department of Labor stated that "the 'changing clothes' referred to in section 3(o) applies to the putting on and taking off of the protective safety equipment typically worn in the meat packing industry."  Wage & Hour Division, Dep't of Labor, Opinion Letter, FLSA 2002-2, available at http://www.dol.gov/whd/opinion/FLSA/2002/2002_06_06_2_FLSA.htm. The Eleventh Circuit noted that this 2002 advisory opinion was inconsistent with prior Department of Labor interpretations of "changing clothes," and therefore entitled to less deference than a consistently held agency view.  *Anderson*, 488 F.3d at 956.  The Eleventh Circuit reasoned, however, that the 2002 advisory opinion was still entitled to some deference, and because the 2002 advisory opinion provided a "far more detailed rationale for its conclusion than the previous opinions," that the 2002 advisory opinion was a "great deal more persuasive than the earlier ones."  *Id* at 956-57.  That analysis is consistent with the court's determination of the proper deference or respect due to the agency that administers a given statute.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that the weight a court gives to the interpretations of the Administrator of the Fair Labor Standards Act "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade").  Further support for deference due to the Department of Labor's interpretation is that the Department of Labor issued another advisory opinion in the year 2007 that remained consistent in the new interpretation of "changing clothes" despite Ninth Circuit's decision in *Alvarez*.  *See* FLSA 2007-10, 2007 DOLWH LEXIS 10.  That advisory opinion states:

> [I]t remains our view based upon the statute and its legislative history, that the 'changing clothes' referred to in section 3(o) applies to putting on and taking off the protective safety equipment typically worn by employees in the meat packing industry . . . this clothing includes, among other items, heavy protective safety equipment worn in the meat packing industry such as mesh aprons, sleeves and gloves, plastic belly guards, arm guards, and shin guards.  *Id*.

This court also notes the inconsistency and the confusion that may result from these opinions.  First, the prior inconsistent advisory opinion, issued in 1997, based its conclusion, like the Ninth Circuit, on an assumption that section 203(o) is an exclusion that must be construed against the employer, despite Congress placing section 203(o) in a section titled "Definitions."  Wage & Hour Division, Dep't of Labor, Opinion Letter, FLSA 1997, 1997 WL 998048; 29 U.S.C. § 203.  Second, section 203(o)'s legislative history suggests that Congress did not enact section 203(o) to protect employees, but actually to, in a sense, take away some employee protection.  *See* 95 Cong. Rec. 11210, 11433 (1949) (statement of Rep. Herter).  However, the Department of Labor recently issued another opinion finding that personal protective equipment is not "clothing" under 29

The Eleventh Circuit then critiqued the Ninth Circuit's decision in *Alvarez*. *Id.* at 957. The Eleventh Circuit noted that the Ninth Circuit premised its conclusion mainly on its view that section 203(o) was an exemption after relying only on cases that discussed section 213, the section titled "Exemptions," and none that discussed section 203, the section titled, not coincidentally, "Definitions." The Eleventh Circuit explained that nine years after Congress enacted the Fair Labor Standards Act with the purpose of protecting the well-being of workers, Congress passed both the Portal-to-Portal Act, 29 U.S.C. § 254(a), and the "Hours Worked" definition section, 29 U.S.C. § 203(o), in an effort "to curtail employee-protective interpretations of the [Fair Labor Standards Act]." *Anderson,* 488 F.3d at 958. As a result, the Eleventh Circuit found that construing section 203(o) against employers as an exemption would go against both the basic tenets of statutory construction and the readily apparent legislative intent behind the amendment. *Id.*

The Fourth Circuit in *Sepulveda v. Allen Family Foods, Inc.*, also examined the issue of whether personal protective equipment is "clothes" under 29 U.S.C. § 203(o), and concluded that (1) safety, steel-toe shoes, (2) a United States Department of Agriculture required smock, (3) a United States Department of Agriculture required plastic apron, (4) safety glasses, (5) ear plugs, (6) a bump cap, (7) a hair net, (8) United States Department of Agriculture required rubber gloves, (9) sleeves, and (10) arm shields "'fit squarely' within the definition of 'clothes.'" *Sepulveda,* 591 F.3d 209, 212, 216 (4th Cir. 2009) (*quoting Anderson*, 488 F.3d at 956). To reach this conclusion, the Fourth Circuit followed an analysis similar to that used by the Eleventh Circuit.

---

U.S.C. § 203(o). Wage & Hour Division, Dep't of Labor, Adm'r Interpretation, FLSAAI 2010-2, available at http://www.dol.gov/whd/opinion/adminIntrprtn/FLSA/2010/FLSAAI2010_2.htm.

First, the Fourth Circuit concluded that the broad definition of "clothing"[5] was consistent with the word's common understanding. *Id.* at 215. Second, the Fourth Circuit found that this broad definition was consistent with the plain meaning of section 203(o).[6] *Id.* The Fourth Circuit reasoned that the statute does not use any qualifying adjectives to limit the term to a narrower definition and that ordinary clothes generally protect the people who wear them from dangers; the fact that clothes are worn for protection does not mean that clothes are no longer clothes. *Id.* Additionally, the Fourth Circuit reasoned that because many work clothes are protective to some degree, trying to distinguish between "normal" clothes and "protective gear" would be to an extent impossible for courts to administer coherently and consistently. *Id.*

Finally, the Fourth Circuit explained that its interpretation of "clothing" was consistent with section 203(o)'s purpose.[7] *Id.* at 217. The Fourth Circuit observed that Congress enacted section 203(o) in an effort to "restore some sanctity to private employment contracts" because "Congress recognized that employers and unions are in a better position than either courts or agencies to 'thresh out' how many minutes of compensable time to allocate to which tasks of 'changing clothes.'" *Id.* at 217-18 (citations omitted).

---

[5]"[C]overing for the human body or garments in general: all the garments and accessories worn by a person at any one time." *Sepulveda, 591 F.3d at 214-15* (*quoting* Webster's Third New International Dictionary 428 (unabridged) (1986)). The Fourth Circuit stated "[t]his definition certainly encompasses the items which are at issue here. All the required items serve as 'covering.' The shoes, smocks, aprons, gloves, and sleeves easily qualify as 'garments,' while the bump caps, ear plugs, hairnets, arms shields, and glasses fall comfortably within the category of 'accessories.'" *Id.* at 215.

[6]The Fourth Circuit explained "[s]ection 203(o) makes no distinction between protective and non-protective clothes. That provision simply uses the term 'clothes,' which would seem to indicate that it includes all clothing, including that which also constitutes personal protective equipment." *Sepulveda, 591 F.3d at 215* (*quoting Figas v. Horsehead Corp., 2008 WL 4170043, *10 (W.D. Pa. Sept. 3, 2008)*)).

[7]The Fourth Circuit explained "[b]oth Section 203(o) and the Portal-to-Portal Act, enacted two years earlier, were intended to give employers and employees greater latitude to determine when the work day begins and ends" in an attempt to "restore some sanctity to private employment contracts." *Sepulveda*, 591 at 217.

Additionally, the Fourth Circuit explained that "collective bargaining allows employers and unions to reach agreements that leave both sides more satisfied than" would a government-imposed solution. *Id.* at 218. The Fourth Circuit also noted that section 203(o) "simply defines 'Hours Worked' rather than exempting entire categories of employees from [the Fair Labor Standard Act's] protection." *Id.* at 214, n.1. As a result of its analysis, the Fourth Circuit found that donning and doffing of protective gear constituted "changing clothes" under 29 U.S.C. § 203(o). *Id.* at 214, 218.[8]

After a careful analysis of the differing interpretations of the law on each side of the split, this court finds the reasoning of the Ninth Circuit persuasive and, therefore, finds that personal protective equipment does not constitute "clothing" under section 203(o) of the Fair Labor Standards Act. Therefore, and for the same reasons, this court finds that time plaintiffs spent donning and doffing personal protective equipment does not constitute time spent "changing clothes" within the meaning of 29 U.S.C. § 203(o). Viewed in the light most favorable to the plaintiffs, prior to and after their shifts, plaintiffs had to don and doff (1) earplugs, (2) a hard hat, (3) a hair net, (4) boots, (5) mesh gloves, (6) an apron, (7) an arm guard, (8) a belly guard, (9) plastic sleeves, and (10) a scabbard and knives. Filing No. 121, Pls.' Br. in Opp'n to Mot. for Summ. J., 4. Consequently, this court finds the time plaintiffs spend donning and doffing the above referenced items is not time spent "changing clothes" under 29 U.S.C. § 203(o) and, therefore, section 203(o) cannot exclude that time from the plaintiffs' hours worked. As a result, and discussed below in this Memorandum and Oder, the time plaintiffs spend donning and doffing personal protective

---

[8]The Seventh Circuit has recently addressed this issue in dicta. *Spoerle v. Kraft Foods Global, Inc.,* 2010 WL 2990830 (7th Cir. Aug. 2, 2010). The Seventh Circuit agreed with the Fourth Circuit and stated that protective gear is clothing under section 203(o). *Id.* at *1. However, the court found that the pay under the collective bargaining agreement did not comply with Wisconsin law, and the Seventh Circuit concluded that section 203(o) did not preempt state law. *Id.* at 3-4.

equipment is compensable if donning and doffing personal protective equipment is integral and indispensable to the job the plaintiffs are employed to perform. *See Steiner v. Mitchell,* 350 U.S. 247, 256 (1956) (stating activities are compensable if integral and indispensable part of principal activities).

### 2. "Washing"

Section 203(o) also excludes from hours worked time spent "washing" at the beginning or end of each workday if that time is excluded under a collective bargaining agreement applicable to both parties either by express terms or by custom or practice. 29 U.S.C. § 203(o). Defendant contends that as a matter of law, "washing," as used in section 203(o), refers to any washing, regardless of what is being washed. As a result, defendant argues that any time plaintiffs spend washing their clothing/personal protective equipment is excluded from "hours worked" by the express terms of, or through custom or practice under, a collective bargaining agreement under 29 U.S.C. § 203(o). Plaintiffs, on the other hand, contend that "washing" refers only to washing one's person. Therefore, plaintiffs argue that any time they spend washing anything but their persons is compensable and cannot be excluded regardless of any collective bargaining agreement entered into between the parties.

Defendant relies heavily on the Fourth Circuit's decision in *Sepulveda* in support of its argument that the term "washing" applies to washing clothing/personal protective equipment. Filing No. 106, Def. Br. in Supp. of Mot. for Summ. J., 27. The Fourth Circuit in *Sepulveda* addressed briefly in a footnote whether the term "washing" applied to washing protective gear at the beginning and end of the employees' work days. *Sepulveda,* 591 F.3d at 216, n.4. Having just determined that courts should read "clothing" broadly under 29 U.S.C. § 203(o), the Fourth Circuit stated that courts should also read "washing"

broadly. *Id.* The Fourth Circuit reasoned, as discussed below, that the language of section 203(o) does not qualify the term "washing." The Fourth Circuit explained that this meant that the term applies to any type of washing, not just to washing one's person and, therefore, should be read broadly to include more than just the washing of one's person.

The Fourth Circuit appears to ignore both the legislative history behind 29 U.S.C. § 203(o), and the Department of Labor's interpretation of the term "washing." The legislative history of section 203(o) suggests that Congress intended "washing" to encompass only washing one's person. Conf. Rep. 81-1453, 1949 U.S.C.C.A.N. 2251, 2255 (discussing 29 U.S.C. § 203(o)'s "partial definition" to "Hours Worked" and stating "[t]he conference agreement limits this exclusion to time spent by the employee in changing clothes and cleaning his person at the beginning or at the end of each workday"). The Department of Labor's interpretation of the term "washing" is consistent with both the legislative history and plaintiffs' interpretation. The Department of Labor issued opinion letters in 1997, 2001, 2002, 2007, and 2010 interpreting 29 U.S.C. § 203(o).[9] The Department of Labor remained constant its interpretation of "washing" throughout that time and those opinions.[10] *Id.* The Department of Labor stated specifically that "[i]t remains our view, however, that the term 'washing' in section 3(o) applies only to washing of the person

---

[9]*See* Wage & Hour Division, Dep't of Labor, Adm'r Interpretation, FLSAAI 2010-2, available at http://www.dol.gov/whd/opinion/adminIntrprtn/FLSA/2010/FLSAAI2010_2.htm; Wage & Hour Division, U.S. Dep't of Labor, Opinion Letter, FLSA 2007-10, 2007 DOLWH LEXIS 10 (May, 14, 2007); Wage & Hour Division, U.S. Dep't of Labor, Opinion Letter, FLSA 2002-2 (June 6, 2002), available at http://www.dol.gov/whd/opinion/FLSA/2002/2002_06_06_2_FLSA.htm.

[10]The Department of Labor is the agency charged with administering the Fair Labor Standards Act, and, therefore, its interpretation is entitled to some deference. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (stating that the weight a court gives to the interpretations of the Administrator of the Fair Labor Standards Act "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade").

and does not apply to the cleaning or sanitizing of protective equipment." Wage & Hour
Division, Dep't of Labor, Opinion Letter, FLSA 2002-2.

This court finds the legislative history and the Department of Labor's interpretation
persuasive, and, therefore, finds that "washing" under 23 U.S.C. § 203(o) applies only to
washing one's person and not to washing clothing/personal protective equipment.[11] *See
also Fox v. Tyson Foods, Inc.*, 2002 WL 32987224, \*5 (N.D. Ala. Feb. 4, 2002); *Saunders
v. John Morrell & Co.*, 1991 WL 529542 (N.D. Iowa Dec. 24, 1991). As a result, this court
also finds that time spent washing personal protective equipment is not time spent
"washing" under 29 U.S.C. § 203(o), and, therefore, time spent washing personal protective
equipment cannot be excluded from plaintiffs' hours worked. Consequently, like time spent
donning and doffing personal protective equipment, time spent washing personal protective
equipment is compensable if it is integral and indispensable to the job that the plaintiffs
were employed to perform, as discussed hereinafter.

The court finds that plaintiffs raised a material issue of fact regarding whether the
plaintiffs wash their personal protective equipment, when they do so, and for how long. In
its response to defendant's motion for partial summary judgment, plaintiffs cite evidence
supporting its contention that plaintiffs spend time cleaning and sanitizing their
clothing/protective equipment. Filing No. 121, Pls.' Br. in Opp'n of Mot. for Summ. J., 11.[12]

---

[11]This court notes that the Eighth Circuit may also agree that washing refers only to washing one's
person. *See Ciemnoczolowski v. Q. O. Ordinance Corp.*, 228 F.2d 929, 933 (8th Cir. 1956) (discussing
section 203(o) and stating "we are unable to agree that the fact alone that an employee cannot perform his
principal activity without changing clothes or *taking a bath* will make those activities part of his principal
activity" (emphasis added)).

[12]Plaintiffs also cited evidence suggesting that there are employees required to clean their knives and
hooks at the end of each shift. Filing No. 121, Br. in Opp'n of Mot. for Summ. J., 14. Additionally, plaintiffs
cited to evidence (which defendant does not deny), viewed in the light most favorable to the plaintiffs, that
infers plaintiffs may spend at least some time cleaning some of its clothing and equipment. *See id.* at 14
(stating "while Farmland cleans some of the PPE for the employees, it does not clean the 'hard hat, goggles,
boots, mesh worn underneath,' knives or hooks" (*citing* Vesely Dep. 165:4-12)); Filing No. 124, Def.'s Reply

Defendant contends only that the evidence plaintiffs cite does not support plaintiffs' factual

contentions.  Filing No. 124, Def.'s Reply Br. in Supp. of Mot. for Summ. J., 21.  However,

in its reply, defendant cites to evidence that may suggest there is a question as to whether

and which employees do wash their personal protective equipment.  *See id.* at 21-22.[13]

Furthermore, the contract entered into between the parties includes a provision discussing

compensation for employees that "are to wear and clean such safety equipment at the end

of their shift."  Filing No. 107-2, at 28; Filing No. 107-1, at 31.  Additionally, defendant does

not deny that it "permits employees to clean [personal protective equipment] items in their

departments."  *Id.* at 22.  Finally, defendant's Production Employee Handbook contains

language that strongly suggests that plaintiffs clean their own personal protective

equipment, and that doing so may even be required for defendant's employees to keep

their jobs.[14]

---

Br. in Supp. of Mot. for Summ. J., 22 (stating only that "[p]laintiffs cite no evidence that employees clean their hard hats or goggles, how often they do so . . . or the number of employees who even wear goggles"). The deposition both parties cite states that the defendant is responsible for cleaning some equipment, but not others.  *See* Filing No. 118, Attachment 1, Ex. A, Index in Opp'n to Mot. for Summ. J., Vesely Dep. 162, 165. The inference in plaintiffs' favor is that since defendant does not clean the equipment, plaintiffs do.

[13]Defendant's manager of human resources, Colby Vesely, and defendant's operations manager for its Crete facility, Paul Doremus, each testified in a deposition taken by defendant.  Those depositions contained the following excerpts:  (1) "Vesely also testified that the hooks, which are only used by some employees, do not 'get too dirty,' and all employees need to do is dip the hook park in sanitizer," Filing No. 118, Attachment 1, Vesely Dep. 160:9-17; (2) "Moreover, employees do not need to clean off their PPE in the sinks in their departments, " *Id.* at 159: 11-16; (3) "There are boot washes in most areas with hoses where employees can spray off their boots, but it is not required," *Id.* at 159:24-160:4; (4) "The employees walk through areas where foam is sprayed on the floor[,] and that is . . . sufficient for cleaning. . . ." (alterations in original) Filing No. 118, Attachment 5, Doremus Dep. 173:15-19; (5) "When asked which employees are required to clean their equipment at the end of their shift, Vesely identified only employees who use 'draw knives,' who sanitize their 'draw knife.'" Filing No. 118, Attachment 1, Vesely Dep. 75:12-77:5; (6) "Doremus testified only that Farmland permits employees to clean PPE items in their departments, without any testimony as to which employees ever do so or whether they do so during their shifts," Filing No. 118, Attachment 5, Doremus Dep. 194:6-15.

[14]Defendant's Production Employee Handbook states that it is the employees' responsibility for ensuring the production of safe and wholesome meat products.  Filing No. 118, Attachment 4, Index in Opp'n to Mot. for Summ. J., Ex. G, FARMLAND002163.  In pursuit of producing safe and wholesome meat products, the Production Employee Handbook also states that defendant requires its employees to "wear clean outer garments when in productions areas."  *Id.* at FARMLAND002169.  Furthermore, the defendant's Production Employee Handbook requires employees to keep their personal protective equipment cleaned and sanitized,

Viewing the facts and inferences in the light most favorable to the plaintiffs, this court finds that there is a material question of fact regarding which employees wash personal protective gear and the timing of and the amount of time spent washing personal protective equipment and tools.

### 3. Principal Activity

"[A]ctivities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are an integral and indispensable part of the principal activities" for which the employer employs the employees to perform. _Steiner v. Mitchell_, 350 U.S. 247, 256 (1956). "[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'" _IBP, Inc. v. Alvarez_, 546 U.S. 21, 37 (2005). An employer must compensate an employee for duties the employee performs before and after scheduled work hours if the employer "'knows or has reason to believe' the employee is continuing to work." _Mumbower v. Callicott_, 526 F.2d 1183. 1188 (8th Cir. 1975) (quoting 29 C.F.R. § 785.11). In other words, an employer must compensate an employee if the employer knowingly permits the employee to engage in extra work. _Mumbower_, 526 F.2d at 1188. "Whether a preliminary or postliminary activity . . . is an integral part of the principal activity is a question of fact to be determined from all of the relevant evidence." _Ciemnoczolowski v. Q. O. Ordinance Corp._, 228 F.2d 929, 934 (8th Cir. 1956).

---

and to do so "when entering and/or leaving the department." _Id._ at FARMLAND002170. The Production Employee Handbook also states that "[a]t the end of each day, aprons, sleeves, and arm guards shall be washed and sanitized prior to storage, or discarded if disposable." _Id._ Defendant's Production Employee Handbook provides a list of situations that are "obvious examples" leading to discipline. Filing No. 118, Attachment 4, Index in Opp'n to Mot. for Summ. J., Ex. G, FARMLAND002165. Included in this list are (1) Violating an established safety or environmental rule," (2) ". . . failure to comply with established rules, policies, or procedures, or failure to follow instructions," and (3) ". . . any intentional act of waste or contamination of product." _Id._

The Court in *Steiner* found that the activities of changing clothes and showering performed by battery plant workers who were required to engage in these activities due to health and safety concerns were integral and indispensable to the job the battery plant workers were employed to perform. *Steiner*, 350 U.S. at 248, 255-56. The Department of Labor issued an interpretive regulation suggesting cleaning equipment or tools required for work can be a "principal activity" under 29 U.S.C. § 254(a). *See* 29 C.F.R. § 790.8(b)(1) (providing an example of an activity that is "an integral part of a principal activity" as an employee who operates a lathe "oill[ing], greas[ing] or clean[ing] his machine").[15] Additionally, the Supreme Court of the United States has held that sharpening a knife is a principal activity for someone engaged in butchering activities. *Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956).

This court finds that there is a material question of fact as to whether donning and doffing personal protective equipment, and washing of personal protective equipment are integral and indispensable to the work plaintiffs are employed to perform. Defendant's Production Employee Handbook states that it is the employees' responsibility to ensure the production of safe and wholesome meat products. Filing No. 118, Attachment 4, Index in Opp'n to Mot. for Summ. J., Ex. G, FARMLAND002163. In pursuit of producing safe and wholesome meat products, the Production Employee Handbook also states that defendant requires its employees to wear clean outer garments when in production areas, and "[a]t the end of each day, aprons, sleeves and arm guards shall be washed and sanitized prior to storage, or discarded if disposable." *Id*. at FARMLAND002169. Furthermore, the

---

[15]That Department of Labor regulation also provides that "[s]uch preparatory activities, which the Administrator has always regarded as work and as compensable under the Fair Labor Standards Act, remain so under the Portal Act, regardless of contrary custom or contract." 29 C.F.R. § 790.8(b).

17

Production Employee Handbook requires employees to keep their personal protective equipment cleaned and sanitized, and to do so "when entering and/or leaving the department." *Id.* at FARMLAND002170.  The Production Employee Handbook states specifically that it is the employees' "responsibility to keep [their] personal protective equipment cleaned and sanitized . . . .  Equipment may be called for inspection and must be properly cleaned daily." *Id.* at FARMLAND002170.  Finally, the defendant's Production Employee Handbook states that defendant may discipline its employees, up to and including immediate termination, if employees fail to comply with these responsibilities. *Id.* at FARMLAND002165.[16]

This evidence suggests that employees must donn and doff personal protective equipment and wash their personal protective equipment not only to keep their jobs, but also for health and safety reasons.  The Employee Handbook states that the employees are responsible for producing safe and wholesome meat products.  To do so, it states that employees are required not only to wear personal protective equipment, but to clean it too.  Additionally, protective equipment is meant to protect employees from work-related harms.  Viewing the evidence in the light most favorable to plaintiffs, it appears that donning and doffing personal protective equipment, and washing personal protective equipment are integral and indispensable activity to the job plaintiffs are employed to perform.[17]

---

[16]Defendant's Production Employee Handbook provides a list of situations that are "obvious examples" leading to discipline.  Filing No. 118, Attachment 4, Index in Opp'n to Mot. for Summ. J., Ex. G, FARMLAND002165.  Included in this list are (1)"Violating an established safety or environmental rule," (2) ". . . failure to comply with established rules, policies, or procedures, or failure to follow instructions," and (3) ". . . any intentional act of waste or contamination of product." *Id.*

[17]*See also* Wage & Hour Division, Dep't of Labor, Field Operations Handbook, Chp. 31, § 31b01, available at http://www.dol.gov/whd/FOH/index.htm ("[t]here are certain instances in which clothes changing and washup activities . . . are integral parts of the principal activities of the employees because the nature of the work makes the clothes changing and washing indispensable to the performance of the productive work by the employees").

Therefore, the defendant's motion to dismiss on the issues of donning, doffing, and washing are denied.

**B.      Walking and Waiting under 29 U.S.C. § 254(a)**

The Portal-to-Portal Act relieves employers of liability for overtime compensation by providing that activities that are preliminary and postliminary to principal activities which an employee is employed to perform are not compensable except when the activity is made compensable by contract or custom.  *See* 29 U.S.C. § 254(a), (b).[18]  However, if an activity is expressly made compensable by contract or custom or practice, then the Portal-to-Portal Act does not protect an employer from liability for time spent "walking . . . or traveling to and from the actual place of performance of the principal activity . . . and activities which are preliminary to or postliminary to said principal activity."  29 U.S.C. § 254(a), (b). "[A]ctivities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are an integral and indispensable part of the principal activities" for which the employer employs the employees to perform.  *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).  "[A]ny activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'"  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

---

[18]The Portal-to-Portal Act states:

[N]o employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended . . . on account of the failure of such employer to pay an employee . . . overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
(2) activities which are preliminary to or postliminary to said principal activity or activities,

which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

"Whether a preliminary or postliminary activity . . . is an integral part of the principal activity is a question of fact to be determined from all of the relevant evidence." *Ciemnoczolowski v. Q. O. Ordinance Corp.*, 228 F.2d 929, 934 (8th Cir. 1956).

As previously explained in this Memorandum and Order, there is a material question of fact as to whether donning and doffing personal protective equipment, and washing personal protective equipment are integral and indispensable to job the employees are employed to perform.  As a result, there is also a material question of fact as to whether time spent walking to the production line and waiting at the production line after donning personal protective gear, and time spent walking from the production line and waiting to doff personal protective gear, is integral and indispensable to the job plaintiffs are employed to perform.  Therefore, defendant's motion for summary judgment on the issue of walking and waiting time is denied.

THEREFORE, IT IS ORDERED that defendant's motion for partial summary judgment, Filing No. 105, is:

1.  Denied on the issue of "changing clothes" under 29 U.S.C. § 203(o);

2.  Denied on the issue of "washing" under 29 U.S.C. § 203(o); and

3.  Denied on the issue of "walking and waiting" under 29 U.S.C. § 254(a).

DATED this 16th day of August, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.