**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| MARIA GUZMAN MORALES and MAURICIO GUARJARDO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FARMLAND FOODS, INC., a Delaware Corporation and subsidiary of Smithfield Foods,<br><br>Defendant. | Case No. 8:08-cv-504- JFB-TDT<br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PROTECTIVE ORDER** |

Plaintiffs Maria Guzman Morales and Mauricio Guajardo ("Plaintiffs"), on behalf of themselves and all other similarly situated employees of Defendant Farmland Foods, Inc. ("Defendant"), through their undersigned counsel, respectfully submit this reply memorandum of law in support of their Motion for Protective Order (Dkt. No. 158).

## I.   <u>INTRODUCTION</u>

Defendant Farmland Foods' Opposition to Plaintiffs' Motion for Protective Order is filled with erroneous arguments and mischaracterizes the facts at issue in Plaintiffs' Motion.  Despite its arguments to the contrary, Defendant should not be allowed to seek extensive written discovery (in the form of 103 separate discovery requests) from each and every Opt-In Plaintiff in this matter.  Defendant's approach to discovery is abusive, harassing and contravenes the purposes of the FLSA collective action procedure.  As such, Plaintiffs respectfully request that this Court grant their Motion for Protective Order.

1

## II.    DEFENDANT ALREADY HAS ACCESS TO THE INFORMATION IT SEEKS IN ITS DISCOVERY REQUESTS

Plaintiffs were forced to request a Protective Order from this Court after Defendant served 103 separate discovery requests on every single individual who has opted-in to this lawsuit, despite the fact that the parties were engaged in meet and confer efforts regarding the scope of discovery.  Defendant attempts to justify this course of conduct by arguing that it will not have access to information it needs to adequately defend against Plaintiffs' claims unless every single Opt-In Plaintiff is required to respond to its burdensome and abusive discovery requests.  This is disingenuous at best.

As an initial matter, Defendant agreed to accept discovery responses from a representative sample of the Opt-In Plaintiffs during the parties' meet and confer negotiations.  *See* Declaration of Carolyn Cottrell (Dkt. No. 160) ("Cottrell Decl.") at ¶ 10.  Plaintiffs believed the parties were working towards a compromise with respect to the size of the representative sample when Defendant propounded its final round of discovery requests on 236 Opt-In Plaintiffs.  *Id*. at ¶¶ 12-15.  For Defendant to now argue that it cannot obtain the information it needs without individual discovery responses from every Opt-In Plaintiff is contrary to its earlier agreement to accept a representative sample.

Furthermore, given Defendant's role as the employer or former employer of all of the Opt-In Plaintiffs, Defendant already possesses, or has access to, virtually all of the information it seeks in its discovery requests, such as the personal protective equipment the Opt-In Plaintiffs were required to wear and the tools they were required to use.  Defendant's decision to request information it already possesses from every single Opt-In Plaintiff can only be described as harassing conduct.

If Defendant is allowed to proceed with individualized discovery with respect to every Opt-In Plaintiff in this matter, Defendant will succeed in effectively circumventing the goals of the FLSA collective action mechanism, namely economy and efficiency.  *See Reich v. Homier Distributing Co., Inc.*, 362 F.Supp.2d 1009, 1015 (N.D. Ind. 2005) (noting that "individual discovery destroys the economy of scale envisioned by the FLSA collective action procedure") (citations omitted)).  The procedure suggested by Plaintiffs, wherein a random representative sample of Opt-In Plaintiffs would respond to discovery, is in line with those goals.  *See Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701-02 (3rd Cir. 1994) (representative testimony appropriate for calculating FLSA damages); *Donovan v. Burger King Corp.*, 672 F.2d 221, 224-25 (1st Cir. 1982) (representative testimony appropriate for determining FLSA liability).  However, Defendant has been unwilling to agree to such a procedure.  Instead, Defendant has conditioned the use of a representative sampling procedure on Defendant being allowed to choose the individual Opt-Ins who would respond to discovery.  In utilizing a *representative* sample, the goal is to provide discovery responses from a cross-section of the Opt-In Plaintiff Class, not just from the individuals Defendant has cherry-picked to respond to discovery based on its goals in this litigation.

As such, providing discovery responses from a randomly-chosen, representative sample of Opt-In Plaintiffs is the most efficient way to proceed, is in line with the goals of the FLSA and will provide Defendant with sufficient information to adequately litigate its defenses to Plaintiffs' claims.

### III.    DEFENDANT MISCHARACTERIZES THE MEET AND CONFER PROCESS IN ITS OPPOSITION

Defendant also mischaracterizes critical portions of the extensive, though ultimately unsuccessful, meet and confer process the parties engaged in prior to the filing of this Motion.  Defendant claims that it requires discovery responses from each and every Opt-In Plaintiff in this matter because Plaintiffs refused to agree that discovery answered by a representative sample of the Opt-Ins would be binding on all Opt-Ins at trial.  Defendant insinuates that Plaintiffs plans to "surprise" Defendant at trial by introducing testimony from Opt-In Plaintiffs who did not provide discovery responses. Plaintiffs have no intention of introducing "surprise" testimony at trial, a fact of which Defendant is well aware.  Indeed, Defendant fails to mention in its Opposition that Plaintiffs agreed during the meet and confer process that they would not offer testimony in their case-in-chief at trial from individuals who had not responded to discovery requests.  Cottrell Decl. at ¶ 10.

### IV.    THE APPROPRIATE FORUM TO ARGUE THAT OPT-IN PLAINTIFFS ARE NOT SIMILARLY SITUATED WAS A DECERTIFICATION MOTION, WHICH DEFENDANT FAILED TO FILE ON TIME

Defendant also inappropriately uses its Opposition to Plaintiffs' Motion for Protective Order as a platform to argue that the Opt-In Plaintiffs are not "similarly situated" for purposes of collective action treatment.  Defendant had the opportunity to argue that the Opt-In Plaintiffs are not sufficiently "similarly situated" to constitute a collective action by filing a decertification motion.  Defendant chose not to file such a motion within the required time period.  Defendant now apparently regrets that decision, as evidenced by its request that this Court grant Defendant another opportunity to file a decertification motion and the fact that it interjects arguments regarding differences

4

between Opt-In Plaintiffs at every available opportunity.  However, the fact remains that

Defendant allowed the deadline to appropriately make this argument to pass without

filing a motion alleging that the Opt-In Plaintiffs are not similarly situated.

**V.      RESPONDING TO DEFENDANT'S ABUSIVE DISCOVERY WILL BE UNDULY BURDENSOME AND EXPENSIVE FOR PLAINTIFFS**

In its Opposition, Defendant claims that responding to its discovery requests (17

interrogatories, 20 requests for production and 66 requests for admission) will not cause

Plaintiffs undue burden and/or expense.  Defendant further claims that, because Plaintiffs

provided 1-2 page declarations of 5 Opt-In Plaintiffs in support of Plaintiffs' Oppositions

to two of Defendant's many Motions for Partial Summary Judgment, it would not be

unduly expensive or burdensome to respond to all 103 of Defendant's discovery requests

on behalf of the nearly 300 Opt-In Plaintiffs.  The argument is nonsensical on its face.

Plaintiff Mauricio Guajardo's discovery responses were a total of 47 pages long.  Plaintiff

Morales' responses were 58 pages long.  As discussed in Plaintiffs' moving papers, the

preparation of these documents required a significant expenditure of attorney time,

including interviewing, translating and drafting components.  There simply can be no

logical comparison between the preparation of a small number of very short declarations

and the preparation of nearly 300 sets of extensive discovery responses.

Contrary to Defendant's arguments, this is surely the type of abusive discovery

procedure Federal Rule of Civil Procedure 26(b)(1)-(2) was meant to prevent.  Plaintiffs

would incur undue burden and expense if they were forced to respond to 103 separate

discovery requests for each of the nearly 300 Opt-In Plaintiffs in this matter.

Furthermore, the burden on Plaintiffs of gathering and neatly packaging this information

for Defendant certainly outweighs any benefit to Defendant, given that Defendant already possesses, or has access to, virtually all of the requested information.

## VI.     CONCLUSION

In essence, Defendant characterizes Plaintiffs' Motion for Protective Order as an attempt to victimize Defendant and prevent it from gathering necessary information.  On the contrary, Defendant is using the discovery process to harass and abuse the individuals who have opted-in to this matter by propounding 103 separate discovery requests, primarily for information Defendant already has in its possession, on every single one of the 281 Opt-In Plaintiffs, for a total of 28,943 discovery requests.  For the foregoing reasons, and those stated in Plaintiffs' moving papers, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Protective Order.

Dated: August 23, 2010                    Respectfully submitted,

s/Carolyn H. Cottrell_____
CAROLYN H. COTTRELL
Attorneys for Plaintiffs and the putative class

Todd M. Schneider (*pro hac vice*)
Carolyn H. Cottrell (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com

Shanon J. Carson (admitted *pro hac vice*)
Russell D. Henkin (admitted *pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604

scarson@bm.net
rhenkin@bm.net

Philip A. Downey (admitted *pro hac vice*)
P.O. Box 736
Unionville, Pennsylvania 19375
Tel: (610) 324-2848
Fax: (610) 347-1073
downeyjustice@gmail.com

James R. Welsh
Christopher P. Welsh
WELSH & WELSH, PC, LLO
9290 West Dodge Rd
100 The Mark
Omaha, NE  68114
Tel:  402 384 8160
Fax:  402 384 8211
jwelsh@welsh-law.com
cwelsh@welsh-law.com

Attorneys for Plaintiffs and the Class

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2010 I electronically filed the above document with the

Clerk of the Court using the CM/ECF system, which sent notification of such filing to the

following:

> Allison D. Balus
>
> Jonathan D. Berger
>
> Carolyn H. Cottrell
>
> Shanon J. Carson
>
> Steven D. Davidson
>
> Erika Dillon
>
> Philip A. Downey
>
> Kathryn M. Engdahl
>
> Jeremy J. Glenn
>
> Michael Hamilton
>
> Russell D. Henkin
>
> Brian P. McCafferty
>
> Roger J. Miller
>
> Robert D. Metcalf
>
> L. Dale Owens
>
> Jacob M. Rubinstein
>
> Todd M. Schneider
>
> Joseph E. Tilson
>
> Christopher P. Welsh
>
> James R. Welsh

Date: August 23, 2010                    Respectfully submitted,

                                          *s/ Carolyn H. Cottrell*

Carolyn H. Cottrell (*pro hac vice*)
Cal Bar #166977
SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com

Attorneys for Plaintiffs