IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIA GUZMAN MORALES and MAURICIO GUARJARDO, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>vs.<br><br>FARMLAND FOODS, INC., a Delaware Corporation and subsidiary of Smithfield Foods,<br><br>                Defendant. | Case No. 8:08-cv-504-JFB-TDT<br><br>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PROTECTIVE ORDER AND FOR RULE 37 AND 28 U.S.C. § 1927 SANCTIONS FOR DISOBEYING A COURT ORDER |

Plaintiffs Maria Guzman Morales and Mauricio Guarjardo ("Plaintiffs"), on behalf of themselves and all other similarly situated employees of Defendant Farmland Foods, Inc. ("Defendant" or "Farmland"), through their undersigned counsel, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Protective Order and for Rule 37 and 28 U.S.C. § 1927 Sanctions for Disobeying a Court Order.

I.   **INTRODUCTION**

On August 27, 2010, this Court issued an Order granting Plaintiffs' motion for a protective order and denying Defendant's abusive request for full discovery from almost 300 Opt-In Plaintiffs. The Court ordered that discovery could be taken from fifteen percent (15%) of the Opt-Ins, a procedure Plaintiffs proposed prior to filing their motion. Pursuant to that Order, the parties agreed on a procedure to randomly select 44 Opt-Ins who would respond to discovery. Defendant subsequently served **66** Requests for Admission ("RFAs") (not including subparts) on each of the 44 Opt-In Plaintiffs who were selected for discovery. Plaintiffs objected, and when

Defendant refused to serve a less abusive set of RFAs, Plaintiffs moved for a protective order requesting that reasonable limits be imposed to relieve the burden of responding to these 2,904 requests (with most of those containing additional numerous subparts).

On November 30, 2010, this Court issued an Order limiting Defendant to serving "***a total of twenty requests for admission, including any sub-parts***." November 30, 2010 Order, Dkt. No. 272, at p. 5 (emphasis added). The Court issued this Order after noting that Plaintiffs had met their burden of showing that without Court-ordered limits, Plaintiffs would be subject to unusual, undue, or extraordinary burden.

On December 16, 2010, Defendant served Plaintiffs with a purported amended set of 20 RFAs. Included in this set, however, are at least ***270*** subparts. Most disturbing, however, is the manner in which Defendant whittled their 66 prior RFAs into 20. As shown in Plaintiffs' meet and confer letter and chart attached hereto as Exhibit A, Defendant simply ignored the Court's Order and combined multiple RFAs into a smaller number. This is a direct and explicit violation of the Order. For the reasons set forth below, Plaintiffs respectfully request that the Court protect them from this tactic and issue appropriate sanctions, including that Defendant be prohibited from issuing any RFAs and pay for Plaintiffs' time and costs in addressing this issue.

## II.  STATEMENT OF FACTS

### A.  Defendant's RFAs Directly Violate The Court's November 30, 2011 Order

On November 30, 2010, the Court expressly limited Defendant to serving "a total of twenty requests for admission, including any sub-parts" on the fifteen percent of Opt-In Plaintiffs randomly selected for discovery. November 30, 2010 Order, Dkt. No. 272 at p. 5. The Court's Order was issued after it considered the 66 RFAs Defendant originally served. *See* Exhibit B (Defendant's "First RFAs"). Despite the Court's express language, Defendant served its Amended RFAs (attached as Exhibit C) containing the equivalent of more than half of the First

RFAs with *273* subparts that include additional substantive requests that were not in the First RFAs. Worse, Defendant repeatedly combined separate RFAs from the first set and put them together to create the Amended RFAs in circumvention of the Court's Order.

On February 8, 2011, Plaintiffs sent a meet and confer letter to Defendant. *See* Exhibit A. Plaintiffs gave Defendant an opportunity to fix the transgression and avoid bringing the issue to the Court. During a phone call on February 14, 2011, Defendant refused to amend its RFAs, even after Plaintiffs stated they would have no choice but to move for sanctions.

**Amended RFA No. 5**

Amended RFA Number 5 is a clear combination of First RFA Numbers 6 & 19. The text of First RFA Number 6 asks whether Plaintiff obtained any of *19* items of equipment from a distribution and collection station in the department. Similarly, First RFA Number 19 requests that same information for "straight knives." Clearly, Defendant believes that these two RFAs are properly designated as separate RFAs as *Defendant originally submitted them as separate RFAs*. Additionally, Defendant used separate interrogatories to request answers based on two distinct categories: clothing and equipment as compared to portable tools. In Defendant's Amended RFA Number 5, Defendant combined First RFA Numbers 6 & 19 by adding a subpart to First RFA Number 6 to request the same information for "Straight Knives."

**Amended RFA No. 6**

In Amended RFA No. 6, Defendant has combined multiple First RFAs into one single Amended RFA in violation of the Court-imposed limitations. In First RFA Number 8, Farmland asks whether Plaintiff was required to wash any of *26* items of safety clothing and equipment before the start of a shift. Farmland then requests in First RFA Number 20, whether Plaintiff was required to wash straight knives prior to the beginning of the shift. Similarly, First RFA

3

Number 34[1] requests whether Plaintiff was required to wash hooks during unpaid time. Defendant therefore agrees that these requests are properly separate RFAs as Defendant *originally submitted them as separate RFAs.* Additionally, Defendant separated interrogatories requesting information on clothing and safety equipment from those requesting information on portable tools indicating a clear belief that the concepts are discrete. In Defendant's Amended RFA Number 6, Defendant combines the three separate First Amended RFAs into a single Amended RFA. Defendant combined First RFA Numbers 8, 20 & 34 by adding subparts to RFA Number 8 to request the same information for "Straight Knives" and "Hook[s]."

### Amended RFA No. 9

Amended RFA Number 9 is a clear combination of First RFA Numbers 11 & 23 and also adds an additional request. First RFA Number 11 asks whether Plaintiff was permitted to leave any of 26 items that were doffed at an unpaid break at or near the work station. Similarly, First RFA Number 23 requests that same information for straight knives. Defendant must agree that these requests are properly separate RFAs as *Defendant originally submitted them as separate RFAs.* Additionally, Defendant separated interrogatories requesting information on clothing and safety equipment from those requesting information on portable tools indicating a clear belief that the concepts are discrete. In Defendant's Amended RFA Number 9, Defendant combines the two First RFAs (Numbers 11 & 23) by adding a subpart to the text of First RFA Number 11 to add "Straight knives" to the request. In addition, Defendant added an extra subpart to request that same information for a "Hook" if Plaintiff used one. In effect, Defendant has combined the substance of three discrete RFAs in order to make one single Amended RFA.

### Amended RFA No. 10

---

[1] First RFA Number 34 is, itself, impermissibly compound as evidenced by the fact that the substance requested actually covers three discrete Amended RFAs. *See* Chart (Exhibit A).

In Amended RFA No. 10, Defendant has combined multiple RFAs from the First RFAs into one single Amended RFA in violation of the Court-imposed limitations. Amended RFA Number 10 is clearly a combination of First RFA Numbers 12, 24 & 34. First RFA Number 12 requests whether Plaintiff was required to wash any of 26 items during any unpaid break. Farmland then requests in First RFA Number 24, whether Plaintiff was required to wash straight knives during any unpaid break. Similarly, First RFA Number 34 requests whether Plaintiff was required to wash hooks during unpaid time. Defendant must agree that these requests are properly separate RFAs as *Defendant originally submitted them as separate RFAs*. Additionally, Defendant separated interrogatories requesting information on clothing and safety equipment from those requesting information on portable tools indicating a clear belief that the concepts are discrete. In Amended RFA Number 10, Defendant combines three First RFAs (Numbers 12, 24 & 34) by adding subparts to the text of First RFA Number 12 to add "Straight knives" and "Hook[s]" to the request.

### Amended RFA No. 11

Amended RFA Number 11 is a clear combination of First RFA Numbers 13 & 25 and also adds an additional request. First RFA Number 13 asks whether Plaintiff was permitted to don of 26 items at the work station immediately before handling meat at the end of unpaid breaks.[2] Similarly, First RFA Number 25 requests that same information for straight knives. Defendant must agree that these requests are properly separate RFAs *as Defendant originally submitted them as separate RFAs*. Additionally, Defendant separated interrogatories requesting information on clothing and safety equipment from those requesting information on portable

---

[2] By not addressing the literal impossibility of putting on more than one item "immediately before handling meat at the end of your unpaid breaks" Plaintiffs do not mean to suggest the language is not otherwise objectionable.

5

tools indicating a clear belief that the concepts are discrete.  In Defendant's Amended RFA Number 11, Defendant combines the two First RFAs (Numbers 13 & 25) by adding a subpart to the text of First RFA Number 13 to add "Straight knives" to the request.  In addition, Defendant added an extra subpart to request that same information for a "Hook" if Plaintiff used one.  In effect, Defendant has combined the substance of three discrete RFAs in order to make one single Amended RFA.

### Amended RFA No. 13

In Amended RFA No. 13, Defendant has combined multiple RFAs from the First RFAs into one, single Amended RFA in violation of the Court-imposed limitations.  Amended RFA Number 13 is clearly a combination of First RFA Numbers 15, 26 & 34.  First RFA Number 15 requests whether Plaintiff was required to wash any of 26 items at the end of the shift.  Farmland then requests in First RFA Number 26, whether Plaintiff was required to wash straight knives at the end of the shift.  Similarly, First RFA Number 34 requests whether Plaintiff was required to wash hooks during unpaid time.  Defendant must agree that these requests are properly separate RFAs *as Defendant originally submitted them as separate RFAs*.  Additionally, Defendant separated interrogatories requesting information on clothing and safety equipment from those requesting information on portable tools indicating a clear belief that the concepts are discrete.  In Amended RFA Number 13, Defendant combines three First RFAs (Numbers 15, 26 & 34) by adding subparts to the text of First Number 15 to add "Straight knives" and "Hook[s]" to the request.

### Amended RFA No. 14

Amended RFA Number 14 is a clear combination of First RFA Numbers 17 & 27.  The text of First RFA Number 17 asks whether Plaintiff dropped off any of 19 items of equipment

6

from a distribution and collection station in the department.  Similarly, First RFA Number 27 requests that same information for "Straight knives."  Clearly, Defendant believes that these two RFAs are properly designated as separate RFAs as evidenced both by the separation in the First RFAs, but also by the separate interrogatories that request answers based on two distinct categories: clothing and equipment as compared to portable tools.  In Defendant's Amended RFA Number 14, Defendant combined First RFA Numbers 17 & 27 by adding a subpart to First RFA Number 17 to request the same information for "Straight knives."

### Amended RFA No. 17

Defendant's Amended RFA Number 17 is a blatant combination of two First RFAs creating a clear and improper compound RFA.  First RFA 32 states:

> During your employment with Farmland Foods, if you used a draw knife you *cleaned* it during paid time.

(emphasis added).  First RFA 33 then states:

> During your employment with Farmland Foods, if you used a draw knife you *sharpened* it during paid time.

(emphasis added).  Then, in Defendant's Amended RFA 17, Defendant combines the two First RFAs into one, single, compound RFA:

> During your employment with Farmland Foods, if you used a draw knife you *cleaned* and *sharpened* it during paid time.

(emphasis added).  Defendant must agree that these requests are properly separate RFAs *as Defendant originally submitted them as separate RFAs*.

### Amended RFA No. 18

In Amended RFA Number 18, Defendant combined six, separate First RFAs – many of which were, themselves, compound – into one, single Amended RFA.  In First RFA Number 35, Defendant asks whether Plaintiffs are permitted to take their "blues" or "whites" to and from

7

home each work day. In a similar vein, Defendant repeats that request in Number 37 for "steel toe boots," Number 38 for "Kevlar glove or a silver talon glove," Number 39 for a "draw knife, draw knife guard, or a sharpening stone," Number 40 for "a steel or 'mousetrap,'" and Number 41 for a "hook." Defendant must agree that these requests are properly separate RFAs *as Defendant originally submitted them as separate RFAs*. Additionally, Defendant separated interrogatories requesting information on clothing and safety equipment from those requesting information on portable tools indicating a clear belief that at least those concepts are discrete. In Amended RFA 18, Defendant simply combines all six of the compound First RFAs into one, single Amended RFA.

### Amended RFA No. 19

Similar to Amended RFA 17, Amended RFA 19 combines the substance of multiple First RFAs to create a single Amended RFA. First RFA Number 48 asks whether Plaintiff was credited with additional minutes of paid time for donning activities. First RFA Number 49 asks the same question for doffing activities, and First RFA Number 50 requests the same information for washing activities. Defendant must agree that these requests are properly separate RFAs *as Defendant originally submitted them as separate RFAs*. Amended RFA Number 19 combines all three discrete First RFAs into one, single Amended RFA.

**III.   ARGUMENT**

The Court may issue a protective order under Rule 26 of the Federal Rules of Civil Procedure, for good cause, to protect a party from annoyance, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c)(1). Indeed, "[t]he District Court does have discretion to limit the scope of discovery." November 30, 2010 Order, Dkt. No. 272 (quoting *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998)). The Court may, on motion or on its own, limit the frequency or extent of discovery otherwise allowed where the burden or expense outweighs the

8

evidentiary value. Fed. R. Civ. P. 26(b)(2). Thus, the Court may limit the scope of discovery due to undue burden or expense under either Rule 26(c)(1) or 26(b)(2).

Limiting the scope of discovery is appropriate in the context of the FLSA collective action procedure because individual discovery of opt-in plaintiffs can "destroy 'the economy of scale envisioned by the collective action procedure." *Reich v. Homier Distr. Co.*, 362 F. Supp. 2d 1009, 1015 (N.D. Ind. 2005). Thus, the district court must intervene where "the burden and expense [of] the requested discovery . . . on Plaintiffs clearly outweighs the likely benefit [to Defendant]." Order, Dkt. No. 272, 8:08-cv-504 (D. Neb. Nov. 30, 2010) (*quoting Geer Challenge Fin. Investors Corp.*, No. 05-1109, 2007 WL 1341774 (D. Kan. May 4, 2007); *see also Fast v. Applebee's Int'l, Inc.*, No. 06-4146, 2008 WL 5432288 (W.D. Mo. Dec. 31, 2008) (denying motion to compel interrogatory responses from each opt-in plaintiff).

Regardless whether the Court treats this motion under Rule 26(c) as a protective order or Rule 26(b) as a discretionary limit on discovery, at a minimum, the limitations on the scope of Opt-In Plaintiff discovery in this case should be commensurate with the Court's November 30, 2010 Order. The law of the case dictates that the 20 RFA limit (including subparts) be the upper limit on permissible requests.

### A. Defendant Should Be Sanctioned Because It Has Directly Violated A Court Order And Prejudiced Plaintiffs

#### 1. Sanctions Should Be Issued Under Fed. R. Civ. P. 37

Rule 37 of the Federal Rules of Civil Procedure provides for sanctions where a "party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A); *see also Carlson v. Freightliner LLC*, 226 F.R.D. 343, 372 (D. Neb. 2004) (discussing sanctions available under Rule 37(b)). Upon a finding of such a violation, district courts are vested with discretion to impose sanctions upon a party under their inherent disciplinary power. *Bass v. General*

9

*Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998). In particular, "whether the extent of a sanction is appropriate is a question peculiarly committed to the district court." *Id.* (quoting *Dillon v. Nissan Motor, Co., Ltd.*, 986 F.2d 263, 267 (8th Cir. 1993)).

In applying the Court's inherent powers, a showing of bad faith is not necessary to support a monetary sanction against counsel nor is there a "bad faith" requirement for every possible disciplinary exercise of the court's inherent power. *See Dillon*, 986 F.2d at 267. In *Davenport Grain Co. v. J. Lynch & Co., Inc.*, the Nebraska district court noted that, in considering sanctions, the court considers: "the extent of the culpability of the [offending party]; the extent of the harm suffered by the [moving party] and the delays caused in the progression of the cases; the purposes and effects of sanctions; and the desire to avoid punishing parties for the misconduct of their counsel." 109 F.R.D. 256, 261 (D. Neb. 1985).

In addition to other applicable sanctions, a court must order the payment of "reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Figueroa v. Tyson Fresh Meats, Inc.*, No. 8:06-CV-748, 2009 WL 2386066 at *1 (D. Neb. July 28, 2009) (quoting Fed.R.Civ.P. 37(d)(3)).

Here, the Court's November 30, 2010 Order was clear and unambiguous as to the fact that Defendant's original 66 RFAs plus subparts were excessive and constituted an extraordinary and undue burden on Plaintiffs. As depicted in Exhibit A and described above, Defendant took multiple RFAs and consolidated them into single RFAs to directly circumvent the Court-imposed limit of 20 RFAs. Rule 37 permits the Court to impose sanctions in the form of: prohibiting the disobedient party from introducing designated matters into evidence, staying further proceedings until the order is obeyed, or treating as contempt of court the failure to obey the order. Plaintiffs

request a sanction that Defendant's right to issue RFAs has been waived and that Defendant also pay Plaintiffs' fees and costs in addressing this issue.

### 2. Sanctions Should Be Issued Under 28 U.S.C. § 1927

Sanctions are also proper under 28 U.S.C. § 1927 "when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Lee v. First Lenders Ins. Servs. Inc.*, 236 F.3d 443, 445 (8th Cir. 2001) (quoting *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999)); *Sherman v. Sunsong Am. Inc.*, No. 8:04-cv-300, 2007 WL 1310057, at *1 (D. Neb. 2007) (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990)); *see also Williams v. Packaging Corp. of Am.*, 2010 U.S. Dist. LEXIS 34105 at *13 (M.D. Ga. April 7, 2010) (noting that "there are multiple sources available to district courts to impose sanctions against an attorney, the client, or both," including 28 U.S.C. § 1927). This statute provides, in relevant part, that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (2006). "Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so. Thus if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under section 1927." *Sherman*, 2007 WL 1310057, at *1 (quoting *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990)).

Here, Defendant was under a clear mandate from this Court to cut its RFAs from 66 to 20, including subparts, because the Court had found more than that would constitute an undue and extraordinary burden on Plaintiffs. Nevertheless, Defendant took its 66 RFAs and shoehorned more than thirty-six of them into 20 amended RFAs. When subparts are considered, Defendant has attempted to serve over 270 RFAs in its amended submission. This directly

disobeys the Court's November 30, 2010 Order.  Just as importantly, Defendant was already put on notice that submitting more than 20 RFAs constituted an extraordinary burden on Plaintiffs.  By subsequently serving in excess of 20 RFA, Defendant in bad faith multiplied these proceedings in an unreasonable, harassing and annoying fashion.  As such, the sanctions sought by Plaintiffs are also warranted under Section 1927.

### IV.     CONCLUSION

Based upon the reasons stated above, Plaintiffs respectfully request that this Motion be granted in its entirety, and that Defendant's right to issue RFAs has been waived and that Defendant also pay Plaintiffs' fees and costs in addressing this issue.  Upon the request of this Court, Plaintiffs will submit an affidavit of fees and costs setting forth those amounts.

Date: February 16, 2011              Respectfully submitted,

/s/ Shanon J. Carson
Shanon J. Carson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604
scarson@bm.net

Todd M. Schneider
Carolyn H. Cottrell
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com

Philip A. Downey (admitted *pro hac vice*)
P.O. Box 736
Unionville, Pennsylvania 19375

>
> Tel: (610) 324-2848
> Fax: (610) 347-1073
> downeyjustice@gmail.com
>
> James R. Welsh
> Christopher P. Welsh
> WELSH & WELSH, PC, LLO
> 9290 West Dodge Rd
> 100 The Mark
> Omaha, NE  68114
> Tel:  402 384 8160
> Fax:  402 384 8211
> jwelsh@welsh-law.com
>
> *Attorneys for Plaintiffs*