IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIA GUZMAN MORALES & <br> MAURICIO R. GUARJARDO, <br><br> Plaintiffs, <br><br> v. <br><br> FARMLAND FOODS, INC. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> )    CASE NO. 8:08-cv-504 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## DEFENDANT FARMLAND FOODS, INC.'S BRIEF IN SUPPORT OF MOTION TO RE-SET A DEADLINE FOR ALL DISCOVERY MOTIONS

Defendant, Farmland Foods, Inc. ("Farmland"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 16 and 37, and NECivR 16.1(a), files this Brief in Support of its Motion to Re-Set a Deadline for All Discovery Motions.

Discovery closed June 9, 2011. As of the date of this motion, Farmland has produced 164 boxes of business records and, separately, over 83,000 other pages of personnel files, payroll information, policies, procedures, training materials, and production department lists. Farmland also produced 17 individuals for depositions, responded to 78 document requests, 50 interrogatories, and 13 document requests in deposition notices. Some of Farmland's responses included objections. From time to time Plaintiffs informally have raised various issues with Farmland's discovery responses, but Plaintiffs have never filed a motion to compel challenging any objection or response to any discovery request, or any alleged deficiency with Farmland's document production.

Farmland is concerned that Plaintiffs will wait to seek judicial review of any alleged problems with Farmland's discovery responses and document production until the eve of

1

trial or, worse yet, after the jury is empanelled.  This Court previously set a deadline for discovery motions.  The original deadline was vacated due to extensions of the original discovery deadline and has not yet been re-set.  Farmland requests that this Court re-set a discovery motion deadline for the parties to raise whatever disputes they may have regarding discovery, so that any and all such disputes can be presented well in advance of the March 2012 trial.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 23, 2009, as part of a scheduling order, this Court set a deposition deadline of August 31, 2010, and required all discovery motions to be filed by that date. (Filing No. 91.)  At the request of the parties, the Court extended the discovery deadline multiple times, ultimately re-setting that deadline to June 9, 2011.  The Court has not yet taken up the issue of re-setting the deadline for discovery motions.

**A.     Farmland's Responses And Objections to Discovery[1]**

On April 9, 2009, Plaintiffs served Farmland with 78 document requests.  On June 10, 2009, over two years ago, Farmland timely responded to the requests.  Farmland also objected to multiple requests for various reasons.  In particular, Farmland objected that many requests failed to state with particularity the items or category of documents sought as required by Fed. R. Civ. P. 34(b)(1)(A), or were overly broad or vague.  Farmland served amended responses to the requests on March 3, 2010, preserving and restating prior objections.

On April 9, 2009, Plaintiffs served Farmland with 50 interrogatories.  On June 10, 2009, over two years ago, Farmland timely responded to the interrogatories, providing answers

---

[1] In addition to written discovery, Farmland produced 17 individuals for depositions on January 28, 2010, March 9-11, 2010, April 22, 2010, July 28-30, 2010, August 4-5, 2010, August 26-27, 2010, and April 13-14, 2011.

2

and objections. Farmland served amended and supplemental responses on March 3, 2010 and July 28, 2010, again preserving and restating prior objections.

Plaintiffs never have filed any motion to compel challenging any objection or asserting any alleged deficiency in Farmland's written discovery responses or document production. Farmland has asked Plaintiffs to stipulate to a deadline for all discovery motions, but they refused to do so. Instead, they have insisted that unless Farmland now identify for them every document that Farmland ever has created or maintained (a demand they never made during discovery), they should be allowed to wait until trial to raise any discovery motion. They have not pointed to any rule or law to support that unprecedented demand.

**B.     Farmland's Document Production**

  1.   Farmland Has Produced, and Plaintiffs Have Received Copies of, Over 83,000 Pages of Documents.

In response to the document requests, Farmland provided, and Plaintiffs have copies of, over 83,000 pages of documents. The 83,000 pages consist of over 80,000 pages of personnel files and punch records for each Plaintiff (including Opt-In Plaintiffs), which Farmland produced and Plaintiffs' counsel retrieved and copied in July 2010. Farmland again produced the personnel files in June 2011 for inspection and copying; however, Plaintiffs' counsel chose not to copy any of those files at that time. The 83,000 pages also included payroll information, policies, procedures, training materials, and production department lists. Farmland supplemented these documents throughout the litigation, including as recently as August 15, 2011. Farmland also has produced extensive electronic files.

  2.   Farmland Separately Produced 168 Boxes of Documents.

In response to Plaintiffs' document requests, Farmland also made over 100 boxes of documents available for inspection and copying in June 2010, over 15 months ago. *See* Balus

3

Aff. at ¶3. These included various daily records such as transfer sheets, employee time detail, guarantee statements, hand exercise forms, and exceptions. Plaintiffs' counsel chose not to inspect or copy all of the boxes of documents that Farmland made available at that time. Instead, Plaintiffs' counsel demanded that Farmland produce a sample, defined by Plaintiffs' counsel, consisting of those documents relating to specified weeks and months for every year of the class period. *See* Balus Aff. at ¶3.

On July 13, 2010, in accordance with Plaintiffs' counsel's demand, Farmland produced nine boxes of documents, consisting of documents for the first two weeks of December 2005, December 2006, June 2007, December 2007, June 2008, December 2008, June 2009, December 2009, and June 2010. *See* Balus Aff. at ¶4. Plaintiffs' counsel picked up the nine boxes on July 13, 2010. Farmland placed no fixed time limit for Plaintiffs' counsel to inspect and copy the documents at their discretion. Over three weeks later, on August 6, 2010, Plaintiffs' counsel returned the documents – presumably having copied all documents in the nine boxes. After returning the boxes, Plaintiffs' counsel did not make any further request regarding the documents for almost one year.

On May 25, 2011, two business days before the Memorial Day weekend and two weeks before the close of discovery, Plaintiffs' counsel demanded that Farmland produce (again) for inspection all of the boxes of documents that Plaintiffs had failed to inspect or copy a year earlier. *See* Owens Aff. at ¶2. Plaintiffs' counsel demanded that Farmland produce these documents three business days later, on the day after Memorial Day. Farmland offered the boxes for inspection and copying at its facility for an entire two week period in June and asked Plaintiffs' counsel to make whatever arrangements were necessary to copy during that two weeks whatever document Plaintiffs chose to copy. *See* Owens Aff. at ¶3. Plaintiffs' counsel rejected

4

that offer and refused to copy <u>any</u> of the documents in the boxes at that time. Instead, Plaintiffs' counsel unilaterally decided to send only two attorneys to "index" the documents in the boxes during a two-<u>day</u> period; they stated they would make arrangements in the future to "conduct a further, more intensive review of the documents," even though the discovery period closed June 9. *Id.*

On June 15-16, 2011, Farmland produced, and Plaintiffs' counsel inspected, 161 boxes of documents of the same type as the nine boxes Farmland had produced one year earlier in July 2010. *See* Wentz Aff. at ¶2-3. Farmland also produced, and Plaintiffs' counsel inspected, four boxes of personnel files as a supplemental production, as well as three boxes of other records. Out of a total of 168 boxes produced in June 2011, Plaintiffs' counsel did not copy or ask to copy a single document during their June 2011 visit. Contrary to their statement in June 2011 that they would make arrangements for copying later, Plaintiffs' counsel have never asked to return in order to further inspect or copy the documents, nor have they made any arrangements to make copies of any of the documents Farmland produced. As noted above, discovery closed June 9, five months ago.

In July, Farmland made available (for a third time) manuals relating to its Kronos system. Plaintiffs then obtained copies of those materials.

Approximately two months after the June 2011 inspection, on August 17, 2011, Plaintiffs' counsel sent a letter that seemed to be complaining about the June 2011 document production. However, the letter did not clearly state what Plaintiffs were seeking. Plaintiffs' counsel did not ask to come back and inspect or copy any of the many thousands of documents that Farmland had produced. The letter did not propose any solutions to whatever complaints Plaintiffs might have. In the August 17 letter, Plaintiffs' counsel falsely claimed to have seen

5

certain documents for the first time in the June 2011 inspection. The falseness of their claim was exposed by the fact that they referenced a document that Plaintiffs' counsel had copied and Bates numbered from the nine boxes that Farmland had produced over one year earlier.

On August 26, 2011, Farmland's counsel responded and stated Farmland's position on the various issues raised in Plaintiffs' August 17 letter. *See* Owens Aff. at ¶5. One month later, on September 27, 2011, Plaintiffs' counsel sent another letter. That letter repeated vague complaints, but Plaintiffs' counsel did not ask to return to copy any of the documents, nor propose any solution to whatever concerns they had. *See* Owens Aff. at ¶6. In October, Farmland's counsel spoke to lead counsel for Plaintiffs to ask them to review the repeated letters and to propose specific solutions to whatever complaints they might have. Plaintiffs' lead counsel agreed to look into the matter. Unfortunately, Plaintiffs have simply continued to send letters, repeating old arguments and making new demands.

To avoid having any lingering discovery issue impact the March 19 trial date, and to protect from the unfairness of having to deal with discovery issues on the eve of trial or after the jury is empanelled, Farmland requests that the Court establish a firm deadline for the parties to raise any issues regarding any alleged discovery deficiencies well in advance of trial. Such a deadline is necessary to prevent unfairness to Farmland and disruption and delay of the trial.

## ARGUMENT

This Court has the authority to enter a scheduling order providing a date by which any motion to compel is to be filed. *See* Fed. R. Civ. P. 16 and NECivR 16.1(a). On October 23, 2009, this Court exercised its authority and set a discovery motion deadline corresponding to the original August 31, 2010, deposition deadline. (Filing No. 91.) When the discovery deadline was extended, the corresponding discovery motion deadline was vacated, and to date the Court

6

has not yet re-set that deadline. A discovery motion deadline is important so that all discovery issues, including alleged document production issues, can be presented to the Court well in advance of trial. This is necessary to protect the opposing party from unfairness and so the trial is not disrupted or delayed due to discovery issues that a party does not raise until the eve of trial or, worse yet, after the jury is empanelled.

This Court's precedent requires parties to timely raise discovery issues. *See Wakehouse v. Goodyear Tire & Rubber Co.,* 2007 U.S. Dist. LEXIS 25635, 15-17 (D. Neb. Apr. 5, 2007) (finding a plaintiff waived alleged discovery abuses and holding that motions to compel raised on the eve of trial were untimely) (*citing Continental Indus., Inc. v. Integrated Logistics Solutions, LLC.,* 211 F.R.D. 442, 444 (N.D. Okla. 2002)) ["Once, as here, a party registers a timely objection to requested production, the initiative rests with the party seeking production to move for an order compelling it. Failure to pursue a discovery remedy in timely fashion may constitute a waiver of discovery violations. It is especially important that a party file its motion before discovery cutoff. It is also critical that the movant not wait to file its motion until the eve of trial."] (plaintiff waited 18 months after discovery responses and until two weeks before trial to move to compel); *see also Miller v. Baker Implement Co.*, 439 F.3d 407, 414 (8th Cir. 2006) (noting the plaintiff failed to avail himself of discovery remedies for nearly six months and until after the discovery has closed and summary judgment was granted).

There is ample good cause to establish such a deadline. This case has been pending since 2008. Discovery closed June 9, 2011, and trial is set for March 2012. Plaintiffs' counsel has continued to make vague and sometimes false statements that seem calculated to position themselves to argue at some future time that Farmland's discovery responses somehow were inadequate. However, they have never filed any motion to ask this Court to decide

7

whatever dispute(s) Plaintiffs claim to have.  An order setting a discovery motion deadline is appropriate to prevent any party from waiting until trial to belatedly raise discovery issues and then demanding a continuance, mistrial, or sanctions.  Without a discovery motion deadline, Plaintiffs' counsel may wait until the eve of trial (or worse yet, until after the jury is selected) to assert some alleged issues with Farmland's discovery responses and then claim to have been prejudiced by an alleged problem they should have presented to the Court for decision long before trial.

Farmland has satisfied its obligations under the discovery rules to identify or produce documents.  There are three applicable Federal Rules defining the parties' rights and obligations.  The initial disclosure rule, set forth in Rule 26(a)(1)(A)(ii), only requires parties to provide initial disclosures of documents that <u>it intends to use</u> to "support its claims or defenses."  That rule does not require a party to anticipate and disclose all documents that its opponent might want, and it certainly does not require a party to list every conceivable document it has ever created.  Rule 34 allows an opponent to request documents, but that rule places the burden squarely on the <u>requesting</u> party to request documents with "reasonable particularity."  *See* Fed. R. Civ. P. 34(b)(1)(A).  If a party is not sure what type of document to request, Rules 30 and 33 allow that party to use interrogatories and depositions to ask about potentially-relevant documents.  The Federal Rules do not, at any stage in the proceedings, require a party to unilaterally list every kind of document it has ever maintained so that the opposing party may pick and choose which to request.  During discovery, if Plaintiffs had asked for every type of document ever created or maintained by Farmland, Farmland would have objected, and, if Plaintiffs disagreed with Farmland's objection, Plaintiffs could have moved the Court for a determination as to whether there is any basis in law for such a demand.  Plaintiffs never made

such a request in any of their written discovery or depositions. There is no lawful basis for Plaintiffs' belated argument that Plaintiffs should be allowed to wait until trial to raise discovery disputes unless Farmland volunteers to identify or produce every document it has ever created or maintained.

There is every reason for the Court to believe that Plaintiffs' counsel have a high level of familiarity with the meat processing business and the nature of the documents maintained in the course of meat processing at such facilities, particularly as they relate to food safety and employee safety. Indeed, Plaintiffs' counsel promote themselves to potential clients as experts in such litigation.[2] In light of their own advertising and experience, it would be curious indeed for them to tell this Court that they do not know what to ask for in a wage and hour case against a meat processing company.

No party should be allowed to wait until trial to raise issues regarding its opponent's discovery responses that were provided over months and years of discovery. It would be unfair to Farmland to have such issues distract from the trial; it would be unfair to the jury to have to wait while the Court grapples with such last-minute discovery issues; and it would place an unreasonable and unrealistic burden on the Court to hear those issues on a "crisis" basis while the jury waits in the jury room.

---

[2] Class counsel Berger & Montague, P.C.'s website touts their Employment Law Group as having "represented classes of employees at meat and poultry plants" and their website cites over $9.5 million in settlements on wage and hour cases in the meat processing industry. *See* Wentz Aff. at ¶5 and Exhibit C-2. Specifically, Shanon J. Carson states in his biography that he "currently serves as lead or co-lead counsel in many class action and collective action lawsuits pending in federal and state courts across the United States, including on behalf of thousands of individuals seeking unpaid wages and overtime compensation who work at meat and poultry plants.... In the area of wage and hour law, Mr. Carson is recently responsible for a string of decisions in the federal courts certifying classes of low wage workers in the meat and poultry industries alleging that they have been forced to work off the clock and during meal and rest breaks."
Class counsel Schneider Wallace Cottrell Brayton Konecky LLP's website cites involvement in six cases involving wage and hour claims in the meat processing industry. *See* Wentz Aff. at ¶4 and Exhibit C-1. The website also touts counsel as experienced in large wage and hour cases.

If there is any dispute over whether a party's discovery response is sufficient or if its objections are well-taken, those disputes should be raised and decided in an orderly fashion long before trial, so that the Court can decide them long before trial. It obviously disrupts trial preparation and the trial schedule for a party to wait until long after the discovery responses were made to raise a dispute to the Court. As this Court has ruled in *Wakehouse v. Goodyear Tire & Rubber Co.,* 2007 U.S. Dist. LEXIS 25635, 15-17 (D. Neb. Apr. 5, 2007), a party should not be allowed to wait until the eve of trial to raise complaints about discovery responses and objections served years earlier. When the issues are presented well in advance of trial, a court can decide them in an orderly fashion; the court can either uphold the objections and deny the motion or, if it determines that further discovery responses or production is required, it can order that the parties complete any remaining discovery at issue well before trial. A party that waits until trial to dispute past discovery responses should not be heard to complain that it was prejudiced because it did not get what it never had asked the court to order. Nor should a party be allowed to strategically postpone raising discovery disputes until trial and then claim that the court should impose default or another draconian sanction on its opponent over matters that should have been addressed and resolved under Rule 37 during the discovery period.

## **CONCLUSION**

Farmland respectfully submits that good cause exists for the Court to re-set a discovery motion deadline pursuant to Fed. R. Civ. P. 16, and NECivR 16.1(a). In view of the March 2012 trial schedule, Farmland requests that the deadline be re-set to January 1, 2011.

Respectfully submitted this 11th day of November, 2011.

/s/ Kenneth M. Wentz III
Kenneth M. Wentz III (NE # 23580)

        Jackson Lewis LLP
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
Tel: (402) 391-1991
Fax: (402) 391-7363
wentzk@jacksonlewis.com

L. Dale Owens, Esq.
Admitted *Pro Hac Vice*
Georgia Bar No. 557482
JACKSON LEWIS LLP
1155 Peachtree Street, NE, Suite 1000
Atlanta, GA 30309-3600
Tel: (404) 525-8200
Fax: (404) 525-1173
owensd@jacksonlewis.com

Steven D. Davidson, Esq. (NE # 18684)
Allison D. Balus, Esq. (NE # 23270)
BAIRD HOLM, LLP
1500 Woodmen Tower
1700 Farnam Street
Omaha, Nebraska 68102-2068
Tel: (402) 636-8254
Fax: (402) 344-0588
sdavidson@bairdholm.com
abalus@bairdholm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIA GUZMAN MORALES & <br> MAURICIO R. GUARJARDO, <br><br> Plaintiffs, <br><br> v. <br><br> FARMLAND FOODS, INC. <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) CASE NO. 8:08-cv-504 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2011, I served the foregoing **DEFENDANT FARMLAND FOODS, INC.'S BRIEF IN SUPPORT OF MOTION TO RE-SET A DEADLINE FOR ALL DISCOVERY MOTIONS** via electronic filing. Notice of this filing will be sent to the following by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    Carolyn H. Cottrell
    Christopher P. Welsh
    James R. Welsh
    Philip A. Downey
    Shanon J. Carson
    Todd M. Schneider

I hereby certify also that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None.

*/s/ Kenneth M. Wentz III*
Kenneth M. Wentz III (NE # 23580)
Jackson Lewis LLP
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
Tel: (402) 391-1991
Fax: (402) 391-7363
wentzk@jacksonlewis.com

ATTORNEY FOR DEFENDANT
FARMLAND FOODS, INC.