IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIA GUZMAN MORALES and MAURICIO GUAJARDO, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FARMLAND FOODS, INC., a Delaware Corporation and subsidiary of Smithfield Foods,<br>Defendant. | Case No. 8:08-CV-504<br><br><br><br><br>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO RE-SET A DEADLINE FOR ALL DISCOVERY MOTIONS |

I.  **INTRODUCTION**

Plaintiffs Maria Guzman Morales and Mauricio Guajardo ("Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to Defendant Farmland Foods, Inc.'s ("Defendant's") Motion to Re-set a Deadline for All Discovery Motions.

On November 11, 2011, Defendant filed its Motion to Re-set a Deadline for All Discovery Motions ("Motion") and brief in support, in which it requested that the Court set a January 1, 2011 deadline for all discovery motions. *See* Dkt. Nos. 394, 396. Assuming that Defendant's suggested deadline was meant to be January 1, 2012 (as opposed to January 1, 2011), Plaintiffs have no opposition to the Court setting such a deadline. However, Plaintiffs do oppose any effort by Defendant to impose a deadline that forecloses Plaintiffs' ability to move to compel any discovery that Defendant has improperly withheld to date. Plaintiffs also oppose any effort by Defendant to use this proposed new deadline to absolve itself of liability from any potential discovery-based misconduct that may have occurred prior to the proposed new

-1-

deadline. Plaintiffs further oppose any effort by Defendant to use this deadline to later move to expand the amount of discovery – for example the number of depositions each party can take – to which the parties are currently bound.

The reason Plaintiffs oppose these potential efforts by Defendant is because Plaintiffs still require the production of certain documents, and may need to move to compel the production of such documents should Defendant be unwilling to produce them. Generally speaking, Plaintiffs require the production of all documents that Defendant is obligated to produce under the federal rules of discovery and/or which have been requested by Plaintiffs. More specifically, and as set forth below, Defendant must properly supplement its production of employees' personnel files as required by the rules of discovery. Defendant must also produce complete sets of three categories of documents – Farmland Production Schedules, Shift Activity Reports, and Sanitation Standard Operating Procedure ("SSOP") documents – that were requested by Plaintiffs during discovery.

Additionally, Plaintiffs are compelled at this time to clarify and correct the record as set forth by Defendant in the brief it filed in support of its Motion. *See* Dkt. No. 394. Over the past several months – prior to and since the close of discovery – Plaintiffs have engaged in good faith efforts to meet and confer with Defendant to resolve discovery issues. Defendant has responded to these efforts obtrusively and with wild accusations of discovery misconduct. Defendant's own rhetoric and conduct during the meet and confer process is the likely reason that Defendant relies on self-serving declarations in support of its brief rather than on actual communications between counsel.

In its brief, Defendant makes much ado about the documents and information that it has produced during discovery. However, Plaintiffs' good faith efforts to meet and confer have not

focused on the documents and information the Defendant has already produced.  Instead, Plaintiffs have repeatedly met and conferred with Defendant regarding any outstanding documents and information that have been requested by Plaintiffs in discovery but have yet to be produced.  Defendant's past production has no bearing whatsoever on this discovery issue.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

In its scheduling order of October 23, 2009 (*see* Dkt. No. 91), the Court initially set an August 31, 2010 deadline for all depositions and discovery motions.  That deadline has since been amended on multiple occasions.  Fact discovery officially closed on June 9, 2011.  The Court has not yet set a deadline for discovery motions.

Since the opening of discovery, Plaintiffs have properly served Defendant with 78 document requests, among other forms of discovery.  Defendant responded to Plaintiffs' document requests and presented objections to multiple requests.  Many of Defendant's objections are based on its contention that Plaintiffs' document requests fail to state with particularity the category of documents sought.

In June 2010, in response to several document requests, Defendant informed Plaintiffs of the existence of what it estimated to be over 100 boxes of documents held by Defendant at its Crete, Nebraska facility that may contain relevant, discoverable documents.[1]  At that time, Plaintiffs were in the midst of reviewing and responding to no less than five separate motions for

---

[1] In June 2011, Defendant's estimate increased to between 200-250 boxes of documents.  *See* Ex. 1 at 7 (Email from Dale Owens to Shanon Carson, June 6, 2011 at 12:16 p.m.).  Eventually, when the boxes were reviewed, Defendant produced 168 boxes for Plaintiffs' inspection. Ex. 2 (Letter from Kenneth Wentz to Carolyn Cottrell, June 17, 2011).  Presumably, the increase in the number of boxes is attributable to the nearly one year period that transpired between June 2010 and May 2011, when Plaintiffs requested they be permitted to inspect the documents.  Plaintiffs contend that, to the extent the boxes contain relevant, discoverable documents and information, Defendant was obligated to supplement its disclosures pursuant to Fed. R. Civ. P. 26(e) by producing the additional boxes of documents.

summary judgment or partial summary judgment filed by Defendant in June 2010. *See* Dkt. Nos. 133, 137, 139, 141, 143. Defendant informed Plaintiffs' counsel that these boxes contained various daily records such as transfer sheets, kill reports, time detail reports, and personnel files. To conserve resources and limit expenses, Plaintiffs arranged to take a sample of nine boxes offsite for copying, and also copied all boxes containing the personnel files for opt-in Plaintiffs. At that time, Plaintiffs relied on Defendant's representation that the boxes contained substantially similar documents. *See* Ex. 3 at 6 (Email from Allison Balus to Shanon Carson, June 29, 2010 at 5:32 a.m.).

> A. **In Response to Defendant's Refusal To Certify That Its Discovery Responses Are Complete, Plaintiffs Requested That The Boxes Of Documents Be Made Available For Inspection And Any New Responsive Documents Be Produced**

On May 13, 2011, the parties participated in a status conference before Magistrate Judge Thalken regarding pending discovery issues. Defendant's counsel requested that Plaintiffs' counsel certify that Defendant had produced all of the documents that Defendant had a duty to produce pursuant to the discovery rules and Plaintiffs' discovery requests. In response, Plaintiffs' counsel stated that they would only be able to make such a certification on the condition that Defendant furnish a list of the documents it maintains, so that Plaintiffs could compare Defendant's document production to the list of documents maintained by Defendant. Following the status conference, Defendant's counsel sent a letter to Plaintiffs' counsel asserting that Plaintiffs' request for a list of all documents maintained by Defendant was "absurd" and suggested that Plaintiffs were eager to engage in a discovery dispute. *See* Ex. 4 (Letter from Dale Owens to Todd Schneider, May 17, 2011). Plaintiffs responded to Defendant's letter that same day, and reiterated the same argument they made at the status conference, namely, absent a comparison between the documents produced by Defendant in discovery and the documents

included on a complete list of documents maintained by Defendant, it would be impossible for Plaintiffs to certify that Defendant has produced all of the documents it is obligated to produce in discovery. *See* Ex. 5 (Letter from Todd Schneider to Dale Owens, May 17, 2011). Subsequently, in a second letter dated May 17, 2011, Defendant refused to furnish Plaintiff with a list of documents it maintains, and requested that Plaintiffs "suggest how we can address any perceived discovery issues or concerns well before trial." *See* Ex. 6 (Second letter from Dale Owens to Todd Schneider, May 17, 2011). Plaintiffs responded with a second letter that same day, suggesting that "…Defendant first review and supplement its discovery responses as necessary. Defendant can than certify that it has completed its review and supplementation." *See* Ex. 7 (Second letter from Todd Schneider to Dale Owens, May 17, 2011).

Thereafter, on May 25, 2011, Plaintiffs emailed Defendant's counsel to request that counsel review Defendant's discovery responses and either (1) certify that counsel believed them to be complete or (2) supplement the responses. *See* Ex. 8 at 3 (Email from Todd Schneider to Dale Owens, May 25, 2011 at 3:55 p.m.); Ex. 8 at 2 (Email from Todd Schneider to Dale Owens, May 25, 2011 at 4:36 p.m.); *see also* Ex. 3 at 3 (Email from Carolyn Cottrell to Allison Balus, Dale Owens, *et al.*, May 25, 2011 3:50 p.m.) (requesting production of any supplemental disclosures). The stated purpose of this email was to determine whether Defendant had failed to produce certain categories of documents responsive to Plaintiffs' discovery requests. However, in response to Plaintiffs' email, Defendant's counsel accused Plaintiffs of "attempt[ing] to manufacture a dispute rather than [engage in] a good-faith effort to communicate in a cooperative way . . . ." *See* Ex 8 at 2-3 (Email from Dale Owens to Todd Schneider, May 25, 2011 at 1:30 p.m.). After another effort by Plaintiffs to engage in good faith with Defendant's counsel, Defendant's counsel again directed Plaintiffs to re-read his letters and stated that

"posturing designed to set up some claim by you on the first day of trial that somehow there was some discovery problem is not something I plan to go along with. We've seen that tactic." Ex. 8 at 2 (Email from Dale Owens to Todd Schneider, May 25, 2011 at 1:56 p.m.).[2] Plaintiffs' counsel responded by explaining that Plaintiffs' current issues with Defendant's production were not, at that point, "disputes," but that Plaintiffs "cannot divine what disputes we may have regarding documents not produced without first knowing what documents [Farmland] has . . . ." Ex. 8 at 1 (Email from Todd Schneider to Dale Owens, May 25,2011 at 8:49 p.m.).

Because Defendant refused to provide information on whether its discovery responses were complete or whether additional categories of documents responsive to Plaintiffs' requests exist but had not been produced, Plaintiffs had no way of knowing that the boxes for which Plaintiffs copied only a sample did not contain further relevant and responsive documents. To avoid such uncertainty, Plaintiffs immediately requested on May 25, 2011 that Defendant make the remainder of the boxes available for inspection. *See* Ex. 3 at 3 (Email from Carolyn Cottrell to Allison Balus, Dale Owens, *et al.*, May 25, 2011 3:50 p.m.); Ex. 9 at 2 (Email from Carolyn Cottrell to Dale Owens, Allison Balus, *et al.*, May 27, 2011 at 1:00 p.m.); *see also* Ex. 10 at 2 (Email from Shanon Carson to Dale Owens, June 1, 2011 at 5:58 p.m.) (renewing Plaintiffs' request to inspect the documents). Contrary to Defendant's contention, Plaintiffs sought to arrange a mutually agreeable time to inspect the documents but, as with other aspects of the meet and confer process, Defendant's obtrusive responses made doing so extremely difficult. *See* Ex.

---

[2] As the Court is aware, Plaintiffs' counsel in the instant case encountered discovery violations by a defendant in another, completely unrelated lawsuit having nothing to do with this case. Defendant's counsel here was present in the courtroom when those discovery violations were brought to the Court's attention (by that defendant's own witness). Defendant has, ever since, repeatedly cast wild and unfounded accusations at Plaintiffs' counsel, notwithstanding that this Court has held that the discovery misconduct in the other case did in fact occur and ordered sanctions.

3 at 3 (Email from Carolyn Cottrell to Allison Balus, Dale Owens, *et al.*, May 25, 2011 at 3:50 p.m.) (noting Plaintiffs "are available to start the inspection" the day after memorial day); Ex. 9 at 2 (Email from Carolyn Cottrell to Dale Owens, *et al.*, May 27, 2011 at 1:00 p.m.) (requesting status of the boxes of documents); Ex. 9 at 1-2 (Email from Dale Owens to Carolyn Cottrell, May 27, 2011 at 11:03 a.m.) (responding to Cottrell's 1:00 p.m. email).

### B. Defendant Permitted Plaintiffs Two Days To Inspect 168 Boxes Of Documents

On June 1, 2011, when Plaintiffs renewed their request that Defendant make the boxes available for inspection sometime the following week, Defendant stated that the documents would not be available the next week for inspection, and may not be available at all. *See* Ex. 10 at 1-2 (Email from Dale Owens to Shanon Carson, June 1, 2011 at 6:19 p.m.).[3] Compelled by the rapidly approaching June 9, 2011 discovery deadline, Plaintiffs informed Defendant of the need to contact the Court to resolve the issue. *See* Ex. 10 at 1 (Email from Shanon Carson to Dale Owens, June 1, 2011 at 6:25 p.m.); *see also* Ex. 10 at 1 (Email from Dale Owens to Shanon Carson, June 1, 2011 at 6:31 p.m.) (responding that Owens was unavailable for call with judge until June 6, 2011).

On June 6, 2011, Defendant informed Plaintiffs that the boxes of documents had been pulled from storage and would be made available for review, with the caveat that Defendant "will not allow them to be removed from the plant." *See* Ex. 1 at 7-8 (Email from Dale Owens to

---

[3] In its June 1, 2011 email, defense counsel here again made several wild accusations:

> [R]eally, you folks should stop fabricating your own "understandings" out of thin air by sending me e-mails and then implying I agree with them. That tactic is not honest. I understand that it is a tactic that your side seems to like to try to use to manufacture evidence for discovery disputes, but it is not honest, and you are wasting your time trying to pull such unprofessional stunts in this case.

Ex. 10 at 1 (responding to Plaintiffs' counsel's apparently mistaken belief that Defendant was going to respond by noon on June 1, 2011).

Carolyn Cottrell and Shanon Carson, June 6, 2011 at 12:16 p.m.).  Defendant asserts in its brief that the boxes were offered for inspection and copying for an "entire two week period in June . . . ." *See* Dkt. No. 364, at 4.  This was a misleading and incomplete statement given the terms set forth by Defendant during the meet and confer process.  Defendant specifically proposed:

> We will need for you to begin and complete the process within a reasonable time and on reasonable advance notice, and we are not willing to simply permit you to come at will or remain in the plant for extended periods.  In view of the extremely large volume of documents you have requested, if you want to photocopy them, you will need to commit very great resources to the task in order to complete the copying within a reasonable time – 2 weeks.

*See* Ex. 1 at 7-8 (Email from Dale Owens to Carolyn Cottrell and Shanon Carson, June 6, 2011 at 12:16 p.m.).  As Plaintiffs explained to Defendant in June 2010 and reiterated in response to Defendant's proposal, bringing copiers and copy staff to Defendant's Crete facility is a dramatic and unwarranted expense.  *See* Ex. 3 at 7 (Email from Shanon Carson to Allison Balus and Dale Owens, June 28, 2010 at 9:36 p.m.); Ex. 1 at 6-7 (Email from Shanon Carson to Dale Owens, June 8, 2011 at 8:17 p.m.).

Plaintiffs instead offered to send representatives to the Crete facility to inspect the documents during the week of June 13, 2011, and to discuss the copying of any specific documents after the review.  Ex. 1 at 6-7 (Email from Shanon Carson to Dale Owens, June 8, 2011 at 8:17 p.m.).[4]  However, Defendant was unwilling to compromise:

> We are not willing to have you come and go at the Crete plant whenever you feel like dropping in to demand that we pull boxes of documents for you to see or copy.  If and when you arrange to come, plan to do whatever seeing and copying

---

[4] After refusing to discuss the issue between May 27, 2011 and June 6, 2011, Defendant accused Plaintiffs of misconduct for waiting until 8:17 p.m. the night before the close of discovery to try to "provoke a new argument about whether documents must be produced the very next day . . . ." *See* Ex. 1 at 5-6 (Email from Dale Owens to Shanon Carson and Carolyn Cottrell, June 8, 2011 at 11:43 p.m.).  Of course, Plaintiffs expressly requested to inspect the documents during the following week, not the following day.  Ex. 1 at 6-7 (Email from Shanon Carson to Dale Owens, June 8, 2011 at 8:17 p.m.) ("We can have folks review them next week.").

> you intend to do in the same timeframe.  (I have offered an extremely generous two-week period for that purpose.)  Your message shows you have decided that you are more interested in manufacturing a dispute on this subject than in actually copying any of the documents you previously decided not to copy. . . .

*See* Ex. 1 at 5-6 (Email from Dale Owens to Shanon Carson and Carolyn Cottrell, June 8, 2011 at 11:43 p.m.).

On June 9, 2011, Plaintiffs requested that Defendant agree to permit Plaintiffs to inspect the boxes of documents from June 13-17, 2011, at least during regular business hours.  *See* Ex. 1 at 4-5 (Email from Shanon Carson to Dale Owens, June 9, 2011 at 10:42 a.m.).  Again, however, Defendant denied Plaintiffs request: "It is premature to confirm any visit to the plant . . . .  It would be a mistake for you to assume that you can just go to the plant whenever you want, as many different times as you want, over whatever time period you want."[5]  *See* Ex. 1 at 4 (Email from Dale Owens to Shanon Carson, June 9, 2011 at 2:52 p.m.).  After further discussions, the parties were only able to agree that Plaintiffs could inspect the 168 boxes of documents on June 15-16, 2011 at the Crete facility between 8:00 AM and 5:00 PM.  *See* Ex. 1 at 1 (Email from Shanon Carson to Dale Owens, June 13, 2011 at 2:29 p.m.) (accepting Farmland's terms as laid out in the 5:26 p.m. email from Dale Owens to Shanon Carson).

### C. The Inspection Revealed That Other Documents Exist Which Defendant Is Obligated To Produce But, To Date, Has Failed To Do So

Following their inspection of the 168 boxes of documents, Plaintiffs sent a letter to Defendant that made two requests.  First, Plaintiffs notified Defendant that its purported "supplement" of employees' personnel files – *i.e.* making them available for inspection during the two-day period Plaintiffs were permitted on site – was insufficient.  Second, during their

---

[5] Although Defendant asserts in its brief and in certain correspondence that it offered two weeks in June 2011 for Plaintiffs to inspect the documents, Defendant's offer was subject to numerous conditions which, curiously, were omitted from Defendant's brief.  *See* Discussion on Boxes, *supra*, at 7-9.

inspection, Plaintiffs discovered two categories of documents – Farmland Production Schedules and Shift Activity Reports – which were responsive to Plaintiffs' discovery requests and should have been produced in discovery.

### 1. Defendant Has Failed To Properly Supplement Its Production Of Employees' Personnel Files

In June 2010, in response to Plaintiffs' document requests, Defendant made available the personnel files of all opt-in Plaintiffs. After approximately one year, Plaintiffs requested that all new documents that had been placed in the personnel files be provided. Defendant refused to separate out the new documents, and instead required Plaintiff to do so while simultaneously sorting through the 168 boxes of documents in the two-day parameter imposed by Defendant. *See* Discussion on Boxes, *supra*, at 7-9. Plaintiffs could not reasonably be expected to determine if new information or documents had been added to the personnel files during that limited time frame. Furthermore, Defendant expressly limited Plaintiffs to two representatives who could visit the Farmland facility to inspect documents on June 16 and 17 unless Plaintiffs provided 24 hours prior notice of additional representatives. *See* Ex. 1 at 2-3 (Email from Dale Owens to Shanon Carson and Carolyn Cottrell, June 10, 2011 at 6:27 p.m.). Then, less than 24 hours prior to Plaintiffs' scheduled visit, Defendant notified Plaintiffs for the first time that the personnel documents would be made available for inspection during the time previously allocated to inspect more than 160 other boxes of documents. *See* Ex. 11 (Email from Dale Owens to Shanon Carson, June 15, 2011 at 10:50 a.m.). Consequently, Plaintiffs, despite numerous attempts to meet and confer, have not been able to ascertain whether any current employees' personnel files have been updated with new information since June 2010.

### 2. Defendant Refuses To Produce Two Categories Of Documents – Farmland Production Schedules And Shift Activity Reports – Even Though Such Documents Have Been Requested During Discovery

During their inspection, Plaintiffs discovered two categories of documents – Farmland Production Schedules and Shift Activity Reports – which were responsive to Plaintiffs' discovery requests and should have been produced in discovery. Moreover, it appeared that complete sets of these documents had not been produced in the 168 boxes of documents made available for inspection. *See* Ex. 12 (Letter from Patrick Madden to Dale Owens, August 17, 2011) (identifying Farmland Production Schedules and Shift Activity Reports as categories of documents responsive to Plaintiffs document requests yet had not been produced). Accordingly, Plaintiffs requested that Defendant produce the complete set of these two categories of documents.

In response to Plaintiffs' request that Defendant produce the two categories of documents responsive to Plaintiffs' previously served document requests, Defendant asserted that (1) the documents were not responsive to Plaintiffs' document requests because they were not described with "reasonable particularity," and (2) Plaintiffs were on notice that the categories of documents existed because Defendant offered to permit Plaintiffs to inspect the boxes in 2010. *See* Ex. 13 (Letter from Kenneth Wentz to Patrick Madden, August 26, 2011). Again, however, complete sets of the documents were not in the boxes.

Plaintiffs clarified in a responsive letter that the Shift Activity Reports and Farmland Production Schedules appear to be maintained somewhere other than in the 168 boxes of documents. Ex. 14 (Letter from Patrick Madden to Kenneth Wentz, September 27, 2011). Plaintiffs further stated that, regardless of where the Shift Activity Reports and Farmland Production Schedules are maintained, Defendant has an obligation to produce them, as they are

responsive to previously served document requests and appear to be stored in the regular course of business in a location other than the 168 boxes. *See* Ex. 14 (Letter from Patrick Madden to Kenneth Wentz, September 27, 2011) ("Plaintiffs again request that Farmland produce all such documents as they are kept in the regular course of business . . . .").

In response, Defendant claimed not to understand what action Plaintiffs requested that Defendant take. *See also* Def. Br. at 5 ("[Plaintiffs'] letter did not clearly state what Plaintiffs were seeking . . . [and] did not propose any solutions to whatever complaints Plaintiffs might have."); Ex. 12 (Letter from Patrick Madden to Dale Owens, August 17, 2011) ("Plaintiffs renew their request that Defendant . . . produce only those parts of the personnel files that were not part of the earlier production."); *id.* ("Plaintiffs therefore request that Farmland provide complete sets of [the 'Shift Activity Reports' and 'Farmland Production Schedules'].").[6]  Plaintiffs responded to Defendant's confusion by stating precisely which categories of documents they request. *See* Ex. 15 (Letter from Patrick Madden to Kenneth Wentz, October 26, 2011). Defendant then informed Plaintiffs that the documents would not be produced. *See* Ex. 16 (Letter from Kenneth Wentz to Patrick Madden, November 8, 2011). Three days later, Defendant filed this instant Motion.

### D.  Defendant Has Also Failed To Produce SSOP Documents

On October 28, 2011, Plaintiffs attempted to meet and confer with Defendant by letter regarding Defendant's failure to produce its SSOP documents. *See* Ex. 17 (Letter from Patrick Madden to Kenneth Wentz, October 26, 2011). SSOP documents contain information detailing meat processing facilities' compliance with certain sanitation regulations enforced by the United

---

[6] Defendant has repeatedly stated that it is confused about the documents requested by Plaintiffs. However, during each meet and confer correspondence, Plaintiffs have been clear as to what, exactly, they request.

States Department of Agriculture ("USDA").  Plaintiffs explained that the SSOP documents are responsive to Plaintiffs' document requests.  *See id.*  In a letter dated November 8, 2011, Defendant indicated it would "respond separately" to Plaintiffs' request for the SSOP documents.  *See* Ex. 16 (Letter from Kenneth Wentz to Patrick Madden, November 8, 2011). Defendant has not responded to Plaintiffs request that it produce its SSOP documents and, instead, filed the instant Motion.

### III.     ARGUMENT

Of course, the Court has the authority to enter a scheduling order providing a date by which any motion to compel must be filed.  *See* Fed. R. Civ. P. 16; NECivR 16.1(a).  Plaintiffs also agree that parties are required to timely raise discovery issues.  *See, e.g.*, *Wakehouse v. Goodyear Tire & Rubber Co.*, 2007 U.S. Dist. LEXIS 25635, at *15-17 (D. Neb. Apr. 5, 2007). Plaintiffs' only concern with this motion is that it will be used by Defendant to preclude Plaintiffs from filing a motion to compel discovery responses, absolve Defendant from any potential discovery violations, or be used to expand the scope of permissible discovery.  It is well-settled, however, that where discovery misconduct is not revealed until after the relevant discovery deadline has closed, the party that discovers the misconduct cannot be without a remedy for the misconduct.  *See, e.g.*, *Choul v. Nebraska Beef, Inc.*, 8:08-cv-99, Dkt. No. 482 (D. Neb. Nov. 3, 2011) (sanctioning party for concealing documents responsive to properly served discovery requests).  Thus, Plaintiffs have no issue with the proposed deadline for discovery motions suggested by Defendant, so long as the Court's order permits Plaintiffs to seek a remedy for potential pre-deadline discovery violations.

It should also be noted that the close of discovery does not exempt Defendant from its continuing obligation to provide documents responsive to Plaintiffs' properly served discovery

requests.  *See, e.g.*, *Choul v. Nebraska Beef, Inc.*, 8:08-cv-99, Dkt. No. 482 (D. Neb. Nov. 3, 2011) (finding documents disclosed after the close of discovery were responsive and must be produced); *GP Indus., LLC v. Eran Indus., Inc.*, 8:06CV50, 8:06CV51, 2006 WL 3290306, at *5 (D. Neb. Nov. 13, 2006) (noting the continuing obligation to supplement discovery responses). As made clear by the Court in *Choul v. Nebraska Beef*, the passing of discovery deadlines cannot insulate a defendant from discovery misconduct, particularly where the defendant conceals the existence of categories of documents properly requested by plaintiffs.  Accordingly, Plaintiffs do not oppose this motion, except to point out that Defendant's proposed deadline for discovery motions cannot absolve it from any potential discovery-based misconduct and cannot be used to expand the scope of discovery.

## IV.     CONCLUSION

Plaintiffs do not oppose the Court re-setting the deadline for discovery motions to Defendant's proposed date of January 1, 2012, but request that such a deadline does not: (1) preclude Plaintiffs from filing a motion to compel relevant documents that have been repeatedly requested by Plaintiffs in discovery, yet have not been produced; (2) insulate or absolve Defendant from any potential discovery-based misconduct that may have occurred prior to the proposed new deadline; and (3) permit either party to move to expand the amount of discovery – for example the limited number of depositions each party can take – to which each party is currently bound.

Date: November 28, 2011                                         Respectfully submitted,

*/s/ Shanon J. Carson*
Shannon Carson
James A. Wells
BERGER & MONTAGUE P.C.
1622 Locust Street
Philadelphia, Pennsylvania  19103
Tel:  215 875 4656
Fax:  215 875 4604

Carolyn H. Cottrell
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel:  (415) 421-7100
Fax:  (415) 421-7105

Philip A. Downey
DOWNEY LAW FIRM
P.O. Box 736
Unionville, PA  19375
Tel:  (610) 324-2848
Fax:  (610) 347-1073

Christopher Welsh
WELSH & WELSH, P.C.
9290 West Dodge Road
100 The Mark
Omaha, Nebraska 68114
Tel: (402)  384-8160
Fax:  (402)  384-8211

*Attorneys for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2011, I served a true and correct copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Re-Set a Deadline for all Discovery Motions, via the Court's ECF filing system, upon all counsel of record.

>L. Dale Owens, Esq.
>Kenneth Wentz III, Esq.
>JACKSON LEWIS
>(owensd@jacksonlewis.com)
>Suite 1000
>1155 Peachtree Street, NE
>Atlanta, GE 30309-3600
>Telephone: (404) 586-1838
>Facsimile: (404) 525-1173
>
>Allison D. Balus, Esq.
>(abalus@bairdholm.com)
>BAIRD HOLM, LLP
>1500 Woodman Tower
>1700 Farnam Street
>Omaha, NE 68102
>Telephone: (402) 636-8254
>Facsimile: (402) 344-0588

>/s/ Shanon J. Carson
>Shanon J. Carson