## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARIA GUZMAN MORALES and | ) | |
| MAURICIO R. GUAJARDO, | ) | |
| | ) | 8:08CV504 |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FARMLAND FOODS, INC., | ) | FINDINGS AND |
| a Delaware Corporation and | ) | RECOMMENDATION |
| subsidiary of Smithfield Foods, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's Motion to Decertify (Filing No. 364). The defendant filed a brief (Filing No. 365) and an index of evidence (Filing No. 366) in support of the motion. The plaintiffs filed a brief (Filing No. 375) and an index of evidence (Filing No. 376, with attachments spanning Filing Nos. 376-386) in opposition to the defendant's motion. The defendant filed a brief (Filing No. 398) in reply.

## INTRODUCTION

The plaintiffs in this case are the defendant's current and former employees who worked at some time during the period November 13, 2005, to the present. The plaintiffs allege violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 to 219 (2006). The plaintiffs seek relief for the alleged failures to pay minimum wage and overtime compensation for pre- and post-production line and pre- and post-break activities, including "donning and doffing" safety gear, sanitization, and other activities in connection with job functions. The plaintiffs filed the action on November 13, 2008. **See** Filing No. 1. The plaintiffs filed an amended complaint (Filing No. 6) on November 17, 2008, and a second amended complaint (Filing No. 49) on April 27, 2009. The defendant denies violations of federal law by virtue of its wage and payment practices. **See** Filing No. 58 - Answer.

On April 13, 2009, the plaintiffs filed a motion to seek conditional certification of their claims as a collective action and to facilitate notice to all potential interested members. **See** Filing No. 50 - Motion. Although the defendant initially opposed (Filing No. 61) the motion,

the parties ultimately stipulated to entry of an order conditionally certifying a class.  **See** Filing Nos. 81 (Order on Stipulation) and 82 (Order Adopting Findings and Recommendation - Filing No. 74).  The stipulated conditionally certified class includes:

> All current and former non-exempt production employees (except as provided in paragraph 2 below) who have been employed at any time between August 21, 2006 and the present by Farmland Foods, Inc. at its hog processing facility in Crete, Nebraska, who use or used personal protective equipment, and were paid on a gang-time compensation system, as well as non-exempt production employees who have been employed in one of the following departments, between August 21, 2006 and the present, if they use or used personal protective equipment, regardless of their type of compensation system . . .

Filing No. 81.  The definition goes on to specifically include individuals employed in twenty-five identified departments but exclude individuals from those departments performing only support jobs, such as "Palletizer/APC".  **Id.**

On September 23, 2011, the defendant filed the instant motion to decertify the FLSA collective action.  **See** Filing No. 364.  The defendant seeks an order decertifying the collective action and dismissing, without prejudice, the claims of all opt-in plaintiffs.  **Id.** Specifically, the defendant argues the plaintiffs are unable to prove they are similarly situated for purposes of a collective action.  **Id.**  Briefing on the instant motion is complete.

Trial in this matter is scheduled for March 19, 2012.  **See** Filing No. 322.  The discovery period for this matter has concluded.  The defendant has filed a variety of motions to dismiss and for summary judgment, which have been denied.  On September 16, 2009, the court approved the class notice form.  **See** Filing No. 86.  All consents to opt-in as plaintiffs in this action had to be filed within 130 days from mailing of the class notice.  **See** Filing No. 81.  Several opt-in plaintiffs have withdrawn from the action, indicated a desire to withdraw, or failed to participate in discovery subjecting their claims to dismissal.  **See, e.g.**, Filing No. 403 - Findings and Recommendation that three motions to dismiss individual plaintiffs regarding discovery issues be granted.  There are two named plaintiffs and approximately 300 conditionally certified opt-in class members.

## FACTUAL BACKGROUND

The following facts are alleged in the plaintiffs' complaint. The defendant operates a meat processing facility in Crete, Nebraska. **See** Filing No. 49 - Second Amended Complaint ¶ 7. Based on the defendant's wage compensation system, the defendant does not pay employees for performance of various tasks completed at the beginning of each shift, during unpaid meal periods, paid rest periods, and at the end of each shift.[1] *Id.* ¶ 2. Specifically, the plaintiffs allege they are not compensated for the following activities, which are integral to their overall employment responsibilities:

> obtaining tools, equipments, and supplies necessary for the performance of their jobs; obtaining, preparing, donning, doffing, and sanitizing protective clothing and gear ("PPE"); sharpening knives or using knife maintenance equipment known as "steels" or "mousetraps;" and walking between work sites before the first work activity and after the last work activity of the day.

*Id.*

Additionally, the defendant's employees are required to wear uniforms personal protective equipment (PPE), for protection and sanitary reasons. *Id.* ¶ 8. The PPE may vary depending on job duties, but generally includes plastic aprons, steel aprons, cloth aprons, belly guards, arm guards, steel sleeves, sheaths, gloves, mesh gloves, mesh aprons, hardhats, scabbards, hairnets, earplugs, coveralls, eye protection, and other protective equipment and coverings. *Id.* The defendant does not compensate employees for up to an hour each day spent donning, removing, replacing, or cleaning their PPE at the beginning or end of shifts, and paid or unpaid meal or break periods. *Id.* ¶¶ 3, 9-11. The conditionally certified class of individuals includes all current and former non-exempt production employees employed since August 21, 2006, to present, who use PPE. **See** Filing No. 81.

From August 21, 2006, until December 31, 2006, the defendant's employees kept PPE in their lockers between shifts and the employees were responsible for washing the PPE. **See** Filing No. 378 - Ex. 12 Perkins Depo. p. 94-95 (Page ID #9486-9487); Ex. 16 Vesely Depo. p. 131-132 (Page ID #9588-9589); Filing No. 398 - Reply p. 12 n.5 (noting the defendant assumes the date for the change in policy to give the plaintiffs the benefit of any

---

[1] The defendant relies, in part, on a compensation system known as "gang time," which pays production employees only during the time period they are present on the actual production assembly line. **See** Filing No. 62 - Collective Bargaining Agreement (CBA) Art. 20.1.

doubt).  Since January 1, 2007, the defendant washes certain items of PPE overnight.  After the end of their shifts, the employees drop certain PPE into bins for washing, then retrieve the cleaned items from racks prior to the beginning of the following shift.  **See** Filing No. 377 - Ex. 3 Davis Depo. p. 114 (Page ID #9330).    Nevertheless, employees continue to be responsible for cleaning and storing some items of PPE.  **See, e.g.,** Filing No. 377 - Ex. 3 Davis Depo. p. 51-52 (Page ID #9327-9328); Filing No. 378 - Ex. 13 Schroeder Depo. p. 144 (Page ID #9534).

Although employee routines may differ, a typical routine for a class member employee is to enter the employee locker room upon arriving at work to don or collect items of PPE and sanitizing equipment prior to punching in with a time clock and entering the department work area.  **See, e.g.,** Filing No. 378 - Ex. 16 Vesely Depo. p. 123-135 (Page ID #9580-9592). Generally, the plaintiffs are only paid for the time the production line is in process or from a scheduled start time after completing their pre-shift routines.  **See** *id.* at 185-187 (Page ID #9613-9615) (gang time in the Kill department is, for example, when the first hog reaches the gutter until the last hog reaches the gutter); Filing No. 377 - Ex. 5 Doremus Depo. p. 158-164 (Page ID #9378-9384).   The typical routine during unpaid meal breaks includes removing (and later re-donning) items of PPE, such as gloves, goggles, and aprons, at the employees' workstations before leaving the work area to eat a meal or use the bathroom.  **See** Filing No. 377 - Ex. 3 Davis Depo. p. 137-139 (Page ID #9335-9337); Filing No. 380-1 - Ex. 28 Orientation Presentation (Page ID #9837).  However, the employees may choose to remain in the work area or begin the doffing process immediately after handling meat to leave for the unpaid break period.  **See** Filing No. 135-2 - Ex. A(1) Vesely Decl. ¶¶ 84, 86 (Page ID #1739). The typical post-shift routine includes removing items of PPE for cleaning or storing in the locker room.  **See** Filing No. 377 - Ex. 5 Doremus Depo. p. 166-173 (Page ID #9385-9387) (noting employees may clean and store boots and knives in their lockers).  The employees remove items such as gloves and aprons and place them in collection stations on the production floor as they exit the department.  **See** Filing No. 135-2 - Ex. A(1) Vesely Decl. ¶ 91 (Page ID #1740).  However, employees do not have to wait until the end of their shifts to begin the doffing process.  *Id.* Vesely Decl. ¶ 89 (Page ID #1740).  In sum, the plaintiffs allege that on average the off-the-clock time each plaintiff works completing compensable activities is an estimated 19.59 minutes pre-shift, 10.32 minutes during unpaid meal periods,

and 18.04 minutes post-shift.  **See** Filing No. 375 - Response p. 23, 24, 27 (**citing** Filing No. 376 - Ex. A Cottrell Decl. ¶¶ 6-7 (Page ID #9046-9047) and ¶ 8 (Page ID #9133)).

Although the defendant admits certain employees are required to wear various types of PPE to perform the functions of their jobs, the defendant argues the amount of time each employee engages in donning and doffing varies widely.  **See** Filing No. 365 - Brief p. 12-20. One major distinction affecting the PPE worn is whether the employee is a knife worker or not.  *Id.* at 2, 12, 30-32.  Nevertheless, the defendant contends some employees are able to engage in donning and doffing activities while they are being paid.  *Id.* at 6-11.  Specifically, employees may don and doff certain PPE either after the gang time period begins or before it ends, provided they are prepared for their production task.  **See, e.g.,** *id.* at 17, 19. Alternatively, some employees are paid until they complete their doffing activities and punch a time clock.  *Id.* at 8.  Finally, some categories of employees are paid additional pay allowances of between four and sixteen minutes each shift for, among other things, "compensable donning and doffing time," as part of a collective bargaining agreement (CBA) and a memorandum of understanding (MOU).  *Id.* at 10-11.

The defendant contends the plaintiffs are not similarly situated due to distinct methods of pay.  **See** Filing No. 365 - Brief p. 6-11.  Many of the production employees, approximately 159 of the plaintiffs, are paid on a gang time compensation system such that "the primary measurement of the amount of time each day typically is based on the elapsed time as measured at a certain point on the production line at the start and end of the workday." *Id.* at 7.  Other production employees, approximately 79 of the plaintiffs, are paid from a scheduled start time until an individual "end punch" or "out punch" time.  *Id.*  However, approximately 54 of the plaintiffs have been paid under both pay systems during the relevant time period.  *Id.* at 8-9.  A few employees, such as assistant supervisors and employees engaging in set up or tear down activities, are paid based on individual start and stop times. *Id.* at 9-10.  The plaintiffs argue that regardless of the compensation system the plaintiffs continue to engage in compensable work activity off the clock.

## ANALYSIS

The defendant seeks to have the court decertify the plaintiffs' conditionally certified FLSA claim, pursuant to 29 U.S.C. § 216(b).  Pursuant to the FLSA, a collective action may

be maintained "by any . . . employee . . . for and in behalf of himself . . . and other employees similarly situated" to recover damages for the failure to pay minimum or overtime wages. 29 U.S.C. § 216(b); **see** 29 U.S.C. § 207. An FLSA "collective action" is different from a Rule 23 class action. "In a class action, a potential plaintiff's claim is automatically included in the case unless he expressly 'opts out' of the class. By contrast, a potential plaintiff's claim will be included in a collective action *only* if he expressly opts *in* to the action." *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1163 (D. Minn. 2007). The district court, in its discretion, may authorize the named plaintiffs to transmit notice of the lawsuit to other potential claimants upon a showing the named plaintiffs are similarly situated to the others whom they seek to represent. *Id.* "[C]ourts generally follow a two-stage approach when deciding whether the named plaintiffs in an FLSA action are 'similarly situated' to other potential plaintiffs." *Id.*

Succinctly put,

> At the first stage, a class is conditionally certified on a relatively minimal showing, and then prospective plaintiffs can opt in to the action by filing consent forms. At the second stage, which almost always follows substantial discovery, plaintiffs must make a stronger showing to continue to proceed on a collective basis. If plaintiffs cannot make this stronger showing at the second stage, the conditionally certified class is decertified. Typically the second stage is triggered when the defendant moves to decertify the conditionally certified class.

*Parler v. KFC Corp.*, 529 F. Supp. 2d 1009, 1011 (D. Minn. 2008) (internal citation omitted).

Furthermore, the first stage or "notice stage" may be based only on the pleadings and any affidavits in the record. *Parker*, 492 F. Supp. 2d at 1164. At the early stage, "[t]he court does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Burch v. Qwest Commc'ns Int'l, Inc.*, 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (citation omitted). The plaintiffs have the burden of presenting evidence "establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan." *Id.* "A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." *Severtson v. Phillips Beverage Co.*, 141 F.R.D. 276, 278-79 (D. Minn. 1992) (containing language from Mag. J. order in District Court opinion affirming). Even at the early stage,

6

there must be meaningful identifiable facts or legal nexus binding the claims "so that hearing the cases together furthers the purposes of section § 216, is fair to both parties, and does not result in an unmanageable trial." *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 535 (S.D. Tex. 2008); **see also** *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507-08 (M.D. La. 2005). "Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted." *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (internal citations omitted). Evidence that most production employees are paid on a gang time basis provides ample evidence of a "single decision, policy or plan." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 896 (N.D. Iowa 2008); **see also** *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678 (D. Kan. 2009) (holding defendant's admissions with regard to gang time system, and failure to record actual time spent on activities, provided support for plaintiffs' assertions that employees were not compensated for time spent performing work activities). An additional factor suggesting similarity includes whether a significant number of the plaintiffs are from the same geographical location or facility. **See** *Bouaphakeo*, 564 F. Supp. 2d at 894.

By contrast, a second stage or final determination is usually made "after discovery is largely complete and the matter is ready for trial" when the court is able to make "a factual determination on the similarly situated question." *Parker*, 492 F. Supp. 2d at 1164 (citation omitted).

> The "similarly situated" standard at the second stage is less "lenient" than at the first, as is the plaintiffs' burden in meeting the standard. Exactly how much less lenient [the court] need not specify, though logically the more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action. . . . [A]lthough the FLSA does not require potential class members to hold identical positions, the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions.

*Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (alteration added) (internal citations and quotations omitted). "During this second stage analysis, a court reviews several factors, including (1) disparate factual and employment settings of the individual plaintiffs; (2)

the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) (internal quotations and citation omitted); **see also** *Bouaphakeo*, 564 F. Supp. 2d at 897-900.

In the instant case, there is no dispute the certification process is at the "second stage" for final determination. Discovery is complete and the case is scheduled for trial. **See** Filing No. 322. The court conditionally certified the plaintiffs' collective action consisting of:

> All current and former non-exempt production employees (except as provided in paragraph 2 below) who have been employed at any time between August 21, 2006 and the present by Farmland Foods, Inc. at its hog processing facility in Crete, Nebraska, who use or used personal protective equipment, and were paid on a gang-time compensation system, as well as non-exempt production employees who have been employed in one of the following departments, between August 21, 2006 and the present, if they use or used personal protective equipment, regardless of their type of compensation system . . .

Filing No. 81. The definition goes on to specifically include individuals employed in twenty-five identified departments but exclude individuals from those departments performing only support jobs, such as "Palletizer/APC". *Id.*

The defendant argues the court should decertify the conditionally certified class because the plaintiffs are unable to prove they are similarly situated as required to proceed collectively under the FLSA. **See** Filing No. 364. The defendant contends the plaintiffs are unable to show similarity because (1) there are three different pay systems; (2) there are two distinct categories of production workers - knife workers and non-knife workers; (3) there are significant variations in the type of PPE worn and the amount of time spent on donning and doffing related activities; (4) the plaintiffs' claims are individualized and subject to unique defenses; and (5) the individualized nature of the claims tried collectively would prejudice the defendant. *Id.* Accordingly, the defendant asserts the variations in the class members' activities, combined with the extra time some members are paid, bears on whether the defendant may be liable to any individual member. *Id.* at 2, 30-31, 39-41. Thus, the individual differences are relevant not only relevant to the amount of damages, but to a liability determination. *Id.* In this regard, the defendant argues the liability issues would require mini-trials for each class member. *Id.* at 47-48; Filing No. 398 - Reply p. 4, 10-11.

8

The plaintiffs contend the named plaintiffs are similarly situated to all potential class members because they are all subject to the defendant's common policy of requiring employees to perform work without compensation based on compensation systems related to production time, rather than on the time spent by the employees engaged in compensable work. **See** Filing No. 375 - Response p. 36, 39-41. The plaintiffs argue the common policy impacts each of the plaintiffs similarly despite any insignificant differences in terms of using various PPE and the so-called variety of compensation systems. **Id.** at 41-48. The plaintiffs suggest they be compensated for a reasonable amount of time for donning, doffing, and related activities, which reasonable time is not covered by the current CBA and MOU, both applied without regard to individual differences. **Id.** at 3-4, 23, 28-31.

The court finds the plaintiffs have met their burden of presenting evidence to maintain the class as previously conditionally certified. The evidence shows the class members are subject to a single decision, policy, or plan. The plaintiffs need not show the class members are identically situated. In this case, the evidence shows the plaintiffs are employed at the same location, advance similar claims, seek substantially the same form of relief, and have similar circumstances of employment. Specifically, the plaintiffs were paid with a system based on production time, which time arguably does not compensate them for compensable work activity. Although the compensation systems may capture different start and stop times, the evidence shows the plaintiffs continue to engage in donning, doffing, and related activities outside the compensated period. **See** Filing No. 365 - Brief p. 28 (arguing some of the plaintiffs were likely engaged in "much[, but not all] of their doffing during paid time"). Additionally, they were all required to don and doff certain items of PPE in the course of their employment, though the exact items of PPE required and worn varied, at least to some extent, based on department, position, and personal preference. The immaterial distinctions among employees (i.e., types of equipment and amount of time spent) do not diminish the predominant relevant similarities. Likewise, the defenses noted by the defendant would apply (or fail to apply) to many, if not all of the plaintiffs.[2]

---

[2] The defendant raises a couple of defenses directed at one or a few specific plaintiffs, however these particular defenses have been rejected by the court upon resolution of motions to dismiss or for summary judgment. The defendant may not rely on these specific defenses to defeat a finding of similarity between the plaintiffs when the defenses have been resolved against the defendant.

Moreover, the pay policy was uniformly applied with a uniform number of extra minutes paid (or promised) to a group of the production employees. **See** *Russell v. Illinois Bell Tele. Co., Inc.*, 721 F. Supp. 2d 804, 815-16 (N.D. Ill. 2010) (finding plaintiffs were similarly situated despite variation in off-the-clock time due to common policies); **cf.** *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 295-97, 303-04 (E.D. Pa. 2010) (finding plaintiffs were not similarly situated because pay system changed over time and predetermined pay for donning and doffing activities differed by department, shift, position, and supervisor).  In this case, the plaintiffs do not suffer from any substantial and material distinction. **See** *Anderson*, 488 F.3d at 954 n.8 (noting many of the opt-in plaintiffs were not unionized and a key defense centered on the existence of a collective bargaining agreement); *Gatewood v. Koch Foods*, No. 3:07CV82, 2009 U.S. Dist. LEXIS 113896, at *53-54 (S.D. Miss. Oct. 20, 2009) (finding plaintiffs were not similarly situated because they admitted they were not subject to a single pay practice and varying pay decisions implemented were based on specific departments, positions, and supervisors); *Brechler v. Qwest Commc'ns Int'l, Inc.*, No. CV-06-940, 2009 WL 692329 (D. Ariz. Mar. 17, 2009) (finding plaintiffs were not similarly situated because subtle coercion requiring employees to work uncompensated overtime did not affect plaintiffs equally due to individual manager's practices).

In sum, the court finds the differences between the class members in terms of precise PPE used or time consumed in relevant activities does not require individualized assessments of liability.  In determining the defendant's liability, the fact finder will determine the impact of a single pay policy or plan on the class members as a whole.  Whether certain activities are compensable will not be determined at this stage of the litigation.  Clearly, the questions of what is a compensable work activity and how that work relates to the wages paid to plaintiffs remains for determination at trial.

Furthermore, the current facts and procedural posture of the case indicate hearing the class members' cases together is fair to the parties and will not result in an unmanageable trial.  Under the circumstances presented, the plaintiffs are adequate representatives of the defendant's past and current employees who engage in allegedly compensable, but uncompensated work activity.   The plaintiffs are similarly situated to members of the

proposed class.[3]   Thus, class certification is warranted with regard to those production employees who use PPE.  For these reasons, the court recommends denying the defendant's motion to decertify the class in this case.

**IT IS RECOMMENDED TO JUDGE JOSEPH F. BATAILLON that:**

The defendant's Motion to Decertify (Filing No. 364) be denied.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.  Failure to timely object may constitute a waiver of any objection.   The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 9th day of January, 2012.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

---

[3]   The basic similarities between the class members make it unnecessary to divide the current class into subclasses such as divisions by pay system, knife use, and whether the class members were hired before or after 2006, as suggested by the defendant.  **See** Filing No. 398 - Reply.  As the defendant notes, most of the plaintiffs overlap these categories due to length of employment and changes in job duties over time.  **Id.**  Thus, dividing the class into subclasses would merely multiply the number of trials without decreasing the complexity of the issues.  Further, these divisions are arbitrary under the circumstances where the plaintiffs are similarly paid under systems which exclude time spent on nearly identical donning, doffing, and PPE related activity.

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.