IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARIA GUZMAN MORALES & | ) | |
| MAURICIO R. GUARJARDO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 8:08-cv-504 |
| | ) | |
| FARMLAND FOODS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT FARMLAND FOODS, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Submitted By:
Kenneth M. Wentz III (NE # 23580)
Jackson Lewis LLP
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
Tel: (402) 391-1991
Fax: (402) 391-7363
wentzk@jacksonlewis.com

L. Dale Owens, Esq.
Admitted *Pro Hac Vice*
Georgia Bar No. 557482
JACKSON LEWIS LLP
1155 Peachtree Street, NE, Suite 1000
Atlanta, GA 30309-3600
Tel: (404) 525-8200
Fax: (404) 525-1173
owensd@jacksonlewis.com

Steven D. Davidson, Esq. (NE # 18684)
Allison D. Balus, Esq. (NE # 23270)
BAIRD HOLM, LLP
1500 Woodmen Tower
1700 Farnam Street
Omaha, Nebraska 68102-2068
Tel: (402) 636-8254
Fax: (402) 344-0588
sdavidson@bairdholm.com
abalus@bairdholm.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iv

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 3

    A.  Farmland's Responses and Objections to Written Discovery....................... 4

    B.  Depositions................................................................................... 5

    C.  Farmland's Document Production ........................................................ 6

        1.  Farmland Has Produced, and Plaintiffs Have Received Copies of, Over 83,000 Pages of Documents ...................................................................6

        2.  Farmland Separately Tendered 168 Boxes of Documents in June 2010 Which Plaintiffs Finally Inspected A Year Later ...............................................6

        3.  Plaintiffs' Request that Farmland Produce Personnel Files, Shift Activity Reports, and Production Schedules .......................................................9

        4.  Plaintiffs' Last-Minute Claim that Farmland's HACCP and SSOP Documents Were Sought in Certain Rule 34 Document Requests ...........................11

ARGUMENT ........................................................................................... 14

    A.  Plaintiffs' Motion Should be Denied as Untimely..................................... 14

    B.  Plaintiffs Failed to meet and Confer Regarding Farmland's Responses to Requests Nos. 28 and 63-66............................................................ 18

    C.  Plaintiffs' Motion to Compel Should Be Denied as to the HACCP and SSOP Documents .................................................................................. 19

        1.  Request No. 28 Did Not Request Any Type of HACCP or SSOP Document ......23

        2.  Request Nos. 34 and 35 Did Not Request Any Type of HACCP or SSOP Document ................................................................................24

        3.  Request Nos. 63-66 Did Not Request Any Type of HACCP or SSOP Document ................................................................................26

        4.  Rule 26 Does Not Require Farmland to Disclose HACCP or SSOP Documents ...............................................................................28

        5.  *Choul v. Nebraska Beef, Inc.* Does Not Apply ...................................29

D.  Plaintiffs' Motion to Compel Should be Denied as to the Shift Activity Reports .......31

E.   Farmland Should Be Awarded Sanctions For Plaintiffs' Delay and Pointless Motion ................................................................................................................. 37

CONCLUSION ........................................................................................................... 39

CERTIFICATE OF FILING AND SERVICE ............................................................. 41

TABLE OF AUTHORITIES

**Statutory Authority**

Advisory Committee Notes to 2000 Amendments to Rule 26(a)(1) ........................................... 28

Fed. R. Civ. P. 34(b)(1)(A) ........................................................................................................ 4

Fed. R. Civ. P. 37(a)(2)(B) ....................................................................................................... 18

Fed. R. Civ. P. 37(a)(5)(B) ................................................................................................... 37, 39

NECivR 7.1(i)(1) ...................................................................................................................... 18

Rule 26(a)(1) ............................................................................................................................. 28

Rule 34 ....................................................................................... 21, 22, 24, 26, 27, 34, 35, 37

**Case Authority**

*Choul v. Nebraska Beef, Inc.*
No. 8:08-cv-99 ................................................................................................... 29, 30, 31

*Continental Indus., Inc. v. Integrated Logistics Solution, LLC*
211 F.R.D. 442, 444 (N.D. Okla. 2002)........................................................................ 14

*Farmers Co-op. Co. v. Bartlett Grain Co., L.P.*
No. 4:09-cv-3252 2011 WL 612060 at *6 (D. Neb. Feb. 10, 2011)............................... 28

*Hohn v. BNSF Ry. Co.*
2007 U.S. Dist. LEXIS 34546 (D. Neb. May 10, 2007).................................... 20, 22, 34

*Miller v. Baker Implement Co.*
439 F.3d 407, 414 (8th Cir. 2006) ............................................................................... 14

*Wakehouse v. Goodyear Tire & Rubber Co.*
2007 U.S. Dist. LEXIS 25635, 15-17 (D. Neb. Apr. 5, 2007)................................. 14, 17

iv

## DEFENDANT FARMLAND FOODS, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Plaintiffs' Motion to Compel Farmland's Sanitation Standard Operating Procedures ("SSOP") and Hazardous Analysis Critical Control Points ("HACCP") documents is moot and should be denied.  Farmland had already tendered all of those documents before Plaintiffs filed the motion.

Despite Plaintiffs' counsel's avowed and extensive familiarity with HACCP and SSOP documents in the meat processing industry, the first time Plaintiffs claimed any prior discovery request included HACCP and SSOP documents was on October 28, 2011, four months after discovery closed, and over three years after filing the action.  In response to Plaintiffs' raising this issue for the first time, Farmland communicated its belief that none of Plaintiffs' document requests had asked for any of the many different kinds of HACCP and SSOP documents.  Farmland also engaged in a meet and confer attempt regarding these documents, asking Plaintiffs to list the documents they believed were called for in the two document requests they claimed sought certain unspecified HACCP and SSOP documents.  Instead, on December 6, 2011, Plaintiffs' counsel listed every conceivable category of HACCP and SSOP document they "were familiar with" (presumably from their experience in other lawsuits).  Plaintiffs did not connect any of these many different categories to any specific document request, nor did Plaintiffs specify which category of documents Plaintiffs believed to be relevant to the issues in this case.

On December 13, 2011, in an attempt to facilitate the "meet and confer" process, Farmland then offered to produce for inspection examples of different types of HACCP and SSOP documents it maintains in an effort to help the parties come to some agreement as to what may be relevant, whether actually requested or not.  Plaintiffs refused Farmland's offer and

refused to look at any of the proffered documents.  On December 20, 2011, Plaintiffs falsely twisted Farmland's offer by claiming that the <u>offer to produce</u> examples for discussion somehow "proved" that Farmland was <u>refusing to produce</u> other unidentified HACCP and SSOP documents.  Plaintiffs' allegation is false and shows their bad faith attempt to create disputes, instead of resolving them.  Plaintiffs then demanded to review <u>all</u> of the many different kinds of HACCP and SSOP documents, without connecting any such document to any specific document request, or even explaining how any such document may be relevant to the issues in this case. Once it became clear that Plaintiffs were not interested in meeting and conferring, and though Farmland's position continued to be that the HACCP and SSOP documents were not called for by any document request, Farmland simply gave up any effort to help focus on relevant documents, and instead, offered to make all of the HACCP and SSOP documents available for inspection and review before the January 3, 2012, discovery motion deadline.  Plaintiffs refused, and instead insisted on waiting until two weeks after the January 3, 2012, discovery motion deadline before even beginning to review the documents.

Even though Plaintiffs knew that Farmland already had tendered all of the HACCP and SSOP documents, Plaintiffs nevertheless filed this motion to compel Farmland to do so.  The act of filing this motion to compel documents Farmland already had made available is in bad faith.  Farmland never refused to give Plaintiffs any HACCP or SSOP document.  For Plaintiffs' bad faith filing of this motion to compel documents Farmland already had tendered and for Plaintiffs' failure to engage in a meaningful meet and confer, Farmland is entitled to sanctions, including reasonable attorney's fees, for the costs of opposing Plaintiffs' motion.

The real strategy here is clear.  Plaintiffs tactically chose to postpone until the eve of trial any issues regarding HACCP and SSOP documents, even though they knew such

documents had not been produced at least as early as August 2010 when informed as such in a deposition.  Though that tactic was hampered by this Court's entry of a January 3, 2012, deadline for all discovery motions, they waited until October 28, 2011, to even mention any such issue, and until the January 3, 2012, deadline to file this motion.  The Court should reject this tactic to "reverse engineer" <u>any</u> discovery request to fit a document which may not have been produced, so as to create some sort of last-minute "gotcha" discovery game to disrupt Farmland's trial preparation and the orderly trial of this case.  Plaintiffs have been given the opportunity to inspect and copy numerous documents, including over 160 boxes of HACCP and SSOP documents encompassing a variety of topics that are unrelated, such as product descriptions for boneless hams and loin chops, flow charts tracking the process to make certain product including fully cooked loin roasts and shank portions, and temperature monitoring forms.  The Court should deny Plaintiffs' motion, hold that discovery is closed, the discovery deadline has passed, and that Plaintiffs are precluded from raising <u>any</u> issues regarding any new documents or demands on the eve of trial.  The Court should award Farmland sanctions for having to defend against a meritless, untimely motion only weeks before trial.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The Court extended the discovery deadline multiple times, ultimately re-setting that deadline to June 9, 2011.  As of the close of discovery on June 9, 2011, Plaintiffs did not propound a single discovery request specifically mentioning any kind of HACCP or SSOP document.  As of the close of discovery, Plaintiffs never even claimed that any of their document requests should be interpreted to ask for any kind of HACCP or SSOP document.

Upon motion from Farmland, which Plaintiffs opposed, the Court set a final discovery motion deadline for January 3, 2012.  Plaintiffs filed this motion on that deadline.

3

**A.**     **Farmland's Responses And Objections to Written Discovery**

On April 9, 2009, almost three years ago, Plaintiffs served Farmland with 78 document requests.  See Ex. 11 to Plaintiff's Index of Evidence.  On June 10, 2009, Farmland timely responded to the requests.  See Ex. 12 to Plaintiffs' Index of Evidence.  Farmland also objected to multiple requests for various reasons.  In particular, Farmland objected that many requests failed to state with particularity the items or category of documents sought as required by Fed. R. Civ. P. 34(b)(1)(A), or were overly broad or vague.  The requests to which Farmland asserted various objections included Request Nos. 28, 34-35, and 63-66.  Plaintiffs never claimed that any of its requests constituted a request for any type of HACCP or SSOP documents at any time between the date of Farmland's response, June 10, 2009, and the close of discovery two years later.

Farmland served amended responses to the requests on March 3, 2010.  See Ex. 13 to Plaintiffs' Index of Evidence.  The amended responses were targeted only toward certain issues about certain requests about which the parties met and conferred in January 2010. Farmland's amended responses included Request Nos. 28 and 34-35.  Farmland's amended responses to those requests simply added to Farmland's response to include the items discussed in January.  Farmland did not need to restate its objections in the amended response, and, it did not waive any of those objections.  Farmland did not amend or supplement its responses to Request Nos. 63-66.  Plaintiffs never challenged or sought to overturn Farmland's objections through any motion to compel.  Plaintiffs never claimed that any of their requests constituted a request for any type of HACCP or SSOP documents at any time between the date of Farmland's amended responses, March 3, 2010, and the close of discovery more than fourteen months later.

4

On April 9, 2009, Plaintiffs served Farmland with 50 interrogatories.  On June 10, 2009, over two years ago, Farmland timely responded to the interrogatories, providing answers and objections.  Farmland served amended and supplemental responses on March 3, 2010 and July 28, 2010, preserving prior objections.

**B.**   **Depositions**

Farmland produced a total of 17 individuals for depositions on January 28, 2010, March 9-11, 2010, April 22, 2010, July 28-30, 2010, August 4-5, 2010, August 26-27, 2010, and April 13-14, 2011.

On August 27, 2010, Plaintiffs deposed Ms. Tammy Vanlaningham, Farmland's Food Safety Manager.  Ms. Vanlaningham is responsible for writing, managing, and maintaining Farmland's SSOP and HACCP programs.   See Vanlaningham Deposition, attached to Defendant's Index of Evidence as Ex. A-2 at 11:11-13, 14:18-15:6.  Ms. Vanlaningham testified that no SSOP had been produced to date.   See Vanlaningham Dep. at 21:9-15.   Ms. Vanlaningham also testified that "pre-op" checklists, part of the SSOP and HACCP programs, had not been produced.  See Vanlaningham Dep. at 100:25-101:6.

Plaintiffs never issued document requests for the SSOP or HACCP documents discussed during Ms. Vanlaningham's deposition.   Plaintiffs never sent any correspondence following Ms. Vanlaningham's deposition claiming that any type of SSOP or HACCP documents Ms. Vanlaningham stated had not been produced should have been produced as part of Farmland's original responses in June 2009, or amended responses in March 2010.

The <u>first</u> time Plaintiffs claimed that any of their documents requests should be interpreted as calling for any kind of HACCP or SSOP document was October 28, 2011.  That

date was over 2½ years after they served their document requests, and over four months after discovery had closed.

### C.     Farmland's Document Production

   1.     Farmland Has Produced, and Plaintiffs Have Received Copies of, Over 83,000 Pages of Documents.

In response to Plaintiffs' document requests, Farmland provided, and Plaintiffs have obtained copies of, over 83,000 pages of documents. The 83,000 pages consist of over 80,000 pages of personnel files and punch records for each Plaintiff (including Opt-In Plaintiffs), which Farmland produced, and Plaintiffs' counsel retrieved and copied, in July 2010.  Farmland again produced the personnel files in June 2011 for inspection and copying; however, Plaintiffs' counsel chose not to copy any of those files at that time.  Farmland tendered the personnel files for a third time, and Plaintiffs' picked them up on January 17, 2012 for copying.

The 83,000 pages also included payroll information, policies, procedures, training materials, and production department lists.  Farmland supplemented these documents throughout the litigation, including as recently as August 15, 2011.  Farmland also has produced very extensive electronic files.

   2.     Farmland Separately Tendered 168 Boxes of Documents in June 2010 Which Plaintiffs Finally Inspected A Year Later.

In response to Plaintiffs' document requests, Farmland also made over 100 boxes of documents available for inspection and copying in June 2010, over 18 months ago[1].  See Declaration of Allison Balus ("Balus Decl."), Ex. A-6 to Defendant's Index of Evidence, at ¶3. These included various daily records such as transfer sheets, employee time detail, guarantee

---

[1] At the time Farmland tendered them, it estimated that there were over 100 boxes.  By the time Plaintiffs inspected them a year later, there were 168 boxes.

statements, hand exercise forms, and exceptions.  Plaintiffs' counsel chose not to inspect or copy all of the boxes of documents that Farmland made available at that time.  Instead, Plaintiffs' counsel demanded that Farmland produce a sample, defined by Plaintiffs' counsel, consisting of those documents relating to specified weeks and months for every year of the class period.  See Balus Decl. at ¶3.

On July 13, 2010, in cooperation with Plaintiffs' counsel's demand, Farmland produced nine boxes of documents, consisting of documents for the first two weeks of December 2005, December 2006, June 2007, December 2007, June 2008, December 2008, June 2009, December 2009, and June 2010.  See Balus Decl. at ¶4.  Plaintiffs' counsel picked up the nine boxes on July 13, 2010.  Farmland placed no fixed time limit for Plaintiffs' counsel to inspect and copy the documents at their discretion.  Over three weeks later, on August 6, 2010, Plaintiffs' counsel returned the documents – presumably having copied all documents in the nine boxes.  After returning the boxes, Plaintiffs' counsel did not make any further request regarding the documents for almost one year.

On May 25, 2011, two business days before the Memorial Day weekend and two weeks before the close of discovery, Plaintiffs' counsel demanded that Farmland produce (again) for inspection all of the boxes of documents that Plaintiffs had failed to inspect or copy a year earlier.  See Declaration of L. Dale Owens ("Owens Decl."), Ex. A-5 to Defendant's Index of Evidence at ¶2.  Plaintiffs' counsel demanded that Farmland produce these documents three business days later, on the day after Memorial Day.  Farmland offered the boxes for inspection and copying at its facility for an entire two week period in June and asked Plaintiffs' counsel to make whatever arrangements were necessary to copy during that two weeks whatever documents Plaintiffs chose to copy.  See Owens Decl. at ¶3.  Plaintiffs' counsel rejected that offer and

refused to copy any of the documents in the boxes at that time. Instead, Plaintiffs' counsel unilaterally decided to send only two attorneys to "index" the documents in the boxes during a two-day period; they stated they would make arrangements in the future to "conduct a further, more intensive review of the documents," even though the discovery period closed June 9. *Id.*

On June 15-16, 2011, Farmland produced, and Plaintiffs' counsel inspected, 161 boxes of documents of the same type as the nine boxes Farmland had produced one year earlier in July 2010. See Declaration of Kenneth M. Wentz III, Ex. A to Defendant's Index of Evidence at ¶2-3; see also Ex. A-1 to Defendant's Index of Evidence. Farmland also produced, and Plaintiffs' counsel inspected, four boxes of personnel files as a supplemental production, as well as three boxes of other records. Out of a total of 168 boxes produced in June 2011, Plaintiffs' counsel did not copy or ask to copy a single document during their June 2011 visit. Contrary to their statement in June 2011 that they would make arrangements for copying later, Plaintiffs' counsel have never asked to return in order to further inspect or copy the documents, nor have they ever made any arrangements to make copies of any of the documents Farmland produced. As noted above, discovery closed June 9, 2011.

In July 2011, Farmland made available (for a third time) manuals relating to its Kronos system. Plaintiffs finally got around to inspecting and copying those materials.

Plaintiffs' counsel never alleged Farmland's HACCP and SSOP documents were called for by any request, or that such documents should be produced for inspection during counsel's June 2011 visit. Plaintiffs' counsel also never raised any issue for four months after the June 2011 inspection that HACCP and SSOP documents were called for by any Rule 34 request, but were not produced.

8

3.      <u>Plaintiffs' Request that Farmland Produce Personnel Files, Shift Activity Reports, and Production Schedules.</u>

Plaintiffs did nothing further for over two months after the June 2011 inspection. On August 17, 2011, Plaintiffs' counsel belatedly sent a letter that seemed to make vague complaints about the June 2011 document production. See Ex. 2 to Plaintiffs' Index of Evidence. The letter identified three categories of documents: (1) Personnel Files; (2) Production Schedules; and (3) Shift Activity Reports. Plaintiffs' counsel's August 17, 2011, letter said absolutely nothing about any kind of HACCP or SSOP document. With regard to the three categories of documents identified, the letter did not clearly state what Plaintiffs were seeking. Plaintiffs' counsel did not ask to come back and inspect or copy any of the many thousands of documents that Farmland had produced. The letter did not propose any solutions to whatever complaints Plaintiffs might have. In the August 17, 2011 letter, Plaintiffs' counsel falsely claimed to have seen certain documents for the first time in the June 2011 inspection. The falseness of their claim was exposed by the fact that they referenced a Production Schedule that Plaintiffs' counsel had copied and Bates numbered from the nine boxes that Farmland had produced <u>over one year earlier</u>, in July 2010. *Id.*

Farmland's counsel promptly responded to Plaintiffs' August 17, 2011 letter nine days later. See Ex. 1 to Plaintiffs' Index of Evidence. In the August 26, 2011, letter, Farmland explained that Shift Activity Reports were not sought in any document request, nor relevant to the litigation. Farmland explained that Shift Activity Reports are documents created and utilized by the security company that provides outside security at Farmland's Crete, Nebraska facility. Farmland explained that, beginning at least as early as 2007, the security company used the documents to record activities of events <u>outside</u> the facility that are observed by the outside security guards during their specific shifts. Farmland also explained that Shift Activity Reports

do not record any activity of any Plaintiff occurring inside Farmland's facility, where Plaintiffs worked, and were not sought by any document request, relevant, or likely to lead to the discovery of admissible evidence.

On August 18, 2011, in a teleconference with Magistrate Judge Thalken, Farmland asked the Court to set a deadline for all discovery disputes to be presented. Plaintiffs vigorously opposed that request, and the motion Farmland later filed (which was granted).

Plaintiffs then did nothing further for over a month. On September 27, 2011, Plaintiffs' counsel sent another letter regarding the same three categories of documents. See Ex. A-3 to Defendant's Index of Evidence. Plaintiffs' counsel's September 27, 2011, letter did not say anything whatsoever about any HACCP or SSOP documents. That letter repeated vague complaints, but Plaintiffs' counsel did not ask to return to copy any of the documents, nor propose any solution to whatever concerns they had. In October, Farmland's counsel spoke by telephone to lead counsel for Plaintiffs to ask them to review the repeated letters and to propose specific solutions to whatever complaints they might have. Plaintiffs' lead counsel agreed to look into the matter.

A month after their September 27, 2011 letter, and over three months after the June inspection, Plaintiffs' counsel finally sent another letter on October 26, 2011 regarding the Personnel Files, Production Schedules, and Shift Activity Reports. See Ex. A-4 to Defendant's Index of Evidence. Plaintiffs' counsel's October 26, 2011, letter did not say anything whatsoever about any HACCP or SSOP documents. Plaintiffs' counsel sought production of Personnel Files, Production Schedules, and Shift Activity Reports, despite the fact that Farmland already had made the Personnel Files available for inspection and copying in June 2011. On November 8, 2011, Farmland responded, tendering the Personnel Files for inspection and

copying as it had done in June 2011, upon reasonable notice.  See Ex. 3 to Plaintiffs' Index of Evidence.  Farmland also explained that the Production Schedules are not responsive to any request, and that they are living documents created by Farmland's Processing Scheduler only when the facility is scheduled to operate on a Saturday or Sunday.  Farmland explained the Production Schedules are a projection of the times that the facility will be operating, and is emailed to various administrative employees for informational purposes, and to ensure proper non-production staffing and services are available on that weekend day.  The Production Schedule does not undertake to record the actual times that are later worked.  Farmland informed Plaintiffs' counsel that the documents that are the actual records that Farmland makes of the time were included in the documents Farmland produced in the nine-box sample in July 2010, and the 161 boxes in June 2011.  Nevertheless, Farmland, in an effort to quell any dispute, later offered to produce all Production Schedules maintained since October 2011.  See Ex. 4, 7, and 9 to Plaintiffs' Index of Evidence.

In the November 8, 2011, letter, Farmland, as in its August 26, 2011, letter, explained that Shift Activity Reports were not called for by any document request, nor relevant to the litigation as the Shift Activity Reports do not record any activity of any Plaintiff occurring inside Farmland's facility, where Plaintiffs worked.  Farmland reiterated this in the December 2, 2011, teleconference with Plaintiffs' counsel, in email correspondence of December 7, 2011, and in a December 22, 2011, letter.  See Ex. 4 and 7 to Plaintiffs' Index of Evidence.

4. <u>Plaintiffs' Last-Minute Claim that Farmland's HACCP and SSOP Documents Were Sought in Certain Rule 34 Document Requests.</u>

Four months after discovery closed, on October 28, 2011, Plaintiffs for the first time interpreted two specific document requests to seek unspecified types of HACCP and SSOP documents.  See Ex. 6 to Plaintiffs' Index of Evidence.  Plaintiffs had known such documents

existed since at least Ms. Vanlaningham's deposition 14 months earlier, and had known for over

14 months that Farmland had not produced such documents.  After saying absolutely nothing

about any kind of HACCP or SSOP documents for over 14 months after even that deposition,

Plaintiffs belatedly claimed that unspecified HACCP and SSOP documents were sought by

Request Nos. 34 and 35 and should be produced.  Those requests only said:

> **Request No. 34**
> All documents that summarize, describe or refer to the sanitization production-
> line employees are required to perform on their bodies, clothes or PPE.  This
> request includes, but is not limited to, training documents regarding sanitization.
>
> **Request No. 35**
> All documents that summarize, describe or refer to the cleaning production-line
> employees are required to perform on their bodies, clothes, PPE or work stations.
> This request includes, but is not limited to, training documents regarding cleaning.

See Ex. 12 to Plaintiffs' Index of Evidence at pp. 32-33.

Farmland engaged in the meet and confer process although maintaining the

position that HACCP and SSOP documents were not requested.

During a December 2, 2011, teleconference, Farmland asked Plaintiffs to identify

which HACCP and SSOP documents Plaintiffs now claimed they supposedly had asked for in

Request No. 34 and 35.  On December 6, 2011, Plaintiffs instead sent a letter detailing twelve

broad categories of HACCP and SSOP documents they "were familiar with".  See Ex. 8 to

Plaintiffs' Index of Evidence.  Plaintiffs' letter did not connect any HACCP or SSOP document

to Request No. 34 or 35, or any other document request.  In particular, they did not identify even

which of the twelve broad categories would be covered by a request for documents about

washing or sanitizing "their bodies, clothes, PPE or work stations".  The contrast between their

requests in 2009, and their letter in December 2011, are glaring.  The categories in the December

2011 letter are so vague as to be meaningless, and could include almost anything, such as

documents regarding procedures to following if metal shavings adulterate the product, and maintaining the temperature of the product.  They are certainly not limited to documents which may involve "cleaning" or "sanitization" of "bodies, clothes, PPE or work stations".

There is no truth to Plaintiffs claim that December 22, 2011, was the first time Farmland offered to produce any type of HACCP and SSOP documents.  Farmland continued to meet and confer in an effort to narrow the issues.  On December 13, 2011, Farmland provided information about the HACCP and SSOP documents it maintains, and offered to produce examples of each to facilitate the meet and confer process.  See Ex. 9 to Plaintiffs' Index of Evidence.  Plaintiffs refused to even look at the documents Farmland tendered.   On December 20, 2011, Plaintiffs made the false accusation that Farmland's <u>offer to produce</u> examples somehow constituted a <u>refusal to produce</u> unidentified other documents.  See Ex. 5 to Plaintiffs' Index of Evidence.   That attempt to twist Farmland's <u>offer</u> to cooperate with a <u>refusal</u> to cooperate is further evidence of Plaintiffs' bad faith.  Plaintiffs peremptorily demanded to see <u>all</u> HACCP and SSOP documents, whether or not called for by a discovery request or relevant to the claims alleged in this action.  Farmland realized Plaintiffs did not intend to engage in any meaningful meet and confer.  In an effort to avoid pointless dispute, Farmland tendered its HACCP and SSOP documents for inspection the following week, beginning December 27, 2011. See Ex. 4 to Plaintiffs' Index of Evidence.  Plaintiffs rejected that tender.  They refused to inspect the documents until January 17, 2012, two weeks after the discovery motion deadline had elapsed.

Farmland also tendered Personnel Files, Production Schedules from October 11, 2011, through the present, and Kill Reports from April 2007 through the present, for inspection

and copying.  See Ex. 4, 7, and 9 to Plaintiffs' Index of Evidence.  Plaintiffs' counsel refused to inspect or copy those documents until January 17, 2012.

## ARGUMENT

Farmland has produced its HACCP and SSOP documents as tendered in its December 2011 correspondence.  Plaintiffs' motion is, therefore, moot as to those documents. With regard to the Shift Activity Reports, Farmland has explained to Plaintiffs that the documents have nothing to do with any activity occurring inside Farmland's facility, are not called for in any request, and are not relevant to the claims alleged in this action.  Plaintiffs' motion should also be denied as to the Shift Activity Reports.

**A.      Plaintiffs' Motion Should be Denied as Untimely.**

This Court's precedent requires parties to timely raise discovery issues.  *See Wakehouse v. Goodyear Tire & Rubber Co.,* 2007 U.S. Dist. LEXIS 25635, 15-17 (D. Neb. Apr. 5, 2007) (finding a plaintiff waived alleged discovery abuses and holding that motions to compel raised on the eve of trial were untimely) (*citing Continental Indus., Inc. v. Integrated Logistics Solutions, LLC.,* 211 F.R.D. 442, 444 (N.D. Okla. 2002)) ["Once, as here, a party registers a timely objection to requested production, the initiative rests with the party seeking production to move for an order compelling it. Failure to pursue a discovery remedy in timely fashion may constitute a waiver of discovery violations. It is especially important that a party file its motion before discovery cutoff.  It is also critical that the movant not wait to file its motion until the eve of trial."(emphasis added)] (plaintiff waited 18 months after discovery responses and until two weeks before trial to move to compel); *see also Miller v. Baker Implement Co.*, 439 F.3d 407, 414 (8th Cir. 2006) (noting the plaintiff failed to avail himself of discovery remedies for nearly six months and until after the discovery has closed and summary judgment was granted).

14

This case has been pending since 2008.  Discovery closed June 9, 2011, and trial is set for March 2012.  Plaintiffs' counsel have a high level of familiarity with the meat processing industry and the nature of the documents maintained in the course of meat processing at such facilities, particularly as they relate to food safety and employee safety.  Indeed, Plaintiffs' counsel promote themselves to potential clients as experts in such litigation.[2]  As further evidence, this Court need only look to Plaintiffs' counsel's letter dated December 6, 2011.  See Ex. 8 to Plaintiffs' Index of Evidence.  Plaintiffs' counsel's letter details twelve specific categories of HACCP and SSOP documents Plaintiffs' counsel "are familiar with".  This letter constitutes an undeniable admission that Plaintiffs' counsel knew <u>exactly</u> how to ask for HACCP and SSOP documents "with reasonable particularity" <u>if they genuinely intended to make a Rule 34 document request for them</u>.  They cannot plead ignorance.  There is no excuse for their current attempt to re-interpret vague requests, when they could have and should have made clear and specific requests under Rule 34 within the lengthy discovery period.  Plaintiffs <u>never</u> included <u>any</u> of those categories in any Rule 34 document request during the discovery period.  Even after receiving Farmland's responses to document requests in June 2009 and March 2010, after being expressly informed such documents were not produced in August 2010, and after inspecting over 168 boxes of documents in June 2011, Plaintiffs never claimed that any Rule 34 request included HACCP or SSOP documents.

---

[2] Class counsel Berger & Montague, P.C.'s website touts their Employment Law Group as having "represented classes of employees at meat and poultry plants" and their website cites over $9.5 million in settlements on wage and hour cases in the meat processing industry. *See* Wentz Decl. at Ex. A-8.  Specifically, Shanon J. Carson states in his biography that he "currently serves as lead or co-lead counsel in many class action and collective action lawsuits pending in federal and state courts across the United States, including on behalf of thousands of individuals seeking unpaid wages and overtime compensation who work at meat and poultry plants…. In the area of wage and hour law, Mr. Carson is recently responsible for a string of decisions in the federal courts certifying classes of low wage workers in the meat and poultry industries alleging that they have been forced to work off the clock and during meal and rest breaks."

Class counsel Schneider Wallace Cottrell Brayton Konecky LLP's website cites involvement in six cases involving wage and hour claims in the meat processing industry.  *See* Wentz Decl. at Ex. A-7.  The website also touts counsel as experienced in large wage and hour cases.

Now, only weeks before trial, and seven months after the discovery cutoff, Plaintiffs claim for the first time that Farmland somehow should have interpreted document requests sent in April 2009 to include every conceivable type of HACCP and SSOP document. Plaintiffs waived any such argument, their motion is untimely, and should be denied.

Plaintiffs' counsel used their extensive knowledge of HACCP and SSOP documents during the deposition of Ms. Tammy Vanlaningham, Farmland's Food Safety Manager, in August 2010 – 16 months ago.  Ms. Vanlaningham is responsible for writing, managing, and maintaining Farmland's Sanitation Standard Operating Procedures ("SSOP") and Hazardous Analysis Critical Control Points ("HACCP").  See Vanlaningham Dep. at 11:11-13, 14:18-15:6.  On August 27, 2010, Ms. Vanlaningham testified that no SSOP documents had been produced.  Specifically, Ms. Vanlaningham testified:

> Q:   Have you, as part of this case, produced the most current version of the SSOP for Farmland-Crete?
> A:   I do not believe so.
> Q:   Have you produced any SSOP for Farmland-Crete?
> A:   For this case?
> Q:   Yes.
> A:   No, I do not believe so.

See Vanlaningham Dep. at 21:9-15, Ex. A-2 to Defendant's Index of Evidence.  Ms. Vanlaningham also testified that "pre-op" checklists, part of the SSOP and HACCP programs, had not been produced:

> Q:   Is there some sort of a checklist that your folks check off?
> A:   Basically, yes, that shows we got each department their pre-op form.
> Q:   Have you produced any of those pre-op forms in connection with this case?
> A:   Not to my knowledge.

See Vanlaningham Dep. at 100:25-101:6.

As of the date of Ms. Vanlaningham's deposition, Farmland had produced responses to Plaintiffs' document requests three times: June 2009, March 2010, and July 2010. See Ex. 12 and 13 to Plaintiffs' Index of Evidence.  As of that date, Farmland had also agreed to make over 100 boxes of documents available for inspection and copying in June and July 2010. See Balus Decl. at ¶¶3-5.   Then, almost one year later, in June 2011, Farmland agreed to make 161 boxes of documents of the same type made available one year earlier, available for inspection and copying.  See Owens Decl. at ¶2.  However, Plaintiffs did not raise any issue regarding any type of HACCP or SSOP documents until October 28, 2011.  See Ex. 6 to Plaintiffs' Index of Evidence.  Plaintiffs then waited two more months, until January 3, 2012, approximately 2½ months before trial, to ask the Court to compel production of HACCP and SSOP documents which Farmland already had tendered for inspection.

This Court has determined that a party should not be allowed to delay until well after the discovery cutoff and, on the eve of trial, raise complaints about discovery responses and objections served years earlier.  *Wakehouse v. Goodyear Tire & Rubber Co.*, 2007 U.S. Dist. LEXIS 25635, 15-17 (D. Neb. Apr. 5, 2007.)  Plaintiffs' tactic in claiming Farmland should have somehow known document requests sent in April 2009 included any type of HACCP or SSOP documents, when Plaintiffs themselves never claimed until October 28, 2011, that those requests included any such documents is exactly the type of delay tactic this Court has disallowed.  The fact this Court set a final discovery motion deadline should not excuse them from their obligation to timely raise discovery issues during the discovery period.  Plaintiffs' motion is untimely and should be denied.  Plaintiffs should be prohibited from raising any issues regarding Farmland's production of these or other new documents Plaintiffs may now belatedly claim their requests include.

17

**B.      Plaintiffs Failed to Meet and Confer Regarding Farmland's Responses to Request Nos. 28 and 63-66.**

Plaintiffs' Motion to Compel should be denied because they failed to meet and confer regarding Farmland's response to Request Nos. 28 and 63-66.   Local Rule 7.1(i) requires the moving party to engage in "personal consultations" with opposing counsel in "a sincere attempt to resolve differences" prior to filing a discovery motion.   The rule defines "personal consultation" to include one or more "person-to-person conversations, either in the physical presence of each counsel or on the telephone."   NECivR 7.1(i)(1).   Only after the parties are "unable to reach an accord" should the matter be brought before the court.   *Id.*; see also Fed. R. Civ. P. 37(a)(2)(B)(requiring good faith efforts to resolve discovery disputes prior to seeking court involvement).

Farmland responded to Request Nos. 63-66 on June 9, 2009.   See Ex. 12 to Plaintiffs' Index of Evidence.   Plaintiffs' counsel never raised any issue with Farmland's June 9, 2009, responses to those requests.   Farmland also responded to Request No. 28 on June 9, 2009. *Id.*   Plaintiffs' counsel and Farmland conferred regarding Farmland's response in January 2010, and Farmland issued an amended response to Request No. 28 on March 3, 2010, based on an agreement reached with Plaintiffs' counsel during the January 2010 conference.   See Ex. 13 to Plaintiffs' Index of Evidence.   Plaintiffs' counsel never raised any issue with Farmland's amended response.

On October 28, 2011, when Plaintiffs first raised their claim that unspecified HACCP and SSOP documents should have been produced, they relied only on Request Nos. 34 and 35.   See Ex. 6 to Plaintiffs' Index of Evidence.   From October 28, 2011, through December 19, 2011, counsel for the parties engaged in correspondence regarding Request Nos. 34 and 35.

18

In a letter dated December 20, 2011, only seven business days before their motion (and over the Christmas-New Year's holiday period), Plaintiffs for the first time claimed Request No. 28 and Request Nos. 63-66 encompassed unspecified HACCP and SSOP documents. See Ex. 5 to Plaintiffs' Index of Evidence. Plaintiffs did not explain why they suddenly chose to interpret these requests to include HACCP and SSOP documents. Plaintiffs also failed to connect any HACCP or SSOP document Farmland itemized in its December 13, 2011, correspondence to Request No. 28 or Request Nos. 63-66.

More than thirty months after Farmland's response to Request Nos. 63-66, and over nineteen months after Farmland's amended response to Request No. 28, Plaintiffs suddenly claimed Farmland's responses to be insufficient. Plaintiffs simply decided over 2½ years later that other document requests they had sent in April 2009 should retroactively be interpreted to include unspecified HACCP and SSOP documents. Plaintiffs filed this motion seven (7) business days after first asserting this new interpretation. Plaintiffs' counsel did not satisfy the "meet-and-confer" threshold required by the Federal Rules or the Local Rules of this Court. Based on Plaintiffs complete failure to meet-and-confer in good faith regarding Farmland's responses to Request Nos. 28 and 63-66, Plaintiffs' motion should be denied and sanctions awarded in favor of Farmland.

**C.   Plaintiffs' Motion to Compel Should Be Denied as to the HACCP and SSOP Documents.**

As shown above, in an effort to avoid a dispute, Farmland tendered its HACCP and SSOP documents for inspection in December 2011 during the meet and confer process, despite maintaining its position that such documents were neither called for by any document request nor relevant to Plaintiff's claims. Plaintiffs refused to inspect such documents until

19

January 17, 2011, but did so from January 17-20, 2012.  Plaintiffs' motion as to these documents is moot.

Plaintiffs' motion also fails on its merits.  This Court has determined that "the proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  *Hohn v. BNSF Ry. Co.*, 2007 U.S. Dist. LEXIS 34546 (D. Neb. May 10, 2007).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.*

Plaintiffs fail to identify any document request specifically using the term "HACCP" or "SSOP".  Rather, Plaintiffs claim Farmland should have interpreted seven different requests, collectively or individually, to include some unidentified types of HACCP and SSOP documents (out of all the various types).  Plaintiffs never chose to offer this "interpretation" of its requests to Farmland until October 28, 2011, over four months after discovery closed, and over 2½ years after serving the Rule 34 requests.  See Ex. 6 to Plaintiffs' Index of Evidence. Plaintiffs' December 6, 2011, letter contains a vague and repetitive list of twelve categories of SSOP and HACCP documents Plaintiffs' counsel believe that some companies maintain, based on counsel's experience in other donning and doffing cases against meat processing facilities. Although the letter confirms that Plaintiffs' counsel were fully aware of various types of documents from past experience, Plaintiffs have never requested any category of documents in any Rule 34 request.

Plaintiffs now ask the Court to treat their December 6, 2011, letter listing every type of HACCP and SSOP document with which they are familiar, as synonymous with Request

Nos. 34 and 35 which <u>only</u> ask about "cleaning" or "sanitizing" the production line employees' "bodies, clothes, or PPE" or "work stations."  Plaintiffs never attempted to show that Request Nos. 34 and 35 encompass every one of the broad, vague and repetitive categories listed in their letter.  Rather, Plaintiffs claim that by sending open-ended requests such as Request Nos. 34 and 35 in April 2009, they can then "interpret" the requests more than two years later, and four months after discovery closed, to include every conceivable type of HACCP and SSOP document they ever heard of.  The list in their December 6, 2011, letter goes far beyond anything encompassed by Request Nos. 28, 34-35 and 63-66.  The discovery rules do not allow Plaintiffs to belatedly interpret the requests to mean whatever they like, whenever they like, and then claim the "interpretation" retroactively applies to document requests served more than two years earlier.

Even now, Plaintiffs' Motion fails to match any HACCP or SSOP document Farmland specifically itemized on December 13, 2011, or any of the vague and repetitive categories Plaintiffs identified on December 6, 2011, to any of their Rule 34 document requests.  Plaintiffs' Motion also fails to address Farmland's objections to these requests, or show why these requests are permissible requests pursuant to Rule 34.

Each document request to which Plaintiffs claim the HACCP and SSOP documents are sought fails to meet the parameters of discovery allowed by the Federal Rules.  Request Nos. 28, 34-35 and 63-66 do not specify the item or category of items to be inspected "with reasonable particularity" as required by Rule 34(b)(1)(A).  Rule 34(b)(1)(A) protects responding parties such as Farmland from such tactics, and puts the burden squarely on the requesting party to make clear and particular requests for documents which are relevant to the issues in the case.  "Mere speculation that information might be useful will not suffice; litigants

21

seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Hohn v. BNSF Ry. Co.*, 2007 U.S. Dist. LEXIS 34546 (D. Neb. May 10, 2007.)

Plaintiffs claim in this lawsuit that Farmland is not paying them for pre- and post-shift time spent putting on certain clothing or items, taking off that clothing and those items, and washing themselves or what they wear. Plaintiffs now belatedly claim that there are some unspecified kinds of documents that they think would be generated as part of the HACCP or SSOP program, that somehow would be called for by some of their requests and be related to the claims. Using the terms SSOP and HACCP, however, is meaningless because it does not automatically connect such documents to anything these Plaintiffs did relating to pre- and post-shift donning, doffing, and washing. To the contrary, HACCP and SSOP documents include a broad variety of topics that are unrelated, including records of product descriptions for boneless hams and loin chops, flow charts tracking the process to make certain product including fully cooked loin roasts and shank portions, and temperature monitoring forms. Under Rule 34, Plaintiffs' requests must specify with reasonable particularity the categories of documents they request. Farmland objected to Request Nos. 28, 34-35 and 63-66 for not doing so in June 2009. Plaintiffs never timely moved to challenge those objections. Farmland did not waive its objections to Request Nos. 34-35 by serving amended responses in March 2010 that added further responses. Plaintiffs' motion fails to show that the requests meet the requirements of Rule 34(b)(1)(A) by specifying documents "with reasonable particularity" as required by the rules. Plaintiffs' motion should be denied.

1.      Request No. 28 Did Not Request Any Type of HACCP or SSOP Document.

From October 28, 2011, until December 19, 2011, Plaintiffs claimed that Farmland's HACCP and SSOP documents were sought only by Request Nos. 34 and 35.  On December 20, 2011, only seven business days before filing their motion, Plaintiffs first claimed that Request No. 28 somehow asked for HACCP and SSOP documents or should be interpreted expansively to do so.  Request No. 28 states:

> **Request No. 28:**
> All documents that summarize, describe or refer to the PPE that each production-line employee wears.

See Ex. 12 to Plaintiffs' Index of Evidence at p. 28.

Farmland initially objected to this request in June 2009.  *Id.*  The parties engaged in a conference in January 2010 regarding Farmland's response.  In March 2010, Farmland amended its responses to these requests, preserving all objections and stating:

> **RESPONSE:**
> During the January 14, 2010, conference, Plaintiffs' counsel represented that for all of its requests, the term "PPE" was to include any clothing or equipment worn, whether required or not, by production-line employees in the course of their job at Farmland's Crete, Nebraska facility.  **Plaintiffs' counsel further agreed to narrow the request to a representative sample of the list of PPE required for each position, rather than for each class member.  Farmland has produced a list of PPE worn for each production-line position at the Crete, Nebraska facility.**  To the extent individual class members choose to wear additional items, Farmland has no documents containing such information.  [Emphasis added.]

See Ex. 13 to Plaintiffs' Index of Evidence at p. 21.

Plaintiffs' counsel thus <u>narrowed</u> Request No. 28 during the January 2010 conference to seek <u>only</u> a representative sample of the list of PPE required for each position. Farmland complied with its obligations, and produced a list of PPE worn for each production-line position at the Crete, Nebraska facility, as it expressly stated it would.  Farmland did not waive any objections.  When they received this response in March 2010, Plaintiffs' counsel did

23

not raise any claim that this Rule 34 request asked for any of the various kinds of HACCP or SSOP documents, or that Farmland misrepresented the January 2010 conference. Plaintiffs' counsel's December 20, 2011, correspondence and pending Motion to Compel also do not assert that Farmland's response to Request No. 28 (almost 2 years earlier) misrepresented Plaintiffs' counsel's agreement to narrow the request.

Plaintiffs' Motion to Compel attempts to renege on the prior agreement between counsel to narrow Request No. 28, and the Court should reject and penalize Plaintiffs attempt to renege on that agreement. Plaintiffs' counsel now claims Request No. 28 should be <u>broadly</u> construed to include something it did not seek: Farmland's HACCP and SSOP documents. This is obviously disingenuous. Plaintiffs' counsel's statement that now that they believe Request No. 28 to "encompass or apply to Defendant's SSOP and HACCP documents…" is a bald misrepresentation to this Court. See Plaintiffs' Brief in Support of Motion to Compel at p. 7. Plaintiffs' counsel agreed to the exact opposite interpretation of Request No. 28 – it <u>only</u> called for a representative sample of a list of PPE. In March 2010, Farmland complied with Request No. 28 as agreed to by counsel. Plaintiffs' counsel cannot now claim that Request No. 28, as they already agreed to narrow it, nevertheless was a request for Farmland's HACCP and SSOP documents.

2.   <u>Request Nos. 34 and 35 Did Not Request Any Type of HACCP or SSOP Document.</u>

From October 28, 2011, until December 19, 2011, Plaintiffs solely relied on Request Nos. 34 and 35 as including HACCP and SSOP documents. Those requests stated:

**Request No. 34**
All documents that summarize, describe or refer to the sanitization production-line employees are required to perform on their bodies, clothes or PPE. This request includes, but is not limited to, training documents regarding sanitization.

**Request No. 35**
All documents that summarize, describe or refer to the cleaning production-line employees are required to perform on their bodies, clothes, PPE or work stations. This request includes, but is not limited to, training documents regarding cleaning.

See Ex. 12 to Plaintiffs' Index of Evidence at pp. 32-34.

Farmland initially objected to these requests. The parties engaged in a conference in January 2010 regarding Farmland's responses. In March 2010, Farmland amended its responses to these requests, preserving all objections and stating:

**RESPONSE:**
During the January 14, 2010, conference, Plaintiffs' counsel agreed to narrow the request by defining the term "sanitization" as any type of cleansing, whether with only soap and water or with special solution and/or products. **Farmland has produced or will produce training materials for sanitization of production-line employees.** [Emphasis added.]

See Ex. 13 to Plaintiffs' Index of Evidence at p. 24.

Farmland complied with its obligations, and produced training materials as it expressly stated it would. When receiving this response in March 2010, Plaintiffs' counsel did not raise any claim that Request No. 34 or 35 called for any type of HACCP or SSOP document and that such documents should also have been produced. Plaintiffs' counsel also failed to send any correspondence during the discovery period claiming Farmland's amended response to Request No. 34 and 35 was inadequate or should have included HACCP and SSOP documents. Surely, if Plaintiffs' counsel genuinely believed Request No. 34 or 35 called for any type of HACCP and SSOP document, they would have raised the issue during the January 2010 conference, or immediately after receiving Farmland's amended response in March 2010. Plaintiffs did not.

25

3.      <u>Request Nos. 63-66 Did Not Request Any Type of HACCP or SSOP Document.</u>

Farmland served responses, including asserting various objections, to Request Nos. 63-66 in June 2009.  On December 20, 2011, over 30 months later and only seven business days before their present motion, Plaintiffs first claimed Farmland's responses to those requests should have included every conceivable HACCP and SSOP documents they ever heard of. Request Nos. 63-66 state:

**Request No. 63:**
All documents describing or reflecting the time each day when the first pig is placed on the production line at Defendant's Crete, Nebraska facility.

**Request No. 64:**
All documents describing or reflecting the time each day when the last pig is taken off the production line at Defendant's Crete, Nebraska facility.

**Request No. 65:**
All documents summarizing, describing or reflecting the time each day that the kill/slaughter floor at Defendant's Crete, Nebraska facility is released by Quality Assurance and the U.S.D.A. so that employees may enter.

**Request No. 66:**
All documents summarizing, describing or reflecting the time each day that the fabrication floor at Defendant's Crete, Nebraska facility is released by Quality Assurance and the U.S.D.A. so that employees may enter.

See Ex. 12 to Plaintiffs' Index of Evidence at pp. 52-55.

Farmland asserted numerous objections to each request.  Farmland never waived those objections, nor did Plaintiffs challenge those objections as part of any meet and confer correspondence or motion to compel.

As mentioned above, and in Farmland's objections, Request Nos. 63-66 fail to meet the parameters of discovery allowed by the Federal Rules.  Request Nos. 63-66 do not specify the item or category of items to be inspected with reasonable particularity as required by Rule 34(b)(1)(A).  Rule 34(b)(1)(A) protects responding parties such as Farmland from such

tactics, and puts the burden squarely on the requesting party to make clear and particular requests.  Farmland objected to Request Nos. 63-66 on this basis in June 2009.  Plaintiffs' motion fails to show how the requests meet the requirements of Rule 34(b)(1)(A) as being permissible requests.

Farmland also objected to Request Nos. 63-66 on the basis that each request is overly broad and unduly burdensome.  The requests seek any document Farmland maintained over what is now almost a six year period which may include the time when the first and last pig are placed on, or removed from, the production line, and when the kill/slaughter and fabrication floors are released.  These requests are not limited to a certain type of document, or a certain category of documents, but rather to any document which may have any notation of time.  Such documents are not relevant to, or reasonably calculated to lead to relevant evidence about, Plaintiffs' claim that they were not paid for time spent donning, doffing, traveling, or cleaning.  Plaintiffs did not take issue with Farmland's objections at any time during this litigation.  Plaintiffs also did not clarify what specific document or category of documents Plaintiffs sought.  Even in Plaintiffs' December 20, 2011, letter and pending Motion to Compel, Plaintiffs fail to show how Farmland should have somehow divined that Plaintiffs' overly broad request specifically sought any of the various types of HACCP and SSOP documents.  Farmland's objections should be sustained.

Farmland further objected to Request No. 64 seeking "the time each day when the last pig is taken off the production line" as nonsensical.  Farmland is a hog slaughtering facility at which hogs are slaughtered and processed into various products (pork chops, hams, bacon, loins, etc.).  Thus, there are no "pigs" at the end of the production line.  Plaintiffs did not attempt

to clarify their intent in any meet-and-confer correspondence, and Farmland's objection to Request No. 64 should be sustained.

Request Nos. 63-66 did not ask for any of the various types of HACCP and SSOP documents.  Plaintiffs' counsel never even claimed they did so prior to December 20, 2011. Further, Plaintiffs fail to specify which, if any, HACCP or SSOP document is specifically sought by Request Nos. 63-66.  The plain language of Request Nos. 63-66 do not seek HACCP or SSOP documents.  To now claim otherwise, or that Farmland should have somehow divined that Plaintiffs "meant" HACCP and SSOP documents is simply absurd.  Plaintiffs cannot now use Request Nos. 63-66 to support their contention that HACCP and SSOP documents were called for by those requests and should have been produced.

4.   Rule 26 Does Not Require Farmland to Disclose HACCP or SSOP Documents.

Rule 26(a)(1) requires a party to provide "a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control <u>and may use to support its claims or defenses</u>, unless the use would be solely for impeachment (emphasis added)."  A party does not have any obligation to disclose documents that it has no intention of using.  See Advisory Committee Notes to 2000 Amendments to Rule 26(a)(1) ("A party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use.").  *See also Farmers Co-op. Co. v. Bartlett Grain Co., L.P.,* No. 4:09-cv-3252, 2011 WL 612060, at *6 (D. Neb. Feb. 10, 2011)("The disclosing party is not required to produce every document that may be relevant to the underlying case as part of the initial disclosures.").

Farmland has never intended to use any undisclosed HACCP or SSOP documents to support its defenses.  Rule 26(a)(1), therefore, does not require Farmland to disclose such

28

documents in its initial disclosures, or supplement its response unless it intends to do so. Plaintiffs' motion should be denied.

5.      *Choul v. Nebraska Beef, Inc.* Does Not Apply.

Plaintiffs' counsel attempts to analogize this case with *Choul v. Nebraska Beef, Inc.*, No. 8:08-cv-99. Farmland is not a party to the *Nebraska Beef* case. Plaintiffs' counsel, however, represented a class of Plaintiffs in *Nebraska Beef*. In *Nebraska Beef*, this Court awarded sanctions for Nebraska Beef's belated production of a certain document type. There, Plaintiffs apparently sent document requests to which Nebraska Beef responded, producing documents and issuing some objections. It appears from the record that in correspondence well before the discovery deadline, Plaintiffs' counsel sent an email specifically identifying Nebraska Beef's HACCP and SSOP documents as responsive to its document requests. Nebraska Beef eventually produced certain HACCP and SSOP documents identified in Plaintiffs' correspondence.

In May 2011, on the first day of trial testimony, Plaintiffs elicited testimony from a Nebraska Beef employee regarding a set of documents maintained by Nebraska Beef not produced during the litigation. The Court reviewed Plaintiffs' document requests and Plaintiffs' meet and confer correspondence. The Court found that Plaintiffs' documents requests, as clarified by Plaintiffs' counsel's correspondence during the discovery period specifically requesting HACCP and SSOP documents, put Nebraska Beef on notice that HACCP and SSOP documents had been requested. On this basis, this Court issued sanctions.

Despite the fact that Plaintiffs' counsel was arguing with Nebraska Beef over HACCP and SSOP documents in early 2011, Plaintiffs' counsel did not raise any such issue about HACCP or SSOP documents until October 28, 2011, and did not file any motion about

them until January 3, 2012.  Plaintiffs' discovery in this case needs to stand or fall on its own based on the record in this case, not the record of some other case to which Farmland is not a party.  Farmland is not chargeable with the knowledge of whatever occurred in *Nebraska Beef* or correspondence between the parties in that case.  Whatever occurred in *Nebraska Beef* simply does not apply here.  It is frivolous for Plaintiffs to argue that an order entered by the Court in a different case in late 2011 somehow retroactively defines what Farmland should have done during discovery in this case in 2009 and 2010.  Plaintiffs' arguments that the *Nebraska Beef* order, relying on a completely different set of facts, should retroactively apply to discovery occurring in 2009 and 2010, is beyond the bounds of logic.

Their own references to the *Nebraska Beef* case prove that they were aware that there are such things as HACCP and SSOP documents.  Though they obviously had such knowledge, unlike *Nebraska Beef*, Plaintiffs here failed to specifically identify HACCP or SSOP documents as being sought by any document request in any correspondence during the discovery period.  Here, Plaintiffs specifically asked Ms. Vanlaningham in August 2010 whether such documents had been produced.  She testified that they had not, and they have known that fact for over 16 months.  Since June 2009, Plaintiffs were also aware of Farmland's objections to the requests which they now belatedly are trying to redefine to seek unidentified HACCP and SSOP documents.  Plaintiffs chose never to challenge those objections or even send any correspondence to meet and confer over whether they claimed any type of HACCP or SSOP documents should have been produced.  Plaintiffs also reviewed over 168 boxes of documents in June 2011, only six weeks after the *Nebraska Beef* trial in which they claim to have confronted similar issues. Plaintiffs still failed to send any correspondence or to meet and confer over any claim that HACCP and SSOP documents should have been produced.

While Plaintiffs would like to apply *Nebraska Beef* to any case in which they are involved, especially this one, *Nebraska Beef* is restricted to the specific facts and course of action chosen by Plaintiffs in that case.  Plaintiffs charted a different course of action in this matter, including never claiming that Farmland's HACCP and SSOP documents were sought by any request until well beyond the close of discovery.  This Court should not accept Plaintiffs invitation to apply *Nebraska Beef* here.  Plaintiffs' motion should be denied.

**D.      Plaintiffs' Motion to Compel Should Be Denied as to the Shift Activity Reports.**

Farmland produced 161 boxes of documents in June 2011.  See Wentz Decl. at ¶2; see also Ex. A-1 to Defendant's Index of Evidence.  Two months later, in August 2010, Plaintiffs sent a letter claiming to have come across one instance of a document entitled "Shift Activity Report".  See Ex. 2 to Plaintiffs' Index of Evidence.  Although given the opportunity to copy the documents at the time, Plaintiffs chose not to copy anything.  Plaintiffs also have not asked to return to the facility to copy any of these documents.  Consequently, there is no evidence in the record of what document Plaintiffs actually saw.  Based on Plaintiffs' description of the document, Farmland explained that "Shift Activity Reports" are used by the outside security contractor that staffs the gate and exterior areas, and are not used for anything inside the plant.  Despite this explanation, Plaintiffs now seek to compel Farmland to produce documents entitled "Shift Activity Reports".  Plaintiffs also seek "similar documents" for the first time in their motion, without specifying what type of document they mean and without showing that whatever they may have in mind even exists.  Unfortunately, this type of overheated and dramatized claim to fabricate a dispute out of sheer speculation, without any basis in fact, has become all too common from Plaintiffs. There is no document entitled "Shift Activity Report" used inside the plant, and Plaintiffs' motion should be denied.

As a preliminary matter, the boxes Plaintiffs' counsel inspected in June 2011 were the same boxes Farmland offered in June 2010, of which Plaintiffs only chose to inspect and copy a sample.  Had Plaintiffs inspected the documents in July 2010 when Farmland initially tendered them, Plaintiffs presumably would have seen this document and would have been able to raise the issue within the discovery period.  Plaintiffs did not raise any issue regarding this type of document until August 2011, two months after discovery closed.

Also, Farmland did not "accidentally" produce the Shift Activity Report.  Farmland produced 161 boxes of records as they were maintained in Farmland's usual course of business.  Farmland did not cull through the boxes.  The Shift Activity Report was not "accidentally" produced as Plaintiffs allege, but, for some now-unknown reason, may have been included in an inspected box when documents were placed in the box years earlier.

Farmland attempted to clarify the use of a "Shift Activity Report" that Plaintiffs' counsel claim to have seen.  In August, October, November, and December, Farmland explained to Plaintiffs' counsel that Shift Activity Reports are not a record of any activity <u>within</u> the facility.  See Exs. 1, 3, 7, and 9 to Plaintiffs' Index of Evidence.  Farmland informed Plaintiffs that "Shift Activity Reports" are documents created and utilized by the outside security company at Farmland's Crete, Nebraska facility.  *Id.*  Beginning at least as early as 2007, the security company used the documents to record activities of events <u>outside</u> the facility that are observed by the security guards during their specific shifts (such as at the front gate).  As of at least as early as 2007, the Shift Activity Reports do not record any activity of any Plaintiff occurring inside Farmland's facility, where Plaintiffs worked.

Plaintiffs asked Farmland to confirm this explanation "by way of a supplemental response to the document requests".  See Ex. 7 to Plaintiffs' Index of Evidence, Madden Email

32

of December 6, 2011, at p. 3.  Farmland responded by pointing out that the Federal Rules do not require a party responding to a document request to enumerate each non-responsive document, and the reasons why it is non-responsive.  See Ex. 7 to Plaintiffs' Index of Evidence, Owens Email of December 7, 2011 at p. 1.  Plaintiffs then filed this motion, seeking the "Shift Activity Reports".  Plaintiffs also now seek "similar documents", about which they failed to meet and confer – and which are completely unidentified and undefined.

Plaintiffs cite Request Nos. 34, 35 and 49 as requests to which "Shift Activity Reports" are responsive.  Request Nos. 34-35 state:

> **Request No. 34**
> All documents that summarize, describe or refer to the sanitization production-line employees are required to perform on their bodies, clothes or PPE.  This request includes, but is not limited to, training documents regarding sanitization.
>
> **Request No. 35**
> All documents that summarize, describe or refer to the cleaning production-line employees are required to perform on their bodies, clothes, PPE or work stations.  This request includes, but is not limited to, training documents regarding cleaning.

See Ex. 12 to Plaintiffs' Index of Evidence at pp. 32-33.

As described above, "Shift Activity Reports" are maintained by the third party security guards for activities or events occurring outside of the facility, not to any activity of any Plaintiff occurring inside Farmland's facility.  In this lawsuit, Plaintiffs allege they did not receive pay for activities they performed <u>inside</u> the facility.  Plaintiffs do not claim Farmland failed to compensate them for work done <u>outside</u> of the facility.  Additionally, the class of Plaintiffs does not include security personnel.  Plaintiffs have not shown the "Shift Activity Report" example they have given has anything to do with the sanitization or cleaning production-line employees may perform on their bodies, clothes, PPE or work stations.  Plaintiffs speculate that the Shift Activity Reports show "missing" or "defective" equipment.  Even indulging

Plaintiffs' speculation, and even if these reports had anything to do with PPE inside the facility (they do not), whether such PPE is "missing" or "defective" would be a completely different question from whether PPE was cleaned or sanitized as set forth in Request Nos. 34 and 35. "Shift Activity Reports", therefore, are not sought by Request Nos. 34 and 35.

Plaintiffs also claim that Request No. 49 should somehow be construed to request "Shift Activity Reports".  Request No. 49 states:

**Request No. 49:**

All documents pertaining to any policies, practices, procedures and/or guidelines used by Defendant to promote compliance with Nebraska and federal labor laws.

See Ex. 12 to Plaintiffs' Index of Evidence at pp. 43-44.

As a preliminary matter, and as set forth in Farmland's objections, Request No. 49 does not meet the parameters of discovery allowed by the Federal Rules.  Request No. 49 does not specify the item or category of items to be inspected with reasonable particularity as required by Rule 34(b)(1)(A).  Rule 34(b)(1)(A) protects responding parties such as Farmland from such tactics, and puts the burden squarely on the requesting party to make clear and particular requests.  Indeed, this Court determined in *Hohn v. BNSF Ry. Co.*, 2007 U.S. Dist. LEXIS 34546 (D. Neb. May 10, 2007), that "[M]ere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Farmland objected to Request No. 49 on this basis in March 2010.  There is no way of telling what documents Request No. 49 could possibly include.  For example, I-9 forms relate to compliance with federal labor laws.  However, Farmland did not produce I-9 forms, Plaintiffs have never claimed I-9 forms were asked for in any document request, and Plaintiffs have never claimed Farmland should have produced I-9 forms.  The fact that Request No. 49 includes I-9 forms and

countless other labor-related documents that Plaintiffs must be aware they do not have, proves this request as written is meaningless.

It was not until after discovery closed that Plaintiffs belatedly tried to reinterpret this "catch-all" request about unspecified state or federal labor law to somehow constitute a demand for documents about "Missing of Defective Equipment," or "Safety Hazards," or "Client Policy Violations," or "Injuries/Illnesses."  If that were the case, there would be no limit to what Request No. 49 could mean – it presumably could mean anything.  By requiring a request to state with reasonable particularity the documents being requested, Rule 34(b)(1)(A) is designed to prevent this type of "it means whatever I say it means, whenever I eventually decide it means that" argument.  Plaintiffs do not do so here.  There is no way of knowing when reading Request No. 49 whether Plaintiffs are requesting what they now seek, I-9 forms, or any of the other kinds of documents that may have anything to do with any federal labor law.  Plaintiffs failed in their motion to show how this request meets the requirements of Rule 34(b)(1)(A) as being a permissible request as it does not request any document type with "reasonable particularity".

Even if Request No. 49 had met the parameters of the Federal Rules, "Shift Activity Reports" are not sought by Request No. 49.  Farmland's outside security service, not Farmland, uses the Shift Activity Report.  Request No. 49 asks for documents related to Nebraska and federal "labor laws" – not sanitation laws, not food safety laws.  Even indulging Plaintiffs' speculation that there is an internal Shift Activity Report with categories such as missing or defective equipment, safety or policy violations, or what PPE is required, there is no logical link of these categories to any "labor law" as set forth in Request No. 49.  Additionally, nothing in the document references any federal or state labor law with which compliance is

sought through use of the Shift Activity Report.  The Shift Activity Report, therefore, is not sought in Request No. 49, even if that were a valid request.

        This Court should also not indulge Plaintiffs' claim to the extent they now seek "Shift Activity Reports <u>or similar documents as they pertain to hourly production employees</u> [emphasis added]."  Plaintiffs did not meet and confer regarding anything other than the "Shift Activity Report".  Plaintiffs did not specify any other "similar" type of document during the six months preceding their motion.  This is yet another example of Plaintiffs constantly changing the interpretation of their discovery requests and "I'll know it when I see it" gamesmanship.

        Plaintiffs characteristically leave "similar" undefined in their motion.  By doing so, Plaintiffs are simply attempting to set-up Farmland and this Court for even more disputes designed to disrupt an orderly trial.  Plaintiffs cannot claim that by including an offhand demand in their motion using an undefined term such as "similar" with categories Plaintiffs claim to have seen on the Shift Activity Report such as "Missing of Defective Equipment," "Safety Hazards," "Client Policy Violations," and "Injuries/Illnesses", Farmland is required to guess at what they might mean, investigate every possible record, and interview every employee to find out whether any record he is aware of is "similar" to whatever Plaintiffs have in mind.  Plaintiffs' last-minute, vague demand is cynically calculated to disrupt Farmland's trial preparation.  Even if Farmland did undertake such a massive effort in response to this vague, last-minute demand, Plaintiffs would likely claim Farmland lied because Plaintiffs had something else in mind, or because they belatedly want to redefine what "similar" means.

        Plaintiffs simply cannot be allowed to continue to wander from their original document requests.  Plaintiffs cannot use a document such as the Shift Activity Report, which has nothing to do with activity <u>inside</u> the facility, and is not called for by any document request,

nor relevant to any claim, to belatedly demand undefined "similar" documents that they did not

ask for in a Rule 34 request, and that are not even tangentially related to the Shift Activity

Report, over seven months after the June 9, 2011, discovery deadline.   The "Shift Activity

Report" is not sought by Plaintiffs in any Rule 34 discovery request.   Plaintiffs have not shown

otherwise, and Plaintiffs' motion to compel production of the Shift Activity Reports should be

denied.   Plaintiffs should likewise be precluded from raising issues regarding any such

documents on the eve of trial.

**E.      Farmland Should Be Awarded Sanctions For Plaintiffs' Delay and Pointless Motion.**

Fed. R. Civ. P. 37(a)(5)(B) provides that if a Motion to Compel is denied, the

court "must, after giving an opportunity to be heard, require the movant, the attorney filing the

motion, or both to pay the party or deponent who oppose the motion its responsible expenses

incurred in opposing the motion including attorney's fees."   The Court may abstain from

ordering this payment if it finds the motion was substantially justified or other circumstances

make an award unjust.

In a December 13, 2011, letter, Farmland offered to produce various examples of

HACCP and SSOP documents so that the parties could further meet and confer about whether

any such documents should be produced.   See Ex. 9 to Plaintiffs' Index of Evidence.   When

Plaintiffs refused, Farmland then tendered all of the HACCP and SSOP documents for inspection

and copying at its Crete, Nebraska facility.   See Ex. 4 to Plaintiffs' Index of Evidence.

On December 20, 2011, Plaintiffs proposed that they be allowed to inspect and

copy the documents on January 16, 2012.   See Ex. 5 to Plaintiffs' Index of Evidence.   On

December 22, 2011, Farmland offered Plaintiffs the opportunity to inspect and copy HACCP and

SSOP documents the week of December 27, 2011, or, alternatively, as Plaintiffs had requested

during the week of January 16, 2012.  See Ex. 4 to Plaintiffs' Index of Evidence.  Plaintiffs refused to inspect and copy any documents before the January 3, 2012, discovery motion deadline.  Though continuing to assert that the HACCP and SSOP documents are were never sought by any of Plaintiffs' document requests, Farmland tendered the HACCP and SSOP documents for Plaintiffs to inspect and copy.  Nevertheless, Plaintiffs filed this discovery motion at the last minute, demanding that the Court order Farmland to produce what Farmland already had tendered, and that Plaintiffs had refused to inspect.

Plaintiffs' motion is without substantial justification, not made in good faith, and is an attempt to disrupt Farmland's trial preparation by creating a discovery dispute.  This Court need look no further than the fact Plaintiffs filed this motion after Farmland had already tendered the HACCP and SSOP documents.

Further proof that Plaintiffs' motion is not substantially justified is that Plaintiffs were aware of the facts on which their motion is based for at least sixteen months.  Plaintiffs deposed a Farmland representative in August 2010, who testified that HACCP and SSOP documents had not been produced.  Plaintiffs' counsel visited Farmland's facility in June 2011, and inspected approximately 168 boxes of documents.  Plaintiffs did not claim Farmland's production in the 168 boxes was insufficient or incomplete because it did not include HACCP and SSOP documents.  Plaintiffs counsel's own correspondence of December 6, 2011, details twelve categories of HACCP and SSOP documents with which they admit they are familiar.  Nevertheless, at no time during the discovery period did Plaintiffs make a specific request for any type of document identified in Plaintiffs' counsel's December 6, 2011 letter, or allege that Farmland's document request responses should have included one or more categories of those documents.

Rather, Plaintiffs specifically waited until almost 7 months after the close of discovery, almost 7 months after they reviewed approximately 168 boxes of documents, and 16 months after they were informed in a deposition that Farmland did not produce HACCP and SSOP documents, to file this motion.  Plaintiffs delay and bad faith in filing this motion only weeks before trial, after the discovery cutoff, and at almost midnight of the discovery motion deadline which they opposed, justifies an award of sanctions, including attorneys' fees, in Farmland's favor.

Farmland, therefore, respectfully submits that, pursuant to Fed.R.Civ.P. 37(a)(5)(B) this Court deny Plaintiffs Motion and award sanctions, including reasonable attorneys' fees, in Farmland's favor.

## **<u>CONCLUSION</u>**

Farmland respectfully submits that this Court deny Plaintiffs' Motion to Compel in whole, further order that Plaintiffs may not raise issues regarding HACCP and SSOP documents on the eve of, or during, trial, and grant Farmland sanctions, including reasonable attorney's fees, for costs incurred opposing Plaintiffs' motion.

Respectfully submitted this 20th day of January, 2011.

*/s/ Kenneth M. Wentz III*
Kenneth M. Wentz III (NE # 23580)
Jackson Lewis LLP
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
Tel: (402) 391-1991
Fax: (402) 391-7363
wentzk@jacksonlewis.com

L. Dale Owens, Esq.
Admitted *Pro Hac Vice*
Georgia Bar No. 557482

JACKSON LEWIS LLP
1155 Peachtree Street, NE, Suite 1000
Atlanta, GA 30309-3600
Tel: (404) 525-8200
Fax: (404) 525-1173
owensd@jacksonlewis.com

Steven D. Davidson, Esq. (NE # 18684)
Allison D. Balus, Esq. (NE # 23270)
BAIRD HOLM, LLP
1500 Woodmen Tower
1700 Farnam Street
Omaha, Nebraska 68102-2068
Tel: (402) 636-8254
Fax: (402) 344-0588
sdavidson@bairdholm.com
abalus@bairdholm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARIA GUZMAN MORALES & | ) | |
| MAURICIO R. GUARJARDO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CASE NO. 8:08-cv-504 |
| v. | ) | |
| | ) | |
| FARMLAND FOODS, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2011, I served the foregoing **DEFENDANT FARMLAND FOODS, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** via electronic filing.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Carolyn H. Cottrell
Christopher P. Welsh
James R. Welsh
Philip A. Downey
Shanon J. Carson
Todd M. Schneider

41

I hereby certify also that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None.

/s/ Kenneth M. Wentz III
Kenneth M. Wentz III (NE # 23580)
Jackson Lewis LLP
10050 Regency Circle, Suite 400
Omaha, Nebraska 68114
Tel: (402) 391-1991
Fax: (402) 391-7363
wentzk@jacksonlewis.com

ATTORNEYS FOR DEFENDANT
FARMLAND FOODS, INC.

4827-8113-9982, v. 3

42