IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIA GUZMAN MORALES and MAURICIO GUAJARDO, on behalf of themselves and all other similarly situated individuals;<br><br>Plaintiffs,<br><br>vs.<br><br>FARMLAND FOODS, INC.;<br><br>Defendant. | **8:08CV504**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on plaintiffs' motions for attorneys' fees and costs, Filing Nos. 437 and 441.[1]  This is a collective action for recovery of unpaid wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*  Plaintiffs seek recovery of $2,881,472 in attorney fees for the services of lead counsel law firms Schneider Wallace Cottrell Brayton Konecky, LLP (now known as Schneider Wallace Cottrell Konecky and hereinafter referred to as "SWCK"), Berger & Montague, P.C. ("B&M"), and Welsh & Welsh, P.C., L.L.O. ("W&W").[2]  They also seek $275,739.67 for costs incurred by those firms.  Plaintiffs move separately for an award of $55,755 in fees for co-lead counsel Philip A. Downey and $2,068.73 in costs incurred by Downey.  The defendant opposes the motions.  *See* Filing No. 451, Response.

---

[1] Plaintiffs also move for oral argument on the motion, Filing No. 446, but the court finds oral argument is not necessary.

[2] By firm, that amount can be broken down as follows:  $1,706,252.50 in fees for SWCK, $1,081,004.50 in fees for B&M and $94,215.00 in fees for W&W.  Filing No. 442-2 at 241.

## I. FACTS

The parties have entered into a Settlement Agreement that resolves this litigation. Filing No. 425-3, Ex. 1. Settlement Agreement. In the agreement, the defendants have agreed to pay $275,000 to the class in damages, including $35,000 to the named plaintiffs for statutory damages and service as class representatives. *Id.* at 2. Further, the defendant agreed to pay the costs and expenses of the claims administrator. *Id.* at 11. The Settlement Agreement also provides for payment by defendant of the plaintiffs' attorney fees as costs, as determined by the court. *Id.* at 2, 14-15. The Settlement Agreement reserves to the court the resolution of "any issues as to any Plaintiffs' or Class Counsel's claims for an award of attorneys' fees or reimbursement of expenses as a prevailing party pursuant to the Fair Labor Standards Act." *Id.* at 15. The Settlement Agreement also provides that the defendant will pay the attorney fees and costs in addition to the funds the class members receive; the attorney fees will not diminish the class payment. *Id.* at 2.

The notice disseminated to the class informed class members that the lead plaintiffs would seek an award of fees. See Filing No. 425-3, Index of Evid., Ex. C, Proposed Notice of Proposed Settlement at 3. Plaintiffs have shown that only one individual requested to be excluded from the class and one individual objected to the settlement. Filing No. 430-3, Index of Evid, Declaration of Sandra Roe at 5. The court held a fairness hearing on the parties' joint motion for final approval of class settlement on August 2, 2012. Filing No. 434, text minute entry. No one appeared at the hearing to object to the class settlement. The court approved the Settlement Agreement, finding that it provides "substantial benefits to the participating class members for the claims

2

alleged in the complaint" and that "[t]he settlement is a fair, reasonable and adequate resolution of a bona fide dispute."  Filing No. 425, Final Order of Approval of Settlement and Dismissal.

All attorneys have submitted detailed time records, billing statements, expense statements, and supporting documentation including invoices and receipts.  Filing No. 440, Index of Evid., Ex. D, Declaration of Philip A. Downey ("Downey Decl."); Filing No. 442, Index of Evid., Ex. A, Declaration of Carolyn H. Cottrell ("Cottrell Decl."); Filing No. 443, Index of Evid., Exs. B, Declaration of Shanon J. Carson ("Carson Decl."); Ex. C, Declaration of Christopher Welsh ("Welsh Decl."); Filing No. 447-2, Ex. 2, Supplemental Declaration of Carolyn Cottrell (Cottrell Supp. Dec.").  Plaintiffs have documented that they collectively expended more than 8,407.55 hours on this litigation, resulting in a cumulative lodestar of $3,4744,759.20, before the exercise of counsel's billing judgment.  Filing No. 442, Ex. A, Cottrell Decl. at 16, Ex. A3.  In the exercise of billing judgment, the plaintiffs' counsel reduced their fees by approximately 17% and seek recovery of $2,881,472 in attorney fees.[3]  *Id.* at 16-20.  Exs. A1, A3, A7.

In support of their motion, plaintiffs have shown that attorneys employed by SWCK, B&M, and W&W incurred a total of $3,474,759.2 in attorneys' fees, representing over 8,407 hours of work at hourly rates of $450 to $700 per hour for SWCK attorneys, $215 to $615 for B&M attorneys and $100 to $350 or W&W attorneys, and $50 to $250

---

[3] Further, plaintiffs have shown that counsel has made a good faith effort to reduce the hours billed where appropriate.  Filing No. 442-1, Ex. A, Cottrell Decl. at 17-20.  The plaintiffs' attorneys voluntarily omitted billing for attorneys and staff who billed less than 50 hours on this case, omitted time spent by attorneys on coming up to speed on the file and familiarizing themselves with the case; omitted billing related to motions that the plaintiffs lost; deducted duplicative work, paralegal-type work by attorneys, administrative time, billing related to opt-in plaintiffs who were later dismissed, and billing entries that lacked sufficient detail.  *See id.*; Filing No. 443-1, Ex. B, Carson Decl. at 6-8.

for law clerks and paralegals.[4]   They also seek an award of costs in the amount of $133,346.02 for expenses incurred by SWCK and $140,002.13 for costs incurred by B&M.  *See* Filing No. 447-2, Ex. 2, Cottrell Supp. Decl., Amended Ex. A52, SWCK's Total Costs by Category and Detailed Summary of Costs.  Co-class counsel Philip A. Downey has shown he performed 228.5 hours of work at $250 per hour and seeks fees in the amount of $55,755 and out-of-pocket costs in the amount of $2,068.73.[5]   Filing No. 440, Index of Evid., Ex. 1, Billing Statement: Ex. 2, Expense Statement.

Plaintiffs' counsel SWCK is a San Francisco, California law firm that specializes in class and collective action litigation in federal and state courts and a substantial number of the firm's class and collective action cases are wage and hour cases.  Filing No. 442-1, Ex. A, Cottrell Decl. at 1, 10.  B&M, based in Philadelphia, Pennsylvania, is a specialty labor and employment firm with 67 attorneys that specializes in class action litigation in federal and state courts.  Filing No. 443-1, Ex. B, Carson Decl. at 1, Ex. B1, Firm Resume.  Plaintiffs have shown that co-lead counsel have extensive experience litigating FLSA cases and have achieved substantial judgments and settlements against meatpacking companies in similar cases.  Filing No. 442-1, Ex. A, Cottrell Decl. at 4, Exs. A63, A64, A65, A66; Filing No. 443-1, Ex. B, Carson Decl. at 1-2.

---

[4] Much of the work was by attorneys at rates of $415 to $450 per hour, but substantial work was done by Carolyn Cottrell, who charges $650 per hour, and by Russell Henkin and Shanon Carson who charge $615 and $550 per hour, respectively.  Filing No. 442, Ex. A, Cottrell Decl., Ex. A4, SWCK total fees by timekeeper; Ex. A5, B&M total fees by timekeeper.

[5] The total reimbursable costs incurred by plaintiffs' counsel B&M and SWCK in this case amount to $275,739.67 for the following categories of expenses:  (1) long distance telephone calls; (2) travel expenses; (3) reproduction/velobind; (4) document production expenses (e.g., scanning, Bates numbering, OCR, hosting, etc.); (5) deposition fees and transcripts; (6) postage; (7) filing and miscellaneous fees; (8) commercial copying and printing; (9) computer legal research; (10) expert discovery; (11) delivery and freight; (12) mediation; (13) notice facilitation; (14) translation and interpreter services; (15) faxes; and (16) bankruptcy counsel costs. See Filing No. 442-1, Ex. A, Cottrell Decl., Exs. A52-A62; Filing No. 443-1, Ex. B, Carson Decl. at 12-14; Exs. B2-B14; Filing No. 447-2, Cottrell Supp. Decl., Exs. A69, Amended Ex. A52.

Defendant Farmland is represented by Jackson Lewis, LLP, an employment specialty law firm that employs over 700 attorneys at numerous offices nationwide. Filing No. 441-1, Plaintiffs' Memorandum at 61, 71.  Jackson Lewis has an office in Omaha, Nebraska, but Farmland was primarily represented in this action by Jackson Lewis attorneys based in Atlanta, Georgia, and Greenville, South Carolina.  Farmland was also represented by local counsel Baird Holm, an Omaha law firm that employs over 80 attorneys.   Plaintiffs also submitted evidence purporting to show that few, if any, Omaha law firms litigate this type of case.  Filing No. 443-7, Ex. D, Welsh Decl. at 2-3.

Plaintiffs have submitted affidavits showing that the hourly rate of partners in Atlanta law firms whose practices focus on labor and employment law vary substantially but generally range from $275 to $425 per hour for partners with 15-20 years of experience; $350 to $500 for partners with 20-25 years of experience; $425 to $575 for partners with 25-30 years of experience; and $600 and more for some partners with more than 30 years of experience.  Filing No. 442-8, Index of Evid., Ex. E, Declaration of Hunter R. Hughes III at 3-4.  The hourly rate for associate attorneys in Atlanta in the same practice area with 0-5 years of experience generally ranges from $200 to $300 per hour and $250 to $375 for associates with 5-10 years of experience and the Atlanta market rate for paralegals is generally between $125-$200.  *Id.* at 4.  Also, plaintiffs have shown that various firms in Chicago charge between $250 and $700 per hour for labor work by attorneys, depending upon the firm and the particulars of the individual attorney performing the work, and the market rate for paralegals in the Chicago market is over $125 per hour.  Filing No. 443, Index of Evid., Exhibit F, Declaration of Ryan F.

Stephan ("Stephan Decl."), Ex. F1, Stephan Decl. in *Thomas   v. Matrix Commc'n Servs., Inc.*, No. 10-cv-05093 (N.D. Ill.) at 2; Ex. F2 Stephan Decl. in *Land v. Frontline Commc'ns, Inc.,* No. 10-cv-07640 (N.D. Ill) at 2.   Plaintiffs have also shown that the Stephan Zouras Law firm in Chicago represents workers in class and collective actions regarding unpaid wage disputes throughout Illinois and across the United States and attorney Ryan Stephan's hourly rate of $450 to $500 per hour has been approved by courts overseeing his cases.   *Id.*, Ex. F, Stephan Decl. at 2; Exs. F1 and F2, Orders approving awards of attorney fees.   Plaintiffs have shown the hourly rate of $450 to $500 is within the range of hourly rates charged by plaintiffs' attorneys in Chicago, Illinois, who specialize in handling wage and hour cases.   *See id.,* Ex. F at 2-3.   Also, the hourly rate charged for Stephan Zouras associates is $250 to $350, which is within the range of reasonable hourly rates in the Chicago market.   *Id.*

The record shows this action was filed in November of 2008.   It has been pending for over four and a half years.   There are over 450 total filings in this case.   Over 30 depositions have been taken and four experts have been retained and deposed, requiring substantial travel.   *See* Filing No. 441-1, Motion, Ex. 1, Memorandum of Law at 19-20.   There have also been multiple site inspections, also requiring travel.   *Id.* at 17-18.   The parties have exchanged voluminous written discovery and there have been numerous discovery disputes.   *Id.* at 7-15; *see,* e.g., Filing No. 405, Plaintiffs' Motion to Compel.   Over the course of the litigation, Farmland moved to dismiss, vigorously opposed class certification, and moved to decertify the class.   See Filing No. 364, Motion to decertify; Filing No. 408, Findings and Recommendation; Filing No. 413, Objection; and Filing No. 415, Memorandum and

Order.  In addition, it filed for summary judgment on numerous issues, none successful.  *See* Filing Nos. 105, 133, 137, 139, 141, Motions for Partial Summary Judgment; Filing Nos. 143, 165, 169, 179; Motions to Dismiss; Filing No. 175, Motion for summary judgment; Filing Nos. 208, 276, Memoranda and Orders.   In all, Farmland filed ten motions for partial summary judgment seeking judgment as a matter of law on issues such as whether donning and doffing time is "de minimis," whether employees should be compensated for "reasonable" as opposed to "actual" time, whether employees are entitled to compensation for donning and doffing nonunique equipment, whether walking and waiting time are noncompensable preliminary and postliminary activities under the Portal-to-Portal Act, whether personal protective equipment is "clothing" that is not compensable under 15 U.S.C. § 203(o), and whether washing is also exempt under Section 203(o).  In addition, Farmland sought leave to pursue an interlocutory appeal, which the court denied, noting that "defendant is attempting to perfect an interlocutory appeal which will further delay the case and cause additional expense to the plaintiff." Filing No. 223, Motion to Amend and for Leave to File Interlocutory Appeal; Filing No. 276, Memorandum and Order.  The action was eventually mediated and the parties subsequently conducted back and forth negotiations regarding settlement for several months thereafter.  Filing No. 425-1, Index of Evid., Ex. A, Declaration of Carolyn H. Cottrell in Support of Joint Motion for Preliminary Approval of Settlement at 6-7.

Farmland objects to the plaintiffs' motions for attorney fees and costs.  Filing No. 451.   It argues the court should award plaintiffs' counsel no more than $57,600 to $154,687 in fees, based on the "percentage of the benefit" method.  Further, Farmland argues that even under a lodestar method, fees must be subject to a large reduction

because of the degree of the plaintiffs' success, or lack thereof.  It urges the court to award only 5% to 6% of the lodestar as a result of the plaintiffs' lack of success.  It also argues that the court should award only local hourly rates.  Further, it argues the court should reduce the number of the plaintiffs' claimed reasonable hours by at least half and argues that the plaintiffs' claimed fees, costs and expenses are inflated.  Specifically, it contends that certain expenses, including computerized legal research and expert witness fees, are not recoverable.

Farmland argues that "[t]his case was drastically over-lawyered relative to the issues and to the result achieved, including use of 21 lawyers and 18 paralegals."  *Id.* at 17.  The defendant characterizes the request for fees as an attempt "to get a huge fee for a token, nuisance-value settlement by artificially bloating the number of hours billed and by demanding wildly-inflated hourly rates."  *Id.* at 18.  In support of its opposition, Farmland submits affidavits of local attorneys attesting to hourly rates of $250 per hour in Omaha, Nebraska, and attesting that there are Nebraska-based counsel and law firms in Nebraska, Iowa, South Dakota, Kansas, Oklahoma, Colorado and Missouri that have brought FSLA claims, including donning and doffing claims.  Filing No. 452-8, Index of Evid., Ex. 6, Affidavit of Robert O'Connor; Filing No. 452-9, Index of Evid., Ex. 7, Affidavit of Eric Magnus; Filing No. 452-9, Index of Evid., Ex. 8, Declaration of Gillian Ellis.

## II.  LAW

A thorough judicial review of fee applications is required in all class action settlements.  *In re Diet Drugs*, 582 F.3d 524, 537-38 (3d Cir. 2009); *Johnson v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (noting that the district court

bears the responsibility of scrutinizing attorney fee requests).  Courts utilize two main approaches to analyzing a request for attorney fees:  (1) the "lodestar" methodology (multiplying the hours expended by an attorney's reasonable hourly rate of compensation to produce a fee amount that can be adjusted to reflect the individualized characteristics of a given action); and (2) the "percentage of the benefit" approach (permitting an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation).[6]  *Johnston, 83 F.3d at 244-45*.  It is within the court's discretion to decide which method to apply.  *Id.*

Under fee-shifting provisions of federal statutes that allowing courts to award attorney's fees to the prevailing party, a plaintiff is a "prevailing party" only when he obtains either (1) a judgment on the merits, or (2) a settlement agreement "enforced through a consent decree."  *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't. of Health and Human Res.*, 532 U.S. 598, 603–604 (2001).  To be a prevailing party, a plaintiff must achieve at least some relief on the merits that effectuates a "material alteration in the legal relationship of the parties."  *Id.* at 605.  A party that secures an enforceable judgment on the merits or a court-ordered consent decree is a prevailing party.  *Bill M. ex rel. William M. v. Nebraska Dep't of Health and Human Servs.*, 570

---

[6] In a common-fund settlement, the court approves distribution of a certain percentage of a settlement fund as fees before the remainder of the fund is distributed to the class.  *See, e.g., Cortez v. Nebraska Beef, Ltd.*, No. 8:08-cv-99 (D. Neb. May 14, 2012), Filing No. 452-3, at 298 of 300.  A percentage-of-benefit methodology is used in common-fund settlement class action cases.  *See, e.g., In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving an award of 36% of the settlement fund); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999) (approving award of 24% of monetary compensation to the class).  To recover fees from a common fund, attorneys must demonstrate that their services were of some benefit to the fund or that they enhanced the adversarial process.  *In Re US Bancorp Litig.*, 291 F.3d at 1038.  This is not a common fund case; the defendant has agreed to pay attorney fees separately from and in addition to the settlement amounts paid to the class.

F.3d 1001, 1003 (8th Cir. 2009).   A settlement that entails judicial approval and oversight is the equivalent of a consent decree.   *Id.*

Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended.   *Hensley v. Eckerhart,* 461 U.S. 424, 433-37 (1983); ."   *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, —, 130 S. Ct. 1662, 1671 n.3 (stating that there is a strong presumption that the lodestar is sufficient);   *Marez v. Saint-Gobain Containers, Inc.,* 688 F.3d 958, 965 (8th Cir. 2012). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."   *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983) (stating that "[n]ormally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."); *Kenny A.*, 130 S. Ct. at 1669 (affirming that an increase is permitted in extraordinary circumstances).

The lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a "presumptively reasonable fee." *Kenny A.*, 130 S. Ct. at 1673.  The lodestar amount remains the customary method by which attorneys bill for litigation, and the lodestar generally remains sufficient to attract competent counsel.  *Id.*   The "lodestar" figure is the "guiding light of [the Supreme Court's] fee-shifting jurisprudence."  *Kenny A.*, 130 S. Ct. at 1672.  Once a lodestar is determined, "other factors 'may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'"   *Marez,* 688 F.3d at 965 (quoting *Hensley,* 461 U.S. at 434).   In this circuit, district courts also consider the

factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) to determine an appropriate fee.[7]   *See Marez*, 688 F.3d at 966 n.4.

Congress enacted fee-shifting statutes "in order to ensure that federal rights are adequately enforced."  *Kenny A.*, 130 S. Ct. 1662, 1671 n.3  (involving 42 U.S.C. §1988, but noting that "[v]irtually identical language appears in many of the federal fee-shifting statutes").   Under a fee-shifting statute, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious" action to vindicate the rights protected under the statute.  *Id.* at 1672.  "Fee awards must be structured so that attorneys of quality and experience with other profitable demands upon their time will not need to sacrifice income available in alternative enterprises in order to effect a public policy intended to protect all citizens."  *Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993).

The FLSA provides that the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b) (2008) (emphasis added).   An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge.  *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994).   "Since the FLSA does not discuss what constitutes a reasonable fee, '[t]he determination of a reasonable fee must be reached through an

--------------------------------------

[7] The *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of time involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at 717-19; *but see Kenny A.*, 130 S. Ct. at 1672 n.4 (criticizing the *Johnson* factors method).

evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees.'"  *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984)).

The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.  *Fegley,* 19 F.3d at 1134.  Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees in an FLSA case "encourage[s] the vindication of congressionally identified policies and rights."  *Id.; see also Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509, 511-12 (S.D.N.Y. 2011) ("[i]n FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights"); *see also City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (rejecting proportionality requirement in a civil rights § 1988 claim and ultimately granting an award seven times the amount of the recovery); *Dressler v. Kansas Copters and Wings*, No. 09–1016, 2010 WL 5834819, at *2 (D. Kan. Dec. 22, 2010) (rejecting proportional approach in an FLSA case); *Tucker v. City of New York*, 704 F. Supp. 2d 347, 359 n.10 (S.D.N.Y. 2010) ("It is settled case law that the setting of statutory [attorney'] fees does not require proportionality between the plaintiff's recovery and the amount of the fee award").  In fact, courts often award attorneys' fees that far exceed the plaintiffs' recovery in FLSA cases.  *See, e.g., Fegley,* 19 F.3d at 1134-35 (affirming attorney fees

of $40,000 on a judgment of $7,680 for overtime compensation); *Lucio-Cantu v. Vela,* 239 Fed. Appx. 866 (5th Cir. 2007) (finding no abuse of discretion in award of $51,750 in attorney fees on a recovery of $4,679); *Howe v. Hoffman-Curtis Partners Ltd., LLP,* 215 Fed. Appx. 341, 342 (5th Cir. 2007) (affirming attorney fees of and $129,805.50 on $23,357.30 in damages); *Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 358 (5th Cir. 1990) (affirming an award of $9,250 in attorneys' fees on a $1,181 judgment for overtime compensation); *Bonnette v. California Health & Welfare,* 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming $100,000 in attorney fees on a judgment of $18,455 in damages); *Garcia v. Tyson Foods,* 2012 WL 5985561 (D. Kan. Nov. 29, 2012) (awarding over $3.2 million in attorney fees on a jury verdict of $533,011 in a collective action); *James v. Wash Depot Holdings, Inc.,* 489 F. Supp. 2d 1341 (S.D. Fl. May 14, 2007) (awarding attorney fees of $114,021 on a judgment of $3,493.62); *Wales v. Jack M. Berry, Inc.,* 192 F. Supp.2d 1313 (M.D. Fl. Dec. 21, 2001) (awarding attorney fees of $352,225.40 on an FLSA recovery of $21,000); *Holyfield v. F.P. Quinn & Co.,* No. 90 C 507, 1991 WL 65928, at *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney fees and costs on a judgment of $921, and noting that "[g]iven the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of the judgment in the case). Indeed, courts have "have 'upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages.'" *Fegley,* 19 F.3d at 1134.

The lodestar figure "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," and "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Kenny A.,* 130 S. Ct. at 1673. The

novelty and complexity of a case and quality of an attorney's performance are reflected in the number of billable hours and the reasonable hourly rate. *Id.* Superior attorney performance may properly provide a basis for enhancement of the lodestar in rare and exceptional cases, with specific evidence that the lodestar fee would not have been adequate to attract competent counsel. *Id.* at 1674.

Further, a reasonable attorney fee award must take into account whether the defendant mounted an aggressive defense. *See, e.g., Rivera*, 477 U.S. at 580-81 n.11 ("The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response") (internal citation omitted); *Frank Music Corp. v. MGM, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("'Although [defendants] had the right to play hardball in contesting [plaintiffs'] claims, it is also appropriate that [defendants] bear the cost of their obstructionist strategy'"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998) ("The Tenth Circuit has long accepted the proposition that one of the factors useful in evaluating the reasonableness of the number of attorney hours in a fee request is 'the responses necessitated by the maneuvering of the other side'") (citations omitted); *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998) (justifying an increased fee award to the plaintiffs due to the defendant's "Stalingrad defense"); *Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977) ("Obviously, the more stubborn the opposition, the more time would be required . . . ."). One of the exceptions to the general rule that attorney performance is subsumed in the lodestar and cannot provide the basis for an enhancement is a case requiring an extraordinary outlay of expenses and exceptionally protracted litigation. *Id.* at 1674-75 (noting that the court does not "rule out the possibility that an enhancement

may be appropriate where an attorney assumes these costs in the face of unanticipated delay, particularly where the delay is unjustifiably caused by the defense").

The market value in the relevant legal community of the legal services performed is used to determine a reasonable attorney fee. *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (stating "[i]n communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney"); *Kenny A.*, 130 S. Ct. at 1672 (stating that the market rate of legal time is the opportunity cost of that time, the income foregone by representing the particular plaintiff). Market rates are applied under fee-shifting statutes; "[a]ny other rule would relegate civil rights enforcement (and the law that results) to those lawyers with below-market billing rates" whose rates "are usually below market for a reason." *Id.*

Reimbursement for work performed by out-of-town lawyers charging out-of-town rates is generally permitted, however, when in-town counsel with expertise in a particular area cannot be located. *See, e.g., Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140-41 (8th Cir. 1982). The relevant market for attorneys in certain matters "may extend beyond the local geographic community"—a national market or a market for a particular legal specialization may provide the appropriate market. *Casey*, 12 F.3d at 805; *see also Planned Parenthood, Sioux Falls Clinic v. Miller*, 70 F.3d 517, 519 (8th Cir. 1995) (awarding Chicago market rates in a South Dakota reproductive rights case).

Also, counsel's rates must be analyzed in the context of the financial risk plaintiffs' counsel took in prosecuting the case, including a delay in payment and the contingent nature of the fee. *See City of Burlington v. Dague*, 505 U.S. 557, 567

(1992).  A lodestar enhancement for contingency risk, however, is duplicative if the risk is already factored into the hourly rates used to calculate the lodestar and is reflected in the higher hourly rate for the attorney skilled and experienced enough to overcome this risk).

Under the FLSA, costs include reasonable out-of-pocket expenses, beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.[8]  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 969 (10th Cir. 2002); *Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir. 1988) (allowing recovery of attorney travel expenses); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (attorney's fees include expenses that are "incidental and necessary" to the representation, provided they are "reasonable.").  An attorney fees award under a fee-shifting statute should be comparable to what is traditionally paid to attorneys who are compensated by a fee-paying client.  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 287 (1989).  The "reasonable attorney's fee" provided for by statute should compensate the work of paralegals as well as that of attorneys, at market rate, if the prevailing practice in a given community is to bill paralegal time separately at market rates.  *Id.* at 289 (noting that separate billing for the services of paralegals and law students employed as law clerks "appears to be the practice in most communities today").  Consistent with the Supreme Court's decision in *Jenkins*, 491 U.S. at 285, the Eighth Circuit Court of Appeals allows the "award of 'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee paying client.'"  *Sturgill v. United Parcel*

---

[8] Under 28 U.S.C. § 1920, six specifically enumerated categories of expenses may be taxed as costs:  fees of the court clerk and marshal; fees of the court reporter; printing fees and witness fees; copying fees; certain docket fees; and fees of court-appointed experts and interpreters.  28 U.S.C. § 1920.  This list is exclusive.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987).

*Service, Inc.,* 512 F.3d 1024, 1036 (8th Cir. 2008) (quoting *Mota v. University of Texas Houston Health Sci. Ctr.,* 261 F.3d 512, 529 (5th Cir. 2001)).[9]   "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable [in FLSA actions]."  *Rutti v. Lojack Corp., Inc.*, No. 06-cv-350, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012); *see also* *Andrade v. Aerotek, Inc.*, No. 08-cv-2668, 2012 WL 983773, at *7 (D. Md. Mar. 21, 2012) ("Types of costs charged to losing defendants [in FLSA actions] include 'necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying.")

Reimbursement of expert fees are routinely approved by courts in the Eighth Circuit and around the country as a component of attorney fees rather than costs.  *See, e.g., Lee-Thomas, Inc. v. Hallmark Cards, Inc.*, 275 F.3d 702 (8th Cir. 2002) (finding that the lower court did not abuse its discretion in awarding $7,448.18 in expert fees). In 1991, the Civil Rights Act was amended to permit recovery of expert fees as part of the attorney fees award.[10]  *See* 42 U.S.C. § 1988(c).  In that Act, Congress legislatively

---

[9] The defendant cites *Leftwich v. Harris–Stowe State Coll.*, 702 F.2d 686, 695 (8th Cir. 1983) and *Standley v. Chilhowee R–IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993) for the proposition that the law of the Eighth Circuit is that computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of the computer time may not be added to the fee award.  Although the Eighth Circuit Court of Appeals has not explicitly overruled *Leftwich* and *Standley*, those cases predate *Sturgill*, 512 F.3d at 1036, and *In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, 631 F.3d 913, 918 (8th Cir. 2011) (affirming the district court's reimbursement of online-research expenses in a case involving a negotiated settlement and noting that  "[t]he prevailing view among other circuits is to permit awards to reimburse counsel for the reasonable costs of online legal research."); *see Gilster v. Primebank,* 884 F. Supp. 2d 811, 880 (N.D. Iowa 2012) (finding that computerized legal research fees are traditionally billed to clients and, thus, if reasonable and adequately documented, should be awarded in fee-shifting cases).

[10] Farmland's contention to the contrary is based on cases that predated the 1991 Civil Rights Act, which amended § 1988 to permit recovery of expert fees as part of the attorney fees award.  42 U.S.C. § 1988(c).

overruled the Supreme Court's holding in *West Virginia Univ. Hosp. v. Casey*, 499 U.S. 83, 102 (1991), that plaintiffs could not be reimbursed expert witness fees in excess of $40 per day under Fed. R. Civ. P. 54 and 28 U.S.C. § 1920.  *See Zeigler Coal Co. v. Dir., Office of Workers' Comp. Programs*, 326 F.3d 894, 900 n.2 (7th Cir. 2003). Section 1988 now provides that a court, in its discretion, may include expert fees as part of the attorney's fee award, rather than as a component of costs.  *Id.*  Courts are now expressly authorized to include expert fees and costs awarded under the fee-shifting provisions of 42 U.S.C. § 1988.  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 251 (1994); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 700 (3d Cir. 2005) (permitting compensation of nontestifying experts); *Zeigler Coal Co.,* 326 F.3d at 900 n.2.

### III.  DISCUSSION

To the extent any such finding is required, the court first finds the plaintiff class is a prevailing party for purposes of an attorney fee award under the Fair Labor Standards Act.  The plaintiffs succeeded on a significant issue, achieving some of the benefit they sought in bringing suit.  The Settlement Agreement required court approval and is a judicially sanctioned result.  The amount of the plaintiffs' recovery is not insignificant. The average award of $1,000 is a substantial sum of money to a low-income wage-earner. Accordingly, the court finds that the plaintiff class, as the prevailing party, is entitled to attorney fees.

The court also finds fees should be awarded under the lodestar method.  This is not a "common fund" case in which the percent of the benefit methodology would be appropriate.  The court finds that the time spent on the litigation by plaintiffs' counsel is

reasonable.  Class Counsel have substantial experience in prosecuting class actions and wage and hour actions.  The court finds the quality of representation was good.

As noted, this action has been pending for over four years.  There are presently 457 filings in this case.  The record shows that this was an intensely litigated case that included extensive discovery, a motion for FLSA conditional certification, ten motions for partial summary judgment and summary judgment, and numerous additional motions.  The issues in the case required careful legal analysis, extensive research, and considerable factual investigation.  Whatever purported "over-lawyering" that occurred in this case was largely the defendant's own doing.  Given the nature of the case, the court finds the time and labor expended by lead counsel in this case is reasonable and necessary to prosecute a case of this nature.  Much of the time plaintiffs' counsel devoted to the action was necessitated by the defendant's aggressive tactics.  Surely the defendant was aware that its litigation strategy generated legal work, billing and fees.

Further, the court finds the defendant should be held to the benefit (or risk) of its bargain.  In agreeing to pay for attorney fees as determined by the court, the defendant exposed itself in the settlement to the possibility of a large award of fees, especially in view of the contentious and lengthy history of this case.  Defendant was well aware of the fact that the plaintiffs' counsel were from San Francisco and Philadelphia and surely understood that a substantial outlay was required to prosecute the case.  Defendant cannot be heard to complain of fees engendered by its conduct.

The court has reviewed plaintiffs' counsel's timekeeping records and finds that plaintiffs have met their burden to prove the number of hours spent on this litigation.

The records show which attorneys were completing each task and the time spent on each task.  The plaintiffs' counsel have eliminated numerous entries in the exercise of billing judgment.  The court finds that plaintiffs' counsel has made a good faith effort to exclude time hours that was excessive, redundant, unnecessary or unsupported.

Further, the court declines to adjust the lodestar for the plaintiffs' alleged lack of success.  The court has already determined that the settlement was fair and reasonable.  The court is not persuaded by Farmland's argument that the plaintiffs' fees should be reduced because the settlement amount is only a small percentage of the plaintiffs' initial estimate of damages.  Conversely, the settlement amount represents a significant increase from the amount (zero) of damages that the defendant contended was due and owing to the plaintiffs.

Also, plaintiffs' counsel succeeded in vindicating important rights.  The court does not agree with the defendant's characterization of the action as a "nuisance value" case.  The court is familiar with "donning and doffing" cases and based on the court's experience, defendant meat packing companies' litigation conduct generally reflects "what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of FLSA."  *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790, 794 (M.D. Tenn. 2008).  Plaintiffs' counsel perform a recognized public service in prosecuting these actions as a "private Attorney General" to protect the rights of underrepresented workers.

The court has reviewed the award from the perspective of benefit to the class.  The request for fees was disclosed in the notice of the settlement and no class members have objected to the settlement or to the motion for fees.  The plaintiffs have

demonstrated that counsel's services have benefitted the class.  The defendants agreed to an award of fees, as determined by the court, that will not diminish the award to the class.  The fundamental policies of the FLSA were vindicated and the rights of the workers were protected.

The issue of hourly rates deserves some discussion.  Based on its familiarity with litigation of this sort, the court agrees with the plaintiffs that this type of case is "undesirable" to some extent because counsel must  incur substantial fees and expenses with no guarantee of recovery.  Other factors, such as the transitory nature of defendant's primarily low-income, immigrant or undocumented, non-English speaking workforce makes it difficult to develop the facts underlying the plaintiffs' wage and hour claims.   Also, counsel's efforts can be hampered by the workers' natural and rational fear of reprisal.   Cultural differences, immigration status and unfamiliarity with the American legal system also contribute to the difficulty and "undesirability" of these types of cases.   All of these factors make a case of this nature expensive to prosecute; pursuing these cases involves assuming a substantial financial risk and requires a significant outlay of resources.   Class counsel undertook prosecution of this action without any assurance of recovery, and engaged in significant litigation in a complex wage and hour case, while facing tremendous risk of little to no recovery.

The court is familiar with hourly rates in this community and with the skill and abilities of the attorneys involved in this litigation.  The plaintiffs argue that they should recover for their time at San Francisco and Philadelphia legal rates.  The defendant argues that the fees should be awarded at the prevailing rate in this community—$250

per hour.  Based on its familiarity with fees in this community, the court finds the defendant's figure is somewhat understated.

Notably, the defendant is represented by a national law firm and is presumably paying rates that would be appropriate in the Atlanta market.  The defendant gains the advantage of the resources that a large, well-financed, "big-city" firm can bring to the litigation.  Under these circumstances it would not be fair to constrain the plaintiffs to low legal rates and inadequate resources.  Although Omaha firms undoubtedly have the expertise for this type of litigation, there may be some merit to the contention that the substantial capital outlays, inherent delays, statutory limits on potential monetary recovery, and the obduracy of the meat packing industry defense combine to  make cases of this sort unattractive to local law firms who lack unlimited resources and financial flexibility.

Under these circumstances, the court finds it may well be necessary for the plaintiff class to pay more than local rates in order to attract competent counsel.  The "market" in connection with a meat-packing industry donning and doffing case is not necessarily limited to the location of the plant.  Many similar cases are pending nationwide and plaintiffs should be allowed to reap the benefits of the experience of firms with a nationwide presence.

The court is convinced that there are large national Omaha firms that could competently prosecute this case.  The court finds that these firms charge rates commensurate with rates charged in the Chicago legal market.  Therefore, an award of so-called Chicago rates is appropriate.  Chicago's legal rates are approximately one-third lower than the rates in San Francisco and Philadelphia.  Accordingly, the court

finds the rates for the attorneys, paralegals and law clerks at the SWCK and B&M law firm should be reduced by one third.  That rate is adequate to account for the difference in local attorney fees, and is appropriate in light of the size of the settlement, the vindication of employees rights, the complexity of the case, and the skills of the attorneys.

Accordingly, the court will award fees for the services of SWCK and B&M in the amount of $1,858,172.  Because it charges local rates, the rates sought by W&W need not be reduced and plaintiffs will be awarded $94,215 for the services of W&W. Similarly, attorney Philip Downey also seeks a rate that is reasonable for legal services in the Omaha areas and his requested fees need not be adjusted.  Plaintiffs will be awarded $55,755.00 for his services, for a total attorney fees award of $2,008,142.

The court has carefully reviewed the cost and expenses and finds the plaintiffs have adequately documented the expenses and shown the expenditures were reasonable and necessary to prosecute the action on behalf of the class.  The categories of expenses incurred in connection with this case are the types of expenses that are ordinarily charged to clients in this locality.  Under Eighth Circuit precedent, plaintiffs may properly be reimbursed for computerized legal research, expert witness fees, copying costs and travel.  The use of experts was reasonable and necessary to the action in order to establish damages had the action proceeded to trial.  The defendant has not shown that the costs incurred by plaintiffs are excessive, especially in view of the prolonged and vexatious character of the case.  Accordingly, plaintiffs will be awarded costs and expenses in the amount of $275,416.

IT IS ORDERED:

1.    The plaintiffs' motions for attorney fees (Filing Nos. 437 and 441) are granted.

2.    The plaintiffs' motion for oral argument (Filing No. 446) is denied.

3.    The plaintiffs are awarded fees in the amount of $1,858,172 for the services of Schneider Wallace Cottrell Konecky, LLP, and Berger & Montague, P.C.; $94,215 for the services of Walsh and Walsh; and $55,215 for the services of Philip Downey, resulting in a total attorney fees award of $2,008,142.

4.    The plaintiffs are awarded costs and expenses in the amount of $275,416.

5.    A judgment for attorney fees and costs in conformity with this Memorandum and Order will issue the date.

Dated this 18th day of April, 2013.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge